KEKER & VAN NEST, LLP
DARALYN J. DURIE - #169825
EUGENE M. PAIGE - #202849
RYAN M. KENT - #220441
SANDEEP MITRA - #244054
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant
WELLS FARGO & COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| PHOENIX SOLUTIONS, INC., a California corporation,<br><br>                                        Plaintiff,<br><br>        v.<br><br>WELLS FARGO & COMPANY, a Delaware corporation,<br><br>                                        Defendant. | Case No. CV 08 0863-SBA<br><br>**AMENDED ANSWER**<br><br>**DEMAND FOR JURY TRIAL** |

Defendant Wells Fargo & Company ("Wells Fargo") answers Phoenix Solutions, Inc.'s ("Phoenix's") complaint ("Complaint") as follows:

1.      Wells Fargo admits that the Complaint purports to recite an action for infringement under the patent laws of the United States.

## I.      THE PARTIES

2.      Wells Fargo denies that Phoenix is a corporation organized and existing under the laws of the State of California; Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis,

413809.01

denies the remainder of the allegations in this paragraph.

3.    Admitted.

## II.    <u>FACTUAL BACKGROUND</u>

4.    Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

5.    Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

6.    Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

7.    Denied.

8.    Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

9.    Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

10.    Denied.

11.    Denied.

12.    Denied.

13.    Denied.

14.    Denied.

15.    Denied.

16.    Denied.

17.    Denied.

18.    Denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Wells Fargo admits that, on or about June 2, 2006, J. Nicholas Gross of the Trojan Law Offices sent a letter addressed to James Strother, purportedly on behalf of Phoenix, in which Mr. Gross stated that the "speech based electronic agent" that Mr. Gross apparently assumed was operated by Wells Fargo "is very likely covered one or more claims of the Phoenix portfolio in this area."  Wells Fargo admits that the letter listed U.S. Patent Nos. 6,633,846, 6,616,172, 6,665,640, and 7,050,977 and a pending publication, Publication No. 2004/0117189.  Wells Fargo further admits that the letter stated that "we request that you please review the enclosed materials, and let us know within 30 days if Wells Fargo is interested in securing a license to the above technologies."  Wells Fargo admits that, on or about June 27, 2006, Walter Linder pointed out in a letter to Mr. Gross that Mr. Gross had failed to identity any specific claims that were infringed and had not provided any specific reasons why any such claims were infringed.  Wells Fargo admits that, on or about June 29, 2006, Mr. Gross replied by letter to Mr. Linder that Wells Fargo may have overlooked a CD enclosed with the original letter.  Wells Fargo admits that, on or about October 18, 2007, R. Joseph Trojan, purportedly representing Phoenix, sent a letter to Mr. Linder stating, *inter alia*, "the only rational choice is for Wells Fargo to solicit more favorable treatment as a willing licensee than the terms it would receive as a defendant in litigation."  The letter further demanded that Wells Fargo "disclose its call volume for each of the past three years for its interactive natural language processing customer support lines."  Wells Fargo denies the remainder of the allegations in this paragraph.

### III.     JURISDICTION AND VENUE

23.     This paragraph states no more than a legal conclusion to which no response is required.

24.     This paragraph states no more than a legal conclusion to which no response is required.

25.     This paragraph states no more than a legal conclusion to which no response is

AMENDED ANSWER; DEMAND FOR JURY TRIAL
CASE NO. CV 08 0863-SBA

413809.01

required.

## IV.   FIRST COUNT FOR INFRINGEMENT
## OF UNITED STATES PATENT NO. 6,633,846

26.     Wells Fargo repeats and realleges its responses set forth in paragraphs 1-25 above.

27.     Wells Fargo admits that what purports to be a copy of U.S. Patent No. 6,633,846 (" '846 patent") is attached to the Complaint as Exhibit 1. Wells Fargo admits that the '846 patent is entitled "Distributed Real Time Speech Recognition System."  Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

