KEKER & VAN NEST, LLP
DARALYN J. DURIE - #169825
EUGENE M. PAIGE - #202849
RYAN M. KENT - #220441
SANDEEP MITRA - #244054
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PHOENIX SOLUTIONS, INC., a California corporation, | Case No. CV 08-0863 MHP |
| Plaintiff, | **ANSWER TO AMENDED COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| WELLS FARGO BANK, N.A., a Delaware corporation, | |
| Defendant. | |

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") answers Phoenix Solutions, Inc.'s ("Phoenix's") amended complaint ("Complaint") as follows:

1.      Wells Fargo admits that the Complaint purports to recite an action for infringement under the patent laws of the United States.

### I.      THE PARTIES

2.      Wells Fargo denies that Phoenix is a corporation organized and existing under the laws of the State of California; Wells Fargo lacks knowledge or information sufficient to form a

416597.02

1   belief about the truth of the remainder of the allegations in this paragraph and, on that basis,

2   denies the remainder of the allegations in this paragraph.

3        3.    Wells Fargo admits that it has a place of business at 420 Montgomery Street, San

4   Francisco, California 94163.  Wells Fargo denies the remainder of the allegations of this

5   paragraph.

6                    **II.    FACTUAL BACKGROUND**

7        4.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

8   truth of the allegations in this paragraph and, on that basis, denies the allegations in this

9   paragraph.

10       5.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

11  truth of the allegations in this paragraph and, on that basis, denies the allegations in this

12  paragraph.

13       6.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

14  truth of the allegations in this paragraph and, on that basis, denies the allegations in this

15  paragraph.

16       7.    Wells Fargo admits that it provides financial services including banking,

17  insurance, investment, mortgage loan, and consumer finance services.  Wells Fargo admits that it

18  operates customer support lines, some of which are toll-free.  Wells Fargo admits that some of its

19  customer support lines employ interactive voice response (IVR) systems that provide customers

20  with audible responses.  Wells Fargo lacks information sufficient to form a belief about the truth

21  of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of

22  the allegations in this paragraph.

23       8.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

24  truth of the allegations in this paragraph and, on that basis, denies the allegations in this

25  paragraph.

26       9.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

27  truth of the allegations in this paragraph and, on that basis, denies the allegations in this

28  paragraph.

ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

416597.02

1        10.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

2 truth of the allegations in this paragraph and, on that basis, denies the allegations in this

3 paragraph.

4        11.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

5 truth of the allegations in this paragraph and, on that basis, denies the allegations in this

6 paragraph.

7        12.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

8 truth of the allegations in this paragraph and, on that basis, denies the allegations in this

9 paragraph.

10        13.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

11 truth of the allegations in this paragraph and, on that basis, denies the allegations in this

12 paragraph.

13        14.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

14 truth of the allegations in this paragraph and, on that basis, denies the allegations in this

15 paragraph.

16        15.      Wells Fargo admits that some of the IVR systems used in its customer support

17 lines may respond with an audible response or may route the caller to a live person.  Wells Fargo

18 lacks information sufficient to form a belief about the truth of the remainder of the allegations in

19 this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

20        16.      Wells Fargo lacks knowledge or information sufficient to form a belief about

21 truth of the allegations in this paragraph and, on that basis, denies the allegations in this

22 paragraph.

23        17.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

24 truth of the allegations in this paragraph and, on that basis, denies the allegations in this

25 paragraph.

26        18.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

27 truth of the allegations in this paragraph and, on that basis, denies the allegations in this

28 paragraph.

416597.02

19.      Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

20.      Wells Fargo admits that the IVR systems used in its customer support lines are a combination of components, including hardware, software, and content, that it obtained from third parties.  Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in the remainder this paragraph and, on that basis, denies the allegations in the remainder of this paragraph.

21.      Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

22.      Wells Fargo admits that, on or about June 2, 2006, J. Nicholas Gross of the Trojan Law Offices sent a letter addressed to James Strother, purportedly on behalf of Phoenix, in which Mr. Gross stated that the "speech based electronic agent" that Mr. Gross apparently assumed was operated by Wells Fargo "is very likely covered one or more claims of the Phoenix portfolio in this area."  Wells Fargo admits that the letter listed U.S. Patent Nos. 6,633,846, 6,616,172, 6,665,640, and 7,050,977 and a pending publication, Publication No. 2004/0117189.  Wells Fargo further admits that the letter stated that "we request that you please review the enclosed materials, and let us know within 30 days if Wells Fargo is interested in securing a license to the above technologies."  Wells Fargo admits that, on or about June 27, 2006, Walter Linder pointed out in a letter to Mr. Gross that Mr. Gross had failed to identity any specific claims that were infringed and had not provided any specific reasons why any such claims were infringed.  Wells Fargo admits that, on or about June 29, 2006, Mr. Gross replied by letter to Mr. Linder that Wells Fargo may have overlooked a CD enclosed with the original letter.  Wells Fargo admits that, on or about October 18, 2007, R. Joseph Trojan, purportedly representing Phoenix, sent a letter to Mr. Linder stating, *inter alia*, "the only rational choice is for Wells Fargo to solicit more favorable treatment as a willing licensee than the terms it would receive as a defendant in litigation."  The letter further demanded that Wells Fargo "disclose its call volume for each of

ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

the past three years for its interactive natural language processing customer support lines." Wells Fargo denies the remainder of the allegations in this paragraph.