28.     Denied.

29.     Denied.

30.     Denied.

## V.   SECOND COUNT FOR INFRINGEMENT
## OF UNITED STATES PATENT NO. 6,665,640

31.     Wells Fargo repeats and realleges its responses set forth in paragraphs 1-25 above.

32.     Wells Fargo admits that what purports to be a copy of U.S. Patent No. 6,665,640 (" '640 patent") is attached to the Complaint as Exhibit 2. Wells Fargo admits that the '640 patent is entitled "Interactive Speech Based Learning/Training System Formulating Search Queries Based on Natural Language Parsing of Recognized User Queries."  Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

33.     Denied.

34.     Denied.

35.     Denied.

413809.01

## VI.    THIRD COUNT FOR INFRINGEMENT
## OF UNITED STATES PATENT NO. 7,050,977

36.    Wells Fargo repeats and realleges its responses set forth in paragraphs 1 - 25 above.

37.    Wells Fargo admits that what purports to be a copy of U.S. Patent No. 7,050,977 ("'977 patent") is attached to the Complaint as Exhibit 3. Wells Fargo admits that the '977 patent is entitled "Speech-Enabled Server for Internet Website and Method." Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

38.    Denied.

39.    Denied.

40.    Denied.

## VII.    FOURTH COUNT FOR INFRINGEMENT
## OF UNITED STATES PATENT NO. 7,277,854

41.    Wells Fargo repeats and realleges its responses set forth in paragraphs 1 - 25 above.

42.    Wells Fargo admits that what purports to be a copy of U.S. Patent No. 7,277,854 ("'854 patent") is attached to the Complaint as Exhibit 4. Wells Fargo admits that the '854 patent is entitled "Speech Recognition System Interactive Agent." Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

43.    Denied.

44.    Denied.

45.    Denied.

## VIII.    DEMAND FOR JURY TRIAL

46.    This paragraph demands a jury trial, and accordingly no response is necessary for this paragraph.

413809.01

## IX.    **PRAYER FOR RELIEF**

47.    Wells Fargo denies each allegation of the Complaint not expressly admitted herein.

### **AFFIRMATIVE DEFENSES**

### **FIRST AFFIRMATIVE DEFENSE**

48.    On information and belief, the '846 patent is invalid because it fails to enable a person of ordinary skill in the art to make and/or use the purported inventions claimed therein as required by 35 U.S.C. § 112.

### **SECOND AFFIRMATIVE DEFENSE**

49.    On information and belief, the '846 patent is invalid because it fails to set forth an adequate written description of the purported inventions claimed therein as required by 35 U.S.C. § 112.

### **THIRD AFFIRMATIVE DEFENSE**

50.    On information and belief, the '846 patent is invalid because it fails to provide the best mode known to the putative inventors of practicing the purported inventions claimed therein as required by 35 U.S.C. § 112.

### **FOURTH AFFIRMATIVE DEFENSE**

51.    On information and belief, the '846 patent is invalid because it fails to satisfy the definiteness requirement of 35 U.S.C. § 112.

### **FIFTH AFFIRMATIVE DEFENSE**

52.    On information and belief, the '846 patent is invalid because the purported inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

### **SIXTH AFFIRMATIVE DEFENSE**

53.    On information and belief, the '846 patent is invalid because the purported inventions claimed therein do not meet the requirement of non-obviousness contained in 35 U.S.C. § 103.

### **SEVENTH AFFIRMATIVE DEFENSE**

54.    On information and belief, the '846 patent is invalid because it fails to set forth

the proper inventors of the purported inventions claimed in the patent.

**EIGHTH AFFIRMATIVE DEFENSE**

55.     On information and belief, the '846 patent is not infringed by Wells Fargo because the claim constructions that would be required to find infringement are barred by the doctrine of prosecution disclaimer and/or prosecution history estoppel.

**NINTH AFFIRMATIVE DEFENSE**

56.     On information and belief, the '640 patent is invalid because it fails to enable a person of ordinary skill in the art to make and/or use the purported inventions claimed therein as required by 35 U.S.C. § 112.

**TENTH AFFIRMATIVE DEFENSE**

57.     On information and belief, the '640 patent is invalid because it fails to set forth an adequate written description of the purported inventions claimed therein as required by 35 U.S.C. § 112.