### III.    JURISDICTION AND VENUE

23.    This paragraph states no more than a legal conclusion to which no response is required.

24.    This paragraph states no more than a legal conclusion to which no response is required.

25.    This paragraph states no more than a legal conclusion to which no response is required.

### IV.    FIRST COUNT FOR INFRINGEMENT OF UNITED STATES PATENT NO. 6,633,846

26.    Wells Fargo repeats and realleges its responses set forth in paragraphs 1-25 above.

27.    Wells Fargo admits that what purports to be a copy of U.S. Patent No. 6,633,846 (" '846 patent") is attached to the Complaint as Exhibit 1. Wells Fargo admits that the '846 patent is entitled "Distributed Real Time Speech Recognition System."  Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

28.    Denied.

29.    Denied.

30.    Denied.

### V.    SECOND COUNT FOR INFRINGEMENT OF UNITED STATES PATENT NO. 6,665,640

31.    Wells Fargo repeats and realleges its responses set forth in paragraphs 1-25 above.

32.    Wells Fargo admits that what purports to be a copy of U.S. Patent No. 6,665,640 (" '640 patent") is attached to the Complaint as Exhibit 2. Wells Fargo admits that the '640 patent is entitled "Interactive Speech Based Learning/Training System Formulating Search

416597.02

Queries Based on Natural Language Parsing of Recognized User Queries." Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

33. Denied.

34. Denied.

35. Denied.

## VI.     THIRD COUNT FOR INFRINGEMENT OF UNITED STATES PATENT NO. 7,050,977

36. Wells Fargo repeats and realleges its responses set forth in paragraphs 1 - 25 above.

37. Wells Fargo admits that what purports to be a copy of U.S. Patent No. 7,050,977 (" '977 patent") is attached to the Complaint as Exhibit 3. Wells Fargo admits that the '977 patent is entitled "Speech-Enabled Server for Internet Website and Method." Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

38. Denied.

39. Denied.

40. Denied.

## VII.     FOURTH COUNT FOR INFRINGEMENT OF UNITED STATES PATENT NO. 7,277,854

41. Wells Fargo repeats and realleges its responses set forth in paragraphs 1 - 25 above.

42. Wells Fargo admits that what purports to be a copy of U.S. Patent No. 7,277,854 (" '854 patent") is attached to the Complaint as Exhibit 4. Wells Fargo admits that the '854 patent is entitled "Speech Recognition System Interactive Agent." Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

416597.02

43.    Denied.

44.    Denied.

45.    Denied.

## VIII.   DEMAND FOR JURY TRIAL

46.    This paragraph demands a jury trial, and accordingly no response is necessary for this paragraph.

## IX.   PRAYER FOR RELIEF

47.    Wells Fargo denies each allegation of the Complaint not expressly admitted herein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

48.    On information and belief, the '846 patent is invalid because it fails to enable a person of ordinary skill in the art to make and/or use the purported inventions claimed therein as required by 35 U.S.C. § 112.

### SECOND AFFIRMATIVE DEFENSE

49.    On information and belief, the '846 patent is invalid because it fails to set forth an adequate written description of the purported inventions claimed therein as required by 35 U.S.C. § 112.

### THIRD AFFIRMATIVE DEFENSE

50.    On information and belief, the '846 patent is invalid because it fails to provide the best mode known to the putative inventors of practicing the purported inventions claimed therein as required by 35 U.S.C. § 112.

### FOURTH AFFIRMATIVE DEFENSE

51.    On information and belief, the '846 patent is invalid because it fails to satisfy the definiteness requirement of 35 U.S.C. § 112.

### FIFTH AFFIRMATIVE DEFENSE

52.    On information and belief, the '846 patent is invalid because the purported inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

1

## SIXTH AFFIRMATIVE DEFENSE

2      53.    On information and belief, the '846 patent is invalid because the purported

3  inventions claimed therein do not meet the requirement of non-obviousness contained in 35

4  U.S.C. § 103.

5

## SEVENTH AFFIRMATIVE DEFENSE

6      54.    On information and belief, the '846 patent is invalid because it fails to set forth

7  the proper inventors of the purported inventions claimed in the patent.

8

## EIGHTH AFFIRMATIVE DEFENSE

9      55.    On information and belief, the '846 patent is not infringed by Wells Fargo

10 because the claim constructions that would be required to find infringement are barred by the

11 doctrine of prosecution disclaimer and/or prosecution history estoppel.

12

## NINTH AFFIRMATIVE DEFENSE

13     56.    On information and belief, the '640 patent is invalid because it fails to enable a

14 person of ordinary skill in the art to make and/or use the purported inventions claimed therein as

15 required by 35 U.S.C. § 112.

16

## TENTH AFFIRMATIVE DEFENSE

17     57.    On information and belief, the '640 patent is invalid because it fails to set forth an

18 adequate written description of the purported inventions claimed therein as required by 35 U.S.C.

19 § 112.

20

## ELEVENTH AFFIRMATIVE DEFENSE

21     58.    On information and belief, the '640 patent is invalid because it fails to provide the

22 best mode known to the putative inventors of practicing the purported inventions claimed therein

23 as required by 35 U.S.C. § 112.