**ELEVENTH AFFIRMATIVE DEFENSE**

58.     On information and belief, the '640 patent is invalid because it fails to provide the best mode known to the putative inventors of practicing the purported inventions claimed therein as required by 35 U.S.C. § 112.

**TWELFTH AFFIRMATIVE DEFENSE**

59.     On information and belief, the '640 patent is invalid because it fails to satisfy the definiteness requirement of 35 U.S.C. § 112.

**THIRTEENTH AFFIRMATIVE DEFENSE**

60.     On information and belief, the '640 patent is invalid because the purported inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

**FOURTEENTH AFFIRMATIVE DEFENSE**

61.     On information and belief, the '640 patent is invalid because the purported inventions claimed therein do not meet the requirement of non-obviousness contained in 35 U.S.C. § 103.

**FIFTEENTH AFFIRMATIVE DEFENSE**

62.     On information and belief, the '640 patent is invalid because it fails to set forth the proper inventors of the purported inventions claimed in the patent.

**SIXTEENTH AFFIRMATIVE DEFENSE**

63.     On information and belief, the '640 patent is not infringed by Wells Fargo because the claim constructions that would be required to find infringement are barred by the doctrine of prosecution disclaimer and/or prosecution history estoppel.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

64.     On information and belief, the '977 patent is invalid because it fails to enable a person of ordinary skill in the art to make and/or use the purported inventions claimed therein as required by 35 U.S.C. § 112.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

65.     On information and belief, the '977 patent is invalid because it fails to set forth an adequate written description of the purported inventions claimed therein as required by 35 U.S.C. § 112.

**NINETEENTH AFFIRMATIVE DEFENSE**

66.     On information and belief, the '977 patent is invalid because it fails to provide the best mode known to the putative inventors of practicing the purported inventions claimed therein as required by 35 U.S.C. § 112.

**TWENTIETH AFFIRMATIVE DEFENSE**

67.     On information and belief, the '977 patent is invalid because it fails to satisfy the definiteness requirement of 35 U.S.C. § 112.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

68.     On information and belief, the '977 patent is invalid because the purported inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

69.     On information and belief, the '977 patent is invalid because the purported inventions claimed therein do not meet the requirement of non-obviousness contained in 35

U.S.C. § 103.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

70.     On information and belief, the '977 patent is invalid because it fails to set forth the proper inventors of the purported inventions claimed in the patent.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

71.     On information and belief, the '977 patent is not infringed by Wells Fargo because the claim constructions that would be required to find infringement are barred by the doctrine of prosecution disclaimer and/or prosecution history estoppel.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

72.     On information and belief, the '854 patent is invalid because it fails to enable a person of ordinary skill in the art to make and/or use the purported inventions claimed therein as required by 35 U.S.C. § 112.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

73.     On information and belief, the '854 patent is invalid because it fails to set forth an adequate written description of the purported inventions claimed therein as required by 35 U.S.C. § 112.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

74.     On information and belief, the '854 patent is invalid because it fails to provide the best mode known to the putative inventors of practicing the purported inventions claimed therein as required by 35 U.S.C. § 112.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

75.     On information and belief, the '854 patent is invalid because it fails to satisfy the definiteness requirement of 35 U.S.C. § 112.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

76.     On information and belief, the '854 patent is invalid because the purported inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

### THIRTIETH AFFIRMATIVE DEFENSE

77.     On information and belief, the '854 patent is invalid because the purported

9

1   inventions claimed therein do not meet the requirement of non-obviousness contained in 35

2   U.S.C. § 103.

3                    **THIRTY-FIRST AFFIRMATIVE DEFENSE**

4          78.     On information and belief, the '854 patent is invalid because it fails to set forth

5   the proper inventors of the purported inventions claimed in the patent.

6                   **THIRTY-SECOND AFFIRMATIVE DEFENSE**

7          79.     On information and belief, the '854 patent is not infringed by Wells Fargo

8   because the claim constructions that would be required to find infringement are barred by the

9   doctrine of prosecution disclaimer and/or prosecution history estoppel.

10                   **THIRTY-THIRD AFFIRMATIVE DEFENSE**

11         80.     On information and belief, one or more of Phoenix's claims are barred by the

12  doctrine of laches.