24

## TWELFTH AFFIRMATIVE DEFENSE

25     59.    On information and belief, the '640 patent is invalid because it fails to satisfy the

26 definiteness requirement of 35 U.S.C. § 112.

27

28

416597.02

1

### THIRTEENTH AFFIRMATIVE DEFENSE

2      60.    On information and belief, the '640 patent is invalid because the purported

3  inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

4

### FOURTEENTH AFFIRMATIVE DEFENSE

5      61.    On information and belief, the '640 patent is invalid because the purported

6  inventions claimed therein do not meet the requirement of non-obviousness contained in 35

7  U.S.C. § 103.

8

### FIFTEENTH AFFIRMATIVE DEFENSE

9      62.    On information and belief, the '640 patent is invalid because it fails to set forth

10  the proper inventors of the purported inventions claimed in the patent.

11

### SIXTEENTH AFFIRMATIVE DEFENSE

12      63.    On information and belief, the '640 patent is not infringed by Wells Fargo

13  because the claim constructions that would be required to find infringement are barred by the

14  doctrine of prosecution disclaimer and/or prosecution history estoppel.

15

### SEVENTEENTH AFFIRMATIVE DEFENSE

16      64.    On information and belief, the '977 patent is invalid because it fails to enable a

17  person of ordinary skill in the art to make and/or use the purported inventions claimed therein as

18  required by 35 U.S.C. § 112.

19

### EIGHTEENTH AFFIRMATIVE DEFENSE

20      65.    On information and belief, the '977 patent is invalid because it fails to set forth an

21  adequate written description of the purported inventions claimed therein as required by 35 U.S.C.

22  § 112.

23

### NINETEENTH AFFIRMATIVE DEFENSE

24      66.    On information and belief, the '977 patent is invalid because it fails to provide the

25  best mode known to the putative inventors of practicing the purported inventions claimed therein

26  as required by 35 U.S.C. § 112.

27

28

416597.02

1

### TWENTIETH AFFIRMATIVE DEFENSE

2    67.    On information and belief, the '977 patent is invalid because it fails to satisfy the

3    definiteness requirement of 35 U.S.C. § 112.

4

### TWENTY-FIRST AFFIRMATIVE DEFENSE

5    68.    On information and belief, the '977 patent is invalid because the purported

6    inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

7

### TWENTY-SECOND AFFIRMATIVE DEFENSE

8    69.    On information and belief, the '977 patent is invalid because the purported

9    inventions claimed therein do not meet the requirement of non-obviousness contained in 35

10    U.S.C. § 103.

11

### TWENTY-THIRD AFFIRMATIVE DEFENSE

12    70.    On information and belief, the '977 patent is invalid because it fails to set forth

13    the proper inventors of the purported inventions claimed in the patent.

14

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

15    71.    On information and belief, the '977 patent is not infringed by Wells Fargo

16    because the claim constructions that would be required to find infringement are barred by the

17    doctrine of prosecution disclaimer and/or prosecution history estoppel.

18

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

19    72.    On information and belief, the '854 patent is invalid because it fails to enable a

20    person of ordinary skill in the art to make and/or use the purported inventions claimed therein as

21    required by 35 U.S.C. § 112.

22

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

23    73.    On information and belief, the '854 patent is invalid because it fails to set forth an

24    adequate written description of the purported inventions claimed therein as required by 35 U.S.C.

25    § 112.

26

27

28

ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

416597.02

**TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

74.    On information and belief, the '854 patent is invalid because it fails to provide the best mode known to the putative inventors of practicing the purported inventions claimed therein as required by 35 U.S.C. § 112.

**TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

75.    On information and belief, the '854 patent is invalid because it fails to satisfy the definiteness requirement of 35 U.S.C. § 112.

**TWENTY-NINTH AFFIRMATIVE DEFENSE**

76.    On information and belief, the '854 patent is invalid because the purported inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

**THIRTIETH AFFIRMATIVE DEFENSE**

77.    On information and belief, the '854 patent is invalid because the purported inventions claimed therein do not meet the requirement of non-obviousness contained in 35 U.S.C. § 103.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

78.    On information and belief, the '854 patent is invalid because it fails to set forth the proper inventors of the purported inventions claimed in the patent.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

79.    On information and belief, the '854 patent is not infringed by Wells Fargo because the claim constructions that would be required to find infringement are barred by the doctrine of prosecution disclaimer and/or prosecution history estoppel.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

80.    On information and belief, one or more of Phoenix's claims are barred by the doctrine of laches.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

81.    On information and belief, Phoenix's claims for damages are limited and/or barred by its failure to comply with the provisions of 35 U.S.C. § 287.

416597.02

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

82.    On information and belief, Phoenix's claims for infringement of the '846 patent are barred in whole or in part by its failure to comply with the duty of candor before the United States Patent and Trademark Office ("USPTO").  Phoenix misrepresented or omitted material information in prosecuting the '846 patent.  The materiality of the information that was omitted is confirmed by the fact that, as explained further below, in each instance the reference in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject matter, and the reference was cited as a ground for rejecting the claims of that pending application.  That demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here.  Further, on information and belief, Phoenix withheld the information with the intent to deceive the USPTO.  Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to cite material prior art of which it was made aware during the course of prosecuting related applications.  Illustrative examples of such failures to disclose material prior art of which Wells Fargo is currently aware are discussed below.  As a result of at least these omissions, the '846 patent is unenforceable due to inequitable conduct.