13                   **THIRTY-FOURTH AFFIRMATIVE DEFENSE**

14         81.     On information and belief, Phoenix's claims for damages are limited and/or

15  barred by its failure to comply with the provisions of 35 U.S.C. § 287.

16                   **THIRTY-FIFTH AFFIRMATIVE DEFENSE**

17         82.     On information and belief, Phoenix's claims for infringement of the '846 patent

18  are barred in whole or in part by its failure to comply with the duty of candor before the United

19  States Patent and Trademark Office ("USPTO").  Phoenix misrepresented or omitted material

20  information in prosecuting the '846 patent.  The materiality of the information that was omitted

21  is confirmed by the fact that, as explained further below, in each instance the reference in

22  question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent

23  application seeking to claim related subject matter, and the reference was cited as a ground for

24  rejecting the claims of that pending application.  That demonstrates that a reasonable examiner

25  would have likely considered the withheld information relevant in assessing the patentability of

26  the claims here.  Further, on information and belief, Phoenix withheld the information with the

27  intent to deceive the USPTO.  Phoenix's intent to deceive the USPTO can be inferred from the

28  fact that it repeatedly failed to cite material prior art of which it was made aware during the

413809.01

1   course of prosecuting related applications.  Illustrative examples of such failures to disclose

2   material prior art of which Wells Fargo is currently aware are discussed below.  As a result of at

3   least these omissions, the '846 patent is unenforceable due to inequitable conduct.

4         83.     During the time that the '846 patent was pending before the USPTO, Phoenix was

5   aware of U.S. Patent No. 5,615,296 to Stanford.  Phoenix became aware of the Stanford patent

6   no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office

7   Action rejecting the claims of the '640 patent, based in part on obviousness over the Stanford

8   patent.

9         84.     Well over three months later, in September of 2002, Phoenix submitted a

10  supplemental Information Disclosure Statement.  That IDS contained no mention of the Stanford

11  patent.  Days after that, Phoenix submitted a set of amendments and arguments intended to

12  overcome the Examiner's prior rejection of the claims of the '846 patent.  Still no mention was

13  made of the Stanford patent, despite the fact that Phoenix had attempted at length to distinguish

14  the Stanford patent in the '640 patent prosecution.

15        85.     On March 12, 2003, the Examiner gave notice of allowance of all claims of the

16  '846 patent.  Phoenix still failed to disclose to the USPTO the Stanford patent, a reference that

17  may well have led the USPTO to withdraw its notice of allowance of the claims.

18        86.     The '846 patent reflects on its face that the Stanford patent was never considered

19  by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '846 patent

20  and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

21  material reference, Phoenix committed inequitable conduct, and the '846 patent is unenforceable.

22        87.     Also during the time that the '846 patent was pending before the USPTO, Phoenix

23  was aware of U.S. Patent No. 5,983,190 to Trower.  Phoenix became aware of the Trower patent

24  no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office

25  Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower

26  patent.

27        88.     Well over three months later, in September of 2002, Phoenix submitted a

28  supplemental Information Disclosure Statement.  That IDS contained no mention of the Trower

AMENDED ANSWER; DEMAND FOR JURY TRIAL
CASE NO. CV 08 0863-SBA

patent.  Days after that, Phoenix submitted a set of amendments and arguments intended to overcome the Examiner's prior rejection of the claims of the '846 patent.  Still no mention was made of the Trower patent.

89.    On March 12, 2003, the Examiner gave notice of allowance of all claims of the '846 patent.  Phoenix still failed to disclose to the USPTO the Trower patent, a reference that may well have led the USPTO to withdraw its notice of allowance of the claims.

90.    The '846 patent reflects on its face that the Trower patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '846 patent and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '846 patent is unenforceable.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

91.    On information and belief, Phoenix's claims for infringement of the '640 patent are barred in whole or in part by its failure to comply with the duty of candor before the USPTO.  Phoenix misrepresented or omitted material information in prosecuting the '640 patent.  The materiality of the information that was omitted is confirmed by the fact that, as explained further below, in each instance the reference in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject matter, and the reference was cited as a ground for rejecting the claims of that pending application.  That demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here.  Further, on information and belief, Phoenix withheld the information with the intent to deceive the USPTO.  Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to cite material prior art of which it was made aware during the course of prosecuting related applications.  Illustrative examples of such failures to disclose material prior art of which Wells Fargo is currently aware are discussed below.  As a result of at least these omissions, the '640 patent is unenforceable due to inequitable conduct.