83.    During the time that the '846 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,615,296 to Stanford.  Phoenix became aware of the Stanford patent no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office Action rejecting the claims of the '640 patent, based in part on obviousness over the Stanford patent.

84.    As explained in paragraph 82 above, the Stanford patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Stanford patent also discloses information that is unquestionably material to issues relating to the patentability of the claims of the '846 patent, including the issue of obviousness.  For example, the '846 patent as issued claims a system "wherein said speech representative values are transmitted continuously during said speech utterances."  The Stanford

416597.02

patent, at column 4, lines 10-12 notes that it discloses a "technique of speaker-independent, continuous-speech phrases and bi-grams."

85.    Well over three months later, in September of 2002, Phoenix submitted a supplemental Information Disclosure Statement. That IDS contained no mention of the Stanford patent. Days after that, Phoenix submitted a set of amendments and arguments intended to overcome the Examiner's prior rejection of the claims of the '846 patent. Still no mention was made of the Stanford patent, despite the fact that Phoenix had attempted at length to distinguish the Stanford patent in the '640 patent prosecution.

86.    On March 12, 2003, the Examiner gave notice of allowance of all claims of the '846 patent. Phoenix still failed to disclose to the USPTO the Stanford patent, a reference that may well have led the USPTO to withdraw its notice of allowance of the claims.

87.    The '846 patent reflects on its face that the Stanford patent was never considered by the Examiner during its prosecution. Notably, the attorney prosecuting both the '846 patent and the '640 patent was the same: J. Nicholas Gross. By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '846 patent is unenforceable.

88.    Also during the time that the '846 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,983,190 to Trower. Phoenix became aware of the Trower patent no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower patent.

89.    As explained in paragraph 82 above, the Trower patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family. The Trower patent also discloses information that is unquestionably material to issues relating to the patentability of the claims of the '846 patent, including the issue of obviousness. For example, the '846 patent as issued claims a program used in a system "for receiving user speech utterance signals representing speech utterances to be recognized" that "works within a browser program executing on said computing system." The Trower patent, at column 3, lines 15-16 and column 4, lines 28-34 notes that it discloses a system that relates to

"speech input" and utilizes "a microphone and analog to digital convertor circuitry for converting sound to digitized audio" and that the system is "advantageous for web pages."

90.     Well over three months later, in September of 2002, Phoenix submitted a supplemental Information Disclosure Statement.  That IDS contained no mention of the Trower patent.  Days after that, Phoenix submitted a set of amendments and arguments intended to overcome the Examiner's prior rejection of the claims of the '846 patent.  Still no mention was made of the Trower patent.

91.     On March 12, 2003, the Examiner gave notice of allowance of all claims of the '846 patent.  Phoenix still failed to disclose to the USPTO the Trower patent, a reference that may well have led the USPTO to withdraw its notice of allowance of the claims.

92.     The '846 patent reflects on its face that the Trower patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '846 patent and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '846 patent is unenforceable.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

93.     On information and belief, Phoenix's claims for infringement of the '640 patent are barred in whole or in part by its failure to comply with the duty of candor before the USPTO.  Phoenix misrepresented or omitted material information in prosecuting the '640 patent.  The materiality of the information that was omitted is confirmed by the fact that, as explained further below, in each instance the reference in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject matter, and the reference was cited as a ground for rejecting the claims of that pending application.  That demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here.  Further, on information and belief, Phoenix withheld the information with the intent to deceive the USPTO.  Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to cite material prior art of which it was made aware during the course of prosecuting related applications.  Illustrative examples of such failures to disclose material prior art of which Wells Fargo is currently aware

1    are discussed below.  As a result of at least these omissions, the '640 patent is unenforceable due

2    to inequitable conduct.

3              94.        During the time that the '640 patent was pending before the USPTO, Phoenix was

4    aware of U.S. Patent No. 5,737,485 to Flanagan.  Phoenix became aware of the Flanagan patent

5    no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

6    Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

7    Flanagan patent.

8              95.        As explained in paragraph 93 above, the Flanagan patent's materiality is

9    demonstrated by the fact that it was used to reject the claims of a patent application from the

10   same family.  The Flanagan patent also discloses information that is unquestionably material to

11   issues relating to the patentability of the claims of the '640 patent, including the issue of

12   obviousness.  For example, the '640 patent as issued claims "a speech recognition system for

13   generating recognized speech utterance data from partially processed speech data."  The

14   Flanagan patent, at column 3, lines 55-57 and column 4, lines 2-4 discloses a "feature extractor

15   [that] extracts speech features or cepstrum coefficients," which data are then "provided as inputs

16   to the speech recognizer."

17             96.        A year later, in September of 2002, Phoenix submitted a set of amendments and

18   responses to the USPTO's Office Action rejecting the claims of the '640 patent.  Phoenix made

19   no mention of the Flanagan patent at that time.  Shortly thereafter, Phoenix submitted another

20   supplemental Information Disclosure Statement to the USPTO.  Yet Phoenix again made no

21   mention of the Flanagan patent.