92.    During the time that the '640 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,737,485 to Flanagan.  Phoenix became aware of the Flanagan patent

1   no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

2   Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

3   Flanagan patent.

4          93.    A year later, in September of 2002, Phoenix submitted a set of amendments and

5   responses to the USPTO's Office Action rejecting the claims of the '640 patent.  Phoenix made

6   no mention of the Flanagan patent at that time.  Shortly thereafter, Phoenix submitted another

7   supplemental Information Disclosure Statement to the USPTO.  Yet Phoenix again made no

8   mention of the Flanagan patent.

9          94.    The '640 patent reflects on its face that the Flanagan patent was never considered

10  by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '640 patent

11  and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

12  material reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

13         95.    During the time that the '640 patent was pending before the USPTO, Phoenix was

14  aware of U.S. Patent No. 5,265,014 to Haddock.  Phoenix became aware of the Haddock patent

15  no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

16  Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

17  Haddock patent.

18         96.    A year later, in September of 2002, Phoenix submitted a set of amendments and

19  responses to the USPTO's Office Action rejecting the claims of the '640 patent.  Phoenix made

20  no mention of the Haddock patent at that time.  Shortly thereafter, Phoenix submitted another

21  supplemental Information Disclosure Statement to the USPTO.  Yet Phoenix again made no

22  mention of the Haddock patent.

23         97.    The '640 patent reflects on its face that the Haddock patent was never considered

24  by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '640 patent

25  and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

26  material reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

27         98.    During the time that the '640 patent was pending before the USPTO, Phoenix was

28  aware of U.S. Patent No. 6,336,090 to Chou.  Phoenix became aware of the Chou patent no later

than May of 2002, when the Examiner in the '846 patent prosecution mailed an Office Action rejecting the claims of the '846 patent, based in part on obviousness over the Chou patent.

99.     A few months later, in September of 2002, Phoenix submitted a set of amendments and responses to the USPTO's Office Action rejecting the claims of the '640 patent. Phoenix made no mention of the Chou patent at that time.  Shortly thereafter, Phoenix submitted another supplemental Information Disclosure Statement to the USPTO.  Yet Phoenix again made no mention of the Chou patent.

100.    The '640 patent reflects on its face that the Chou patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '640 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

101.    On information and belief, Phoenix's claims for infringement of the '977 patent are barred in whole or in part by its failure to comply with the duty of candor before the USPTO. Phoenix misrepresented or omitted material information in prosecuting the '977 patent.  The materiality of the information that was omitted is confirmed by the fact that, as explained further below, in each instance the reference in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject matter, and the reference was cited as a ground for rejecting the claims of that pending application.  That demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here.   Further, on information and belief, Phoenix withheld the information with the intent to deceive the USPTO.  Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to cite material prior art of which it was made aware during the course of prosecuting related applications.  Illustrative examples of such failures to disclose material prior art of which Wells Fargo is currently aware are discussed below.  As a result of at least these omissions, the '977 patent is unenforceable due to inequitable conduct.

102.    During the time that the '977 patent was pending before the USPTO, Phoenix was

aware of U.S. Patent No. 5,615,296 to Stanford.  Phoenix became aware of the Stanford patent no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office Action rejecting the claims of the '640 patent, based in part on obviousness over the Stanford patent.

103.   After May of 2002, Phoenix submitted no less than five Information Disclosure Statements.  Not one disclosed the Stanford patent.  Phoenix also twice amended its claims, but did not make any mention of the Stanford patent when doing so, despite the fact that Phoenix had attempted at length to distinguish the Stanford patent in the '640 patent prosecution.