22             97.        The '640 patent reflects on its face that the Flanagan patent was never considered

23   by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '640 patent

24   and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

25   material reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

26             98.        During the time that the '640 patent was pending before the USPTO, Phoenix was

27   aware of U.S. Patent No. 5,265,014 to Haddock.  Phoenix became aware of the Haddock patent

28   no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

416597.02

1  Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

2  Haddock patent.

3      99.    As explained in paragraph 93 above, the Haddock patent's materiality is

4  demonstrated by the fact that it was used to reject the claims of a patent application from the

5  same family.  The Haddock patent also discloses information information that is unquestionably

6  material to issues relating to the patentability of the claims of the '640 patent, including the issue

7  of obviousness.  For example, the '640 patent as issued claims a system "adapted for responding

8  to speech-based queries" that has a "speech recognition system for generating recognized speech

9  utterance data" and "a query formulation system for converting said recognized speech data into

10  a search query suitable for identifying a topic query entry corresponding to said speech-based

11  query."  The Haddock patent, at column 4, lines 25-28 and 43-46 notes that it discloses a system

12  whereby "the user communicates textual information to the computer system by talking to the

13  computer rather than by typing the information at the keyboard" and is "embodied in a user

14  interface of a database system which receives a database query from a user, evaluates the query,

15  and provides a result of the evaluation to the user."

16      100.    A year later, in September of 2002, Phoenix submitted a set of amendments and

17  responses to the USPTO's Office Action rejecting the claims of the '640 patent.  Phoenix made

18  no mention of the Haddock patent at that time.  Shortly thereafter, Phoenix submitted another

19  supplemental Information Disclosure Statement to the USPTO.  Yet Phoenix again made no

20  mention of the Haddock patent.

21      101.    The '640 patent reflects on its face that the Haddock patent was never considered

22  by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '640 patent

23  and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

24  material reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

25      102.    During the time that the '640 patent was pending before the USPTO, Phoenix was

26  aware of U.S. Patent No. 6,336,090 to Chou.  Phoenix became aware of the Chou patent no later

27  than May of 2002, when the Examiner in the '846 patent prosecution mailed an Office Action

28  rejecting the claims of the '846 patent, based in part on obviousness over the Chou patent.

416597.02

103.    As explained in paragraph 93 above, the Chou patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Chou patent also discloses information information that is unquestionably material to issues relating to the patentability of the claims of the '640 patent, including the issue of obviousness.  For example, the '640 patent as issued claims a system that involves "partially processed speech data being received from a remote speech capturing system."  The Chou patent, at column 9, lines 51-59 notes that it discloses a "feature extraction and/or ASR units can be located a the receiving base station, the switch connected to the base station . . . or at another location connection on the network(s) to which these elements are connected" and that it will sometimes "be convenient to have the feature extraction and ASR operations performed at different locations."

104.    A few months later, in September of 2002, Phoenix submitted a set of amendments and responses to the USPTO's Office Action rejecting the claims of the '640 patent.  Phoenix made no mention of the Chou patent at that time.  Shortly thereafter, Phoenix submitted another supplemental Information Disclosure Statement to the USPTO.  Yet Phoenix again made no mention of the Chou patent.

105.    The '640 patent reflects on its face that the Chou patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '640 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

106.    On information and belief, Phoenix's claims for infringement of the '977 patent are barred in whole or in part by its failure to comply with the duty of candor before the USPTO.  Phoenix misrepresented or omitted material information in prosecuting the '977 patent.  The materiality of the information that was omitted is confirmed by the fact that, as explained further below, in each instance the reference in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject matter, and the reference was cited as a ground for rejecting the claims of that pending application.  That

1   demonstrates that a reasonable examiner would have likely considered the withheld information

2   relevant in assessing the patentability of the claims here.   Further, on information and belief,

3   Phoenix withheld the information with the intent to deceive the USPTO.  Phoenix's intent to

4   deceive the USPTO can be inferred from the fact that it repeatedly failed to cite material prior art

5   of which it was made aware during the course of prosecuting related applications.  Illustrative

6   examples of such failures to disclose material prior art of which Wells Fargo is currently aware

7   are discussed below.  As a result of at least these omissions, the '977 patent is unenforceable due

8   to inequitable conduct.

9          107.    During the time that the '977 patent was pending before the USPTO, Phoenix was

10  aware of U.S. Patent No. 5,615,296 to Stanford.  Phoenix became aware of the Stanford patent

11  no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office

12  Action rejecting the claims of the '640 patent, based in part on obviousness over the Stanford

13  patent.

14         108.    As explained in paragraph 106 above, the Stanford patent's materiality is

15  demonstrated by the fact that it was used to reject the claims of a patent application from the

16  same family.  The Stanford patent also discloses information that is unquestionably material to

17  issues relating to the patentability of the claims of the '977 patent, including the issue of

18  obviousness.  For example, the '977 patent as issued claims a system "adapted to interact on a

19  real-time basis in response to one or more continuous speech queries."  The Stanford patent, at

20  column 4, lines 10-12 notes that it discloses a "technique of speaker-independent, continuous-

21  speech phrases and bi-grams."

22         109.    After May of 2002, Phoenix submitted no less than five Information Disclosure

23  Statements.  Not one disclosed the Stanford patent.  Phoenix also twice amended its claims, but

24  did not make any mention of the Stanford patent when doing so, despite the fact that Phoenix had

25  attempted at length to distinguish the Stanford patent in the '640 patent prosecution.