104.   The '977 patent reflects on its face that the Stanford patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

105.   During the time that the '977 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,737,485 to Flanagan.  Phoenix became aware of the Flanagan patent no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an Office Action rejecting the claims of the '846 patent, based in part on obviousness over the Flanagan patent.

106.   After September of 2001, Phoenix submitted a half-dozen Information Disclosure Statements.  Not one disclosed the Flanagan patent.  Phoenix also twice amended its claims, but did not make any mention of the Flanagan patent when doing so.

107.   The '977 patent reflects on its face that the Flanagan patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

108.   During the time that the '977 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,265,014 to Haddock.  Phoenix became aware of the Haddock patent no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

413809.01

Haddock patent.

109.   After September of 2001, Phoenix submitted a half-dozen Information Disclosure Statements.  Not one disclosed the Haddock patent.  Phoenix also twice amended its claims, but did not make any mention of the Haddock patent when doing so.

110.   The '977 patent reflects on its face that the Haddock patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

111.   During the time that the '977 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,540,589 to Waters.  Phoenix became aware of the Waters patent no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an Office Action rejecting the claims of the '846 patent, based in part on obviousness over the Waters patent.

112.   After September of 2001, Phoenix submitted a half-dozen Information Disclosure Statements.  Not one disclosed the Waters patent.  Phoenix also twice amended its claims, but did not make any mention of the Waters patent when doing so.

113.   The '977 patent reflects on its face that the Waters patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

114.   During the time that the '977 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 6,336,090 to Chou.  Phoenix became aware of the Chou patent no later than May of 2002, when the Examiner in the '846 patent prosecution mailed an Office Action rejecting the claims of the '846 patent, based in part on obviousness over the Chou patent.

115.   After May of 2002, Phoenix submitted no less than five Information Disclosure Statements.  Not one disclosed the Chou patent.  Phoenix also twice amended its claims, but did not make any mention of the Chou patent when doing so.

116.   The '977 patent reflects on its face that the Chou patent was never considered by

413809.01

the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

117.    During the time that the '977 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,983,190 to Trower.  Phoenix became aware of the Trower patent no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower patent.

118.    After May of 2002, Phoenix submitted no less than five Information Disclosure Statements.  Not one disclosed the Trower patent.  Phoenix also twice amended its claims, but did not make any mention of the Trower patent when doing so.

119.    The '977 patent reflects on its face that the Trower patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

120.    On information and belief, Phoenix's claims for infringement of the '854 patent are barred in whole or in part by its failure to comply with the duty of candor before the USPTO.  Phoenix misrepresented or omitted material information in prosecuting the '854 patent.  The materiality of the information that was omitted is confirmed by the fact that, as explained further below, in each instance the reference in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject matter, and the reference was cited as a ground for rejecting the claims of that pending application.  That demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here.   Further, on information and belief, Phoenix withheld the information with the intent to deceive the USPTO.  Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to cite material prior art of which it was made aware during the course of prosecuting related applications.  Illustrative

413809.01

examples of such failures to disclose material prior art of which Wells Fargo is currently aware are discussed below.  As a result of at least these omissions, the '854 patent is unenforceable due to inequitable conduct.

121.    During the time that the '854 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,983,190 to Trower.  Phoenix became aware of the Trower patent no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower patent.

122.    Phoenix filed the continuation application that matured into the '854 patent in January of 2005, nearly three years after it indisputably learned of the Trower patent.  At no time during the prosecution of the '854 patent did Phoenix disclose the Trower patent to the USPTO.

123.    The '854 patent reflects on its face that the Trower patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

124.    During the time that the '854 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 6,101,472 to Giangarra.  Phoenix became aware of the Giangarra patent no later than August of 2004, when the Examiner in the '977 patent prosecution mailed an Office Action rejecting the claims of the '977 patent, based in part on obviousness over the Giangarra patent.

125.    Phoenix filed the continuation application that matured into the '854 patent in January of 2005, several months after it indisputably learned of the Giangarra patent.  At no time during the prosecution of the '854 patent did Phoenix disclose the Giangarra patent to the USPTO.