26         110.    The '977 patent reflects on its face that the Stanford patent was never considered

27  by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent

28

416597.02

1    and the '640 patent was the same: J. Nicholas Gross. By intentionally failing to submit this

2    material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

3        111.    During the time that the '977 patent was pending before the USPTO, Phoenix was

4    aware of U.S. Patent No. 5,737,485 to Flanagan. Phoenix became aware of the Flanagan patent

5    no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

6    Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

7    Flanagan patent.

8        112.    As explained in paragraph 106 above, the Flanagan patent's materiality is

9    demonstrated by the fact that it was used to reject the claims of a patent application from the

10   same family. The Flanagan patent also discloses information that is unquestionably material to

11   issues relating to the patentability of the claims of the '977 patent, including the issue of

12   obviousness. For example, the '977 patent as issued claims "partially processing a speech

13   utterance at the client platform to generate limited data content speech data." The Flanagan

14   patent, at column 3, lines 55-57 and column 4, lines 2-4 discloses a "feature extractor [that]

15   extracts speech features or cepstrum coefficients," which partially processed speech data are then

16   "provided as inputs to the speech recognizer."

17       113.    After September of 2001, Phoenix submitted a half-dozen Information Disclosure

18   Statements. Not one disclosed the Flanagan patent. Phoenix also twice amended its claims, but

19   did not make any mention of the Flanagan patent when doing so.

20       114.    The '977 patent reflects on its face that the Flanagan patent was never considered

21   by the Examiner during its prosecution. Notably, the attorney prosecuting both the '977 patent

22   and the '846 patent was the same: J. Nicholas Gross. By intentionally failing to submit this

23   material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

24       115.    During the time that the '977 patent was pending before the USPTO, Phoenix was

25   aware of U.S. Patent No. 5,265,014 to Haddock. Phoenix became aware of the Haddock patent

26   no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

27   Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

28   Haddock patent.

416597.02

116.     As explained in paragraph 106 above, the Haddock patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Haddock patent also discloses information that is unquestionably material to issues relating to the patentability of the claims of the '977 patent, including the issue of obviousness.  For example, the '977 patent as issued claims a website that has a "speech recognition routine executing on the server computing system for completing recognition of said speech query using said speech data and said data content to generate a recognized speech query" and "a list of items, at least some of said list of items being selectable by a user based on said recognized speech query."  The Haddock patent, at column 4, lines 25-28 and 43-46 notes that it discloses a system whereby "the user communicates textual information to the computer system by talking to the computer rather than by typing the information at the keyboard" and is "embodied in a user interface of a database system which receives a database query from a user, evaluates the query, and provides a result of the evaluation to the user."

117.     After September of 2001, Phoenix submitted a half-dozen Information Disclosure Statements.  Not one disclosed the Haddock patent.  Phoenix also twice amended its claims, but did not make any mention of the Haddock patent when doing so.

118.     The '977 patent reflects on its face that the Haddock patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

119.     During the time that the '977 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,540,589 to Waters.  Phoenix became aware of the Waters patent no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an Office Action rejecting the claims of the '846 patent, based in part on obviousness over the Waters patent.

120.     As explained in paragraph 106 above, the Waters patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Waters patent also discloses information that is unquestionably material to

1    issues relating to the patentability of the claims of the '977 patent, including the issue of

2    obviousness. For example, the '977 patent as issued claims a system "wherein signal processing

3    functions required to generate said recognized speech query can be allocated between a client

4    platform and the server computing system as needed based on computing resources available to

5    said client platform and server computing system respectively." The Waters patent, at column 6,

6    lines 21-23 notes that it discloses a system where the "voice recognizer **34** is illustrated as a

7    standalone component, although it may be built-in to the controller."

8         121.    After September of 2001, Phoenix submitted a half-dozen Information Disclosure

9    Statements. Not one disclosed the Waters patent. Phoenix also twice amended its claims, but

10   did not make any mention of the Waters patent when doing so.

11        122.    The '977 patent reflects on its face that the Waters patent was never considered by

12   the Examiner during its prosecution. Notably, the attorney prosecuting both the '977 patent and

13   the '846 patent was the same: J. Nicholas Gross. By intentionally failing to submit this material

14   reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

15        123.    During the time that the '977 patent was pending before the USPTO, Phoenix was

16   aware of U.S. Patent No. 6,336,090 to Chou. Phoenix became aware of the Chou patent no later

17   than May of 2002, when the Examiner in the '846 patent prosecution mailed an Office Action

18   rejecting the claims of the '846 patent, based in part on obviousness over the Chou patent.

19        124.    As explained in paragraph 106 above, the Chou patent's materiality is

20   demonstrated by the fact that it was used to reject the claims of a patent application from the

21   same family. The Chou patent also discloses information that is unquestionably material to

22   issues relating to the patentability of the claims of the '977 patent, including the issue of

23   obviousness. For example, the '977 patent as issued claims a website that allows certain speech-

24   recognition operations to "be allocated between a client platform and the server computing

25   system as needed based on computing resources available to said client platform and server

26   computing system respectively." The Chou patent, at column 9, lines 51-59 notes that it

27   discloses a "feature extraction and/or ASR units can be located a the receiving base station, the

28   switch connected to the base station . . . or at another location connection on the network(s) to

ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

416597.02

1    which these elements are connected" and that it will sometimes "be convenient to have the

2    feature extraction and ASR operations performed at different locations."