126.    The '854 patent reflects on its face that the Giangarra patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent and the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

AMENDED ANSWER; DEMAND FOR JURY TRIAL
CASE NO. CV 08 0863-SBA

127.    During the time that the '854 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 6,330,530 to Horiguchi.  Phoenix became aware of the Horiguchi patent no later than August of 2004, when the Examiner in the '977 patent prosecution mailed an Office Action rejecting the claims of the '977 patent, based in part on obviousness over the Horiguchi patent.

128.    Phoenix filed the continuation application that matured into the '854 patent in January of 2005, several months after it indisputably learned of the Horiguchi patent.  At no time during the prosecution of the '854 patent did Phoenix disclose the Horiguchi patent to the USPTO.

129.    The '854 patent reflects on its face that the Horiguchi patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent and the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

130.    During the time that the '854 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 6,901,366 to Kuhn.  Phoenix became aware of the Kuhn patent no later than June of 2005, when the Examiner in the '977 patent prosecution mailed an Office Action rejecting the claims of the '977 patent, based in part on obviousness over the Kuhn patent.

131.    After June of 2005, Phoenix submitted several Information Disclosure Statements, and also amended the claims several times.  At no time during the prosecution of the '854 patent did Phoenix disclose the Kuhn patent to the USPTO.

132.    The '854 patent reflects on its face that the Kuhn patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent and the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

133.    On information and belief, the '846 patent is invalid under the doctrine barring double patenting and/or obviousness-type double patenting.

413809.01

**FORTIETH AFFIRMATIVE DEFENSE**

134. On information and belief, the '640 patent is invalid under the doctrine barring double patenting and/or obviousness-type double patenting.

**FORTY-FIRST AFFIRMATIVE DEFENSE**

135. On information and belief, the '977 patent is invalid under the doctrine barring double patenting and/or obviousness-type double patenting.

**FORTY-SECOND AFFIRMATIVE DEFENSE**

136. On information and belief, the '854 patent is invalid under the doctrine barring double patenting and/or obviousness-type double patenting.

**PRAYER FOR RELIEF**

WHEREFORE, Wells Fargo prays for judgment as follows:

(a) That Phoenix take nothing by its Complaint and the Court dismiss its Complaint with prejudice;

(b) That the Court find that no claim of the '846 patent has been, or is, infringed willfully, deliberately, or otherwise by Wells Fargo;

(c) That the Court find that no claim of the '640 patent has been, or is, infringed willfully, deliberately, or otherwise by Wells Fargo;

(d) That the Court find that no claim of the '977 patent has been, or is, infringed willfully, deliberately, or otherwise by Wells Fargo;

(e) That the Court find that no claim of the '854 patent has been, or is, infringed willfully, deliberately, or otherwise by Wells Fargo;

(f) That the Court find that the claims of the '846 patent are invalid;

(g) That the Court find that the claims of the '640 patent are invalid;

(h) That the Court find that the claims of the '977 patent are invalid;

(i) That the Court find that the claims of the '854 patent are invalid;

(j) That the Court find that the '846 patent is unenforceable because of inequitable

20

1   conduct committed during its prosecution;

2   (k) That the Court find that the '640 patent is unenforceable because of inequitable

3   conduct committed during its prosecution;

4   (l) That the Court find that the '977 patent is unenforceable because of inequitable

5   conduct committed during its prosecution;

6

7   (m) That the Court find that the '854 patent is unenforceable because of inequitable

8   conduct committed during its prosecution;

9   (n) That the Court award Wells Fargo reasonable attorneys' fees under 35 U.S.C. § 285;

10   (o) That the Court award Wells Fargo all costs and expenses it incurs in this action;

11   (p) That the Court award Wells Fargo such other and further relief that it deems just and

12   proper.

13   **DEMAND FOR JURY TRIAL**

14   Wells Fargo hereby demands a trial by jury of all issues so triable in this action.

15

16   Dated:  March 24, 2008                              KEKER & VAN NEST, LLP

17

18

19                                           By:  _____/s/ Eugene M. Paige_____
20                                                 Eugene M. Paige
                                                   Attorneys for Defendant
21                                                 WELLS FARGO & COMPANY

22

23

24

25

26

27

28

21

413809.01