3         125.    After May of 2002, Phoenix submitted no less than five Information Disclosure

4    Statements.  Not one disclosed the Chou patent.  Phoenix also twice amended its claims, but did

5    not make any mention of the Chou patent when doing so.

6         126.    The '977 patent reflects on its face that the Chou patent was never considered by

7    the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and

8    the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material

9    reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

10        127.    During the time that the '977 patent was pending before the USPTO, Phoenix was

11   aware of U.S. Patent No. 5,983,190 to Trower.  Phoenix became aware of the Trower patent no

12   later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office

13   Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower

14   patent.

15        128.    As explained in paragraph 106 above, the Trower patent's materiality is

16   demonstrated by the fact that it was used to reject the claims of a patent application from the

17   same family.  The Trower patent also discloses information that is unquestionably material to

18   issues relating to the patentability of the claims of the '977 patent, including the issue of

19   obviousness.  For example, the '977 patent as issued claims a website that "controls an

20   interactive character agent presented to the user for assisting in handling said speech query."

21   The Trower patent, at column 2, lines 23-25 and column 3, lines 15-17 notes that it discloses a

22   "client-server animation system used to display interactive, animated user interface characters

23   with speech input and output capability" and that the invention is "advantageous for web pages

24   because a web page can include an interactive character simply by adding a reference to the

25   agent server."

26        129.    After May of 2002, Phoenix submitted no less than five Information Disclosure

27   Statements.  Not one disclosed the Trower patent.  Phoenix also twice amended its claims, but

28   did not make any mention of the Trower patent when doing so.

ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

416597.02

130.    The '977 patent reflects on its face that the Trower patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

131.    On information and belief, Phoenix's claims for infringement of the '854 patent are barred in whole or in part by its failure to comply with the duty of candor before the USPTO.  Phoenix misrepresented or omitted material information in prosecuting the '854 patent.  The materiality of the information that was omitted is confirmed by the fact that, as explained further below, in each instance the reference in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject matter, and the reference was cited as a ground for rejecting the claims of that pending application.  That demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here.   Further, on information and belief, Phoenix withheld the information with the intent to deceive the USPTO.  Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to cite material prior art of which it was made aware during the course of prosecuting related applications.  Illustrative examples of such failures to disclose material prior art of which Wells Fargo is currently aware are discussed below.  As a result of at least these omissions, the '854 patent is unenforceable due to inequitable conduct.

132.    During the time that the '854 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,983,190 to Trower.  Phoenix became aware of the Trower patent no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower patent.

133.    As explained in paragraph 131 above, the Trower patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Trower patent also discloses information that is unquestionably material to

1    issues relating to the patentability of the claims of the '854 patent, including the issue of

2    obviousness.  For example, the '854 patent as issued claims a method employing an "interactive

3    electronic agent" that "is an animated character on a screen of the client device."  The Trower

4    patent, at column 2, lines 23-25 notes that it discloses a "client-server animation system used to

5    display interactive, animated user interface characters with speech input and output capability."

6        134.    Phoenix filed the continuation application that matured into the '854 patent in

7    January of 2005, nearly three years after it indisputably learned of the Trower patent.  At no time

8    during the prosecution of the '854 patent did Phoenix disclose the Trower patent to the USPTO.

9        135.    The '854 patent reflects on its face that the Trower patent was never considered

10   by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent

11   and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

12   material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

13       136.    During the time that the '854 patent was pending before the USPTO, Phoenix was

14   aware of U.S. Patent No. 6,101,472 to Giangarra.  Phoenix became aware of the Giangarra patent

15   no later than August of 2004, when the Examiner in the '977 patent prosecution mailed an Office

16   Action rejecting the claims of the '977 patent, based in part on obviousness over the Giangarra

17   patent.

18       137.    As explained in paragraph 131 above, the Giangarra patent's materiality is

19   demonstrated by the fact that it was used to reject the claims of a patent application from the

20   same family.  The Giangarra patent also discloses information that is unquestionably material to

21   issues relating to the patentability of the claims of the '854 patent, including the issue of

22   obviousness.  For example, the '854 patent as issued claims a method that includes "providing a

23   speech recognition engine adapted to recognize a first set of words and/or phrases during an

24   interactive speech session."  The Giangarra patent, at column 5, lines 41-44 discloses a

25   "vocabulary list stored in speech recognition unit 252 [that] provides a list of all words and

26   utterances by an external user which will be recognized as voice commands."

27       138.    Phoenix filed the continuation application that matured into the '854 patent in

28   January of 2005, several months after it indisputably learned of the Giangarra patent.  At no time

1  during the prosecution of the '854 patent did Phoenix disclose the Giangarra patent to the

2  USPTO.

3       139.    The '854 patent reflects on its face that the Giangarra patent was never considered

4  by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent

5  and the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

6  material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

7       140.    During the time that the '854 patent was pending before the USPTO, Phoenix was

8  aware of U.S. Patent No. 6,330,530 to Horiguchi.  Phoenix became aware of the Horiguchi

9  patent no later than August of 2004, when the Examiner in the '977 patent prosecution mailed an

10 Office Action rejecting the claims of the '977 patent, based in part on obviousness over the

11 Horiguchi patent.

12      141.    As explained in paragraph 131 above, the Horiguchi patent's materiality is

13 demonstrated by the fact that it was used to reject the claims of a patent application from the

14 same family.  The Horiguchi patent also discloses information that is unquestionably material to

15 issues relating to the patentability of the claims of the '854 patent, including the issue of

16 obviousness.  For example, the '854 patent as issued claims "a natural language query system."

17 The Horiguchi patent, at column 1, lines 27-28 describes a "natural language processing system."

18      142.    Phoenix filed the continuation application that matured into the '854 patent in

19 January of 2005, several months after it indisputably learned of the Horiguchi patent.  At no time

20 during the prosecution of the '854 patent did Phoenix disclose the Horiguchi patent to the

21 USPTO.

22      143.    The '854 patent reflects on its face that the Horiguchi patent was never considered

23 by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent

24 and the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

25 material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

26      144.    During the time that the '854 patent was pending before the USPTO, Phoenix was

27 aware of U.S. Patent No. 6,901,366 to Kuhn.  Phoenix became aware of the Kuhn patent no later

28

ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

416597.02

1    than June of 2005, when the Examiner in the '977 patent prosecution mailed an Office Action

2    rejecting the claims of the '977 patent, based in part on obviousness over the Kuhn patent.

3         145.    As explained in paragraph 131 above, the Kuhn patent's materiality is

4    demonstrated by the fact that it was used to reject the claims of a patent application from the

5    same family.  The Kuhn patent also discloses information that is unquestionably material to

6    issues relating to the patentability of the claims of the '854 patent, including the issue of

7    obviousness.  For example, the '854 patent as issued claims a method of using a system that

8    provides "a database of query/answer pairs concerning one or more topics which can be

9    responded to by the natural language query system."  The Kuhn patent, at column 5, line 1 and

10   lines 45-47 notes that it discloses a "knowledge database" as well as a "natural language parser

11   **12** [that] analyzes and extracts semantically important and meaningful topics from a loosely

12   structured, natural language text."

13        146.    After June of 2005, Phoenix submitted several Information Disclosure

14   Statements, and also amended the claims several times.  At no time during the prosecution of the

15   '854 patent did Phoenix disclose the Kuhn patent to the USPTO.

16        147.    The '854 patent reflects on its face that the Kuhn patent was never considered by

17   the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent and

18   the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material

19   reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

20                    **THIRTY-NINTH AFFIRMATIVE DEFENSE**

21        148.    On information and belief, the '846 patent is invalid under the doctrine barring

22   double patenting and/or obviousness-type double patenting.

23                      **FORTIETH AFFIRMATIVE DEFENSE**

24        149.    On information and belief, the '640 patent is invalid under the doctrine barring

25   double patenting and/or obviousness-type double patenting.

26                   **FORTY-FIRST AFFIRMATIVE DEFENSE**

27        150.    On information and belief, the '977 patent is invalid under the doctrine barring

28   double patenting and/or obviousness-type double patenting.

416597.02

1

**FORTY-SECOND AFFIRMATIVE DEFENSE**

2          151.    On information and belief, the '854 patent is invalid under the doctrine barring

3    double patenting and/or obviousness-type double patenting.

4

**PRAYER FOR RELIEF**

5          WHEREFORE, Wells Fargo prays for judgment as follows:

6          (a) That Phoenix take nothing by its Complaint and the Court dismiss its Complaint with

7    prejudice;

8          (b) That the Court find that no claim of the '846 patent has been, or is, infringed willfully,

9    deliberately, or otherwise by Wells Fargo;

10          (c) That the Court find that no claim of the '640 patent has been, or is, infringed willfully,

11    deliberately, or otherwise by Wells Fargo;

12          (d) That the Court find that no claim of the '977 patent has been, or is, infringed willfully,

13    deliberately, or otherwise by Wells Fargo;

14          (e) That the Court find that no claim of the '854 patent has been, or is, infringed willfully,

15    deliberately, or otherwise by Wells Fargo;

16          (f) That the Court find that the claims of the '846 patent are invalid;

17          (g) That the Court find that the claims of the '640 patent are invalid;

18          (h) That the Court find that the claims of the '977 patent are invalid;

19          (i) That the Court find that the claims of the '854 patent are invalid;

20          (j) That the Court find that the '846 patent is unenforceable because of inequitable

21    conduct committed during its prosecution;

22          (k) That the Court find that the '640 patent is unenforceable because of inequitable

23    conduct committed during its prosecution;

24          (l) That the Court find that the '977 patent is unenforceable because of inequitable

25    conduct committed during its prosecution;

26          (m) That the Court find that the '854 patent is unenforceable because of inequitable

27    conduct committed during its prosecution;

28          (n) That the Court award Wells Fargo reasonable attorneys' fees under 35 U.S.C. § 285;

27

416597.02

1    (o) That the Court award Wells Fargo all costs and expenses it incurs in this action;

2    (p) That the Court award Wells Fargo such other and further relief that it deems just and

3    proper.

### DEMAND FOR JURY TRIAL

5    Wells Fargo hereby demands a trial by jury of all issues so triable in this action.

6

7    Dated: May 7, 2008                                      KEKER & VAN NEST, LLP

8

9
                                                 By:    _____/s/ Eugene M. Paige_____
10                                                      Eugene M. Paige
                                                        Attorneys for Defendant
11                                                      WELLS FARGO BANK, N.A.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

416597.02