R. Joseph Trojan  CA Bar No. 137,067
trojan@trojanlawoffices.com
TROJAN LAW OFFICES
9250 Wilshire Blvd., Suite 325
Beverly Hills, CA  90212
Telephone:   (310) 777-8399
Facsimile:   (310) 777-8348
**Attorneys for Plaintiff,**
**PHOENIX SOLUTIONS, INC.**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO

| | |
|---|---|
| PHOENIX SOLUTIONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., a Delaware corporation,<br><br>Defendant. | CASE NO. CV08-0863 MHP<br><br>**PLAINTIFF PHOENIX SOLUTIONS, INC.'S BRIEF RE: DEFENDANT WELLS FARGO BANK, N.A.'S PROPOSED PROTECTIVE ORDER**<br><br>**Hon. Marilyn H. Patel** |

**Plaintiff's Brief re: Defendant's Proposed Protective Order**                                                                CV08-0863 MHP

Pursuant to the Court's order on August 25, 2008, Plaintiff Phoenix Solutions, Inc. ("Phoenix") respectfully submits the following brief regarding whether Mr. J. Nicholas Gross is to be permitted access to "Attorney's Eyes Only" confidential material under the terms of the protective order.

## I.   INTRODUCTION

Mr. Gross is Phoenix's patent counsel, who prosecuted the four patents-in-suit.[1]  *See* Declaration of J. Nicholas Gross ("Gross Decl."), at ¶ 2. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") contends that Mr. Gross should be denied access to confidential material, lest he uses the knowledge gained in discovery to prosecute future patents to its disadvantage. Wells Fargo's concern is completely unfounded.

As discussed below, courts have typically denied access to certain counsel from viewing confidential materials if allowing access would pose a significant anticompetitive threat to the producing party, particularly if said counsel was a competitive decision-maker. *See e.g. Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992). However, Phoenix and Wells Fargo are not direct competitors in the field. Neither Phoenix nor Wells Fargo currently make or sell speech recognition systems. *See* Declaration of Dr. Ian Bennett ("Bennett Decl."), at ¶ 2. Thus, whatever knowledge that Mr. Gross may gain as to the accused systems through his involvement in this case could not be used for anticompetitive purposes to harm Wells Fargo's ability to compete in the banking industry. Moreover, as outside patent counsel for Phoenix, Mr. Gross is not involved in any decision-making that would pose an anticompetitive threat to Wells Fargo. *See* Gross Decl., at ¶ 3. Hence, Wells Fargo cannot demonstrate that it is even possible for Mr. Gross to render "competitive" decision-making in this instance to harm Wells Fargo.

Additionally, Wells Fargo does not appear to assert any proprietary position

---

[1] U.S. Patent Nos. 6,633,846, 6,665,640, 7,050,977 and 7,277,854.

**Plaintiff's Brief re: Defendant's Proposed Protective Order**   -1-   **CV08-0863 MHP**

in such information. In fact Wells Fargo appears to have no intellectual property in the area of speech recognition that could be compromised by Mr. Gross' involvement.[2] Thus, it is extremely unlikely that whatever confidential information Wells Fargo does have will be usable by Mr. Gross to harm Wells Fargo.

On the other hand, Phoenix would be greatly prejudiced if Wells Fargo were permitted to use the protective order to effectively preclude Mr. Gross from assisting Phoenix in this litigation. As its only patent counsel, Mr. Gross is uniquely qualified to understand the technology that is at the heart of the case. This is why Wells Fargo so strenuously attempts to shut Mr. Gross out of the case. It is not because they are concerned that he would prosecute futures patents to gain an unfair advantage over its existing technology, as there is no ground for such concern; rather, Wells Fargo wants to exclude Mr. Gross because it hopes to deny Phoenix the ability to rely on the service of its only patent prosecution counsel in this litigation. Without the benefit of Mr. Gross' expertise in this field, Phoenix's ability to litigate the patents-in-suit would be excessively and unfairly hindered.

Thus, in light of the heavy prejudice against Phoenix, compared to the speculative harm against Wells Fargo, it is clear that Wells Fargo's proposed format for the protective order imposes an extremely unequal burden on the parties. Because Wells Fargo cannot show any significant harm under the prevailing case law, and any harm would nevertheless be outweighed by the prejudice to Phoenix if Mr. Gross were excluded from meaningful involvement in the litigation, Wells Fargo's proposed protective order must be denied.

---

[2] A search of patents issued to Wells Fargo in the US Patent Office with the key terms "speech recognition" reveals zero assets. In fact, a general search on all topics shows that Wells Fargo is the listed owner of a grand total of 23 patents, none of which remotely relate to the subject matter of this suit. *See* Trojan Decl., Exh. 2. *See also* Gross Decl., at ¶ 5.

Plaintiff's Brief re: Defendant's Proposed Protective Order     -2-     CV08-0863 MHP

## II.     ARGUMENT

### A.     No *Per Se* Exclusion of Counsel from Proprietary Information

First, it is critical to establish that there is no *per se* exclusion of counsel from proprietary information. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). *U.S. Steel* is widely considered the leading authority on the exclusion of counsel from proprietary information, and has been adopted by the Ninth Circuit. *See Brown Bag Software*, 960 F.2d at 1470. In *U.S. Steel*, the Federal Circuit made it clear that *per se* exclusion based on particular categories of counsel is forbidden. *U.S. Steel*, 730 F.2d at 1468. Particularly, the Federal Circuit held that a court cannot restrict access merely based on the type of counsel— whether outside or in-house—but must instead consider "the factual circumstances surrounding each individual counsel's activities, association, and relationship with a party." *Id.; see also Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1579 (Fed. Cir. 1991); *Brown Bag Software*, 960 F.2d at 1470 ("a court should examine the factual circumstances of *any* counsel's relationship to the party") (emphasis in original).

A crucial factor in the fact analysis is whether counsel engages in "competitive decision-making," that is, advising and participating "in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel*, 730 F.2d at 1468 n. 3. Since Wells Fargo and Phoenix are not competitors, none of these competitive decision-making concerns are even implicated in this case.

Thus, under *U.S. Steel*, and as explained further below, Mr. Gross is not involved in the sort of decision-making that would disqualify him from having access to Wells Fargo's confidential information.

#### 1.     Patent Counsel Are Not *Per Se* Involved in Competitve Decision-Making

TROJAN LAW OFFICES
BEVERLY HILLS

Wells Fargo contends that "it is simply too hard for an attorney prosecuting patents on behalf of the client to segregate the knowledge he gains through discovery into what he may use and what he may not use while prosecuting patents." *See* Declaration of R. Joseph Trojan ("Trojan Decl."), Exh. 1. In support of this contention, Wells Fargo relies principally on *Presidio Components, Inc. v. American Tech. Ceramics Corp.*, 546 F. Supp. 2d 951 (S.D. Cal. 2008). However as explained below, *Presidio* is not only inapposite, it is inconsistent with the prevailing trend of case law under *U.S. Steel*.

As discussed above, *U.S. Steel* makes it clear that *per se* exclusion based on the in-house/outside counsel distinction is forbidden. A court must instead analyze the factual circumstances of each counsel, paying particular attention to whether the counsel engages in competitive decision-making. As held by the Federal Circuit, this factual analysis applies equally to patent counsel. *See In re Sibia Neurosciences, Inc.*, 1997 WL 688174 at *3 (Fed. Cir. 1997) (unpublished) ("denying access to Cadus's outside counsel on ground that they also prosecute patents is the type of generalization counseled against in *U.S. Steel*. The facts, not the category, must inform the result."); *see also, Fluke Corp. v. Fine Instruments Corp.*, 1994 WL 739705 (W.D. Wash. 1994) (in denying the protective order to exclude in-house patent counsel, the court held that "[t]he fact that Mr. Koske is a patent attorney is not dispositive.").

Additionally, based on the principles set forth in *U.S. Steel* and *In re Sibia Neurosciences*, lower courts have held that a patent attorney is not *per se* involved in competitive decision-making. *See e.g. MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762, 774 (D.Md. 2003); *Avocent Redmond Corp. v. Rose Electronics, Inc.*, 242 F.R.D. 574, 578 (W.D. Wash. 2007) (refusing to accept the argument that patent prosecution inherently involves competitive decision making). These courts have held that a case-by-case analysis is required when considering whether an

**Plaintiff's Brief re: Defendant's Proposed Protective Order**    -4-    **CV08-0863 MHP**

TROJAN LAW OFFICES
BEVERLY HILLS

attorney should be excluded from access to certain patent information; factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house, retained, or patent, must govern any concern for inadvertent or accidental disclosure. *Id.*

Wells Fargo, however, points to a line of cases that determine that patent prosecution inherently constitutes competitive decision-making. *See e.g. Motorola, Inc. v. Interdigital Tech. Corp.*, 1995 WL 16189689 (D.Del. 1994); *Chan v. Intuit, Inc.*, 218 F.R.D. 659 (N.D.Cal. 2003); *Presidio Components*, 546 F.Supp.2d at 951 (S.D.Cal. 2008). Particularly, these cases assert that advice on the scope of patent claims, which is an integral part of patent prosecution, constitutes competitive decision-making. *See e.g. Motorola*, 1994 WL 16189689 at *4 (arguing "prosecuting patent applications also involve decisions of scope and emphasis"); *Chan*, 218 F.R.D. at 661-62 (arguing that advice relating to patent prosecution, including advice on scope of patent claims constitute competitive decision-making).[3]

However, these cases fly in the face of the rationale established by the Federal Circuit. Under *U.S. Steel*, courts are to avoid categorically denying access and to analyze each factual circumstance case-by-case. If a patent prosecutor is held to be inherently engaging in competitive decision-making, as in *Motorola*,

---

[3] Wells Fargo additionally argues that it would be too hard for a patent prosecutor to "segregate the knowledge he gains through discovery into what he may use and what he may not use while prosecuting patents." *See* Trojan Decl., Exh. 1. Thus they point to cases like *Motorola*, which argued that patent prosecutors would have a hard time avoiding disclosure, for they would have to "challenge the origin of every idea, … [t]his would be a sisyphean task for as soon as one idea would be stamped "untainted" another would come to mind." *Motorola*, 1994 WL 16189689 at *5. However, it is important to note that the *U.S. Steel* court understood that retaining confidential information can be difficult, and yet, **still** established that despite this difficulty, it is imperative to look at the factual circumstances of **any** counsel. 730 F.2d at 1467-68. Similar to the strong language in *Motorola*, the appellees in *U.S. Steel* argued that because in-house counsel worked so closely with their employer, "it was beyond the capability of anyone" and that it was "humanly impossible to control the inadvertent disclosure of some of this information." *See Id.* at 1468. However, the court felt because this difficulty can encompass anyone and everyone learning confidential information, the court held that the particular circumstances of each attorney must be analyzed instead of using blanket assumptions. *Id.* at 1467.

**Plaintiff's Brief re: Defendant's Proposed Protective Order**   -5-   **CV08-0863 MHP**

then **every patent prosecutor would automatically be excluded from assisting in the litigation of a patent prosecution client.** *See e.g. Medlmmune*, 271 F.Supp.2d at 774 n.13 (D. Md. 2003) ("The Court disagrees with the reasoning applied in *Interactive* [following *Motorola, supra*] because, in the Court's view, it amounts to a *per se* prohibition on patent counsel. If 'shaping' patent applications amounts to competitive decision-making, the court has trouble imagining a patent prosecutor who would not meet that standard."). If patent prosecution inherently involves competitive decision-making, it would be impossible to reconcile that rule with all the cases that allow access to patent prosecutors, including decisions by the Federal Circuit itself. *See, e.g., In re Sibia Neurosciences, Inc.*, 1997 WL 688174. Because cases such as *Motorola* are inconsistent with the standard set forth by the Federal Circuit in *U.S. Steel*, these cases should not be followed.

Therefore, the mere fact that Mr. Gross is the patent attorney for Phoenix does not automatically exclude him from having access to confidential information, as Wells Fargo has argued. This court must look to the particular circumstances of his relationship with Phoenix.

### 2. Mr. Gross's Relationship With Phoenix Does Not Constitute Competitive Decision-Making

Generally, competitive decision-making involves advising and participating "in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *U.S. Steel*, 730 F.2d at 1468 n. 3. Factors that have been examined in consideration of competitive decision-making include counseling on a gamut of legal issues, including employment, marketing, and contracts. *Brown Bag Software*, 960 F.2d at 1471. Other factors include involvement in the business affairs of a client. *See. Matsushita*, 929 F.2d at 1580 (where the court considered a counsel's role as General Counsel, Senior Vice president, and Secretary).

Here, Mr. Gross does not engage in competitive decision-making for Phoenix. *See* Gross Decl., at ¶ 3. Mr. Gross has no involvement in the operation of Phoenix. *Id*. He does not advise or participate in any of the business decisions as to pricing, product design, or marketing as in *U.S. Steel*, for Phoenix sells no products. *Id*. Unlike the excluded attorney in *Brown Bag*, he does not counsel Phoenix on a gamut of legal issues ranging from marketing to employment. Unlike the attorney in *Matsushita*, he does not hold a title or position in Phoenix. *Id*. He has advised Phoenix as to the licensing of the patented technology, which is not an uncommon duty for patent attorneys, nor is it an uncommon duty for litigation attorneys settling an infringement action. *Id*. Mr. Gross is simply an outside patent prosecutor for Phoenix, and such status alone is not enough to exclude him from the litigation.

Since Mr. Gross is not involved in any decision-making that would pose an uncompetitive threat to Wells Fargo, he should be allowed access under the protective order.

**B.     Excluding Mr. Gross Would Greatly Prejudice Phoenix's Ability to Litigate**

Another key consideration in determining whether counsel is subject to a protective order is the hardship to the party whose counsel is excluded. *See U.S. Steel*, 730 F.2d at 1468. Particularly, the court must consider whether that party's ability to litigate will be prejudiced. *See Brown Bag Software*, 960 F.2d at 1472. In analyzing this consideration, courts have examined the complexity of the case, the specialized knowledge of the attorney-in-question, the length of time the attorney has worked with the party, and the burden required to replace the attorney. *See U.S. Steel,* 730 F.2d at 1468 (allowing access because the litigation was extremely complex and at an advanced stage); *Carpenter Technology Corp. v. Armco, Inc.*, 132 F.R.D. 24, 28 (E.D.Pa. 1990) (holding technical nature of case and specialized

**Plaintiff's Brief re: Defendant's Proposed Protective Order**               -7-               **CV08-0863 MHP**

knowledge of attorney deemed essential to litigation); *In re Sibia Neurosciences, Inc.*, 1997 WL 688174 at 3 (noting that the attorney prosecuted patents for the party for several years); *Intel Corp. v. VIA Technologies, Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000) (denying access where a party's counsel was a large firm with multiple other qualified intellectual property attorneys, and the denied attorney was not crucial to the litigation).

Here, Phoenix's ability to litigate will be severely prejudiced if Mr. Gross is effectively excluded from meaningful involvement in the litigation. Like *U.S. Steel*, the instant case is complex, involving difficult technologies. Mr. Gross is the only patent prosecuting attorney for Phoenix. *See* Gross Decl., at ¶ 2. He has been the patent attorney for Phoenix for seven years. *Id*. He is the only attorney who prosecuted the patents-in-suit. *Id*. As the lone counsel for Phoenix with any extensive experience with the technology or the patents, and thus, as in *Carpenter*, his assistance is crucial to Phoenix's ability to litigate the case. *See also id.* at ¶ 4. Additionally, Phoenix is not a large company with many intellectual property attorneys at its disposal. *See* Bennett Decl., at ¶ 2-3. Phoenix is owned and operated by Dr. Bennett. *Id*. at ¶ 1. Mr. Gross is Dr. Bennett's only patent counsel. *Id*. at ¶ 2. Unlike the circumstance in *Intel*, there would be no competent replacement for Mr. Gross if he were excluded from assisting Dr. Bennett in this litigation. Forcing Phoenix to hire an additional expert consultant who would have to catch up on nine years of patent prosecution would be an excessive burden upon Phoenix, especially considering that Phoenix is a very small company with very limited resources. *Id*. at ¶ 3. Thus, to exclude Mr. Gross from the litigation would damage to Phoenix's ability to effectively litigate this case, and outweighs any speculative harm that Wells Fargo might assert, as explained further below.

  **C.**   **Since Phoenix and Wells Fargo Are Not Competitors, the Alleged Harm to Wells Fargo Does Not Meet the Standard Required by**

**Plaintiff's Brief re: Defendant's Proposed Protective Order**   -8-   **CV08-0863 MHP**

**Law**

A final consideration is the harm, if any, that Wells Fargo would face if Mr. Gross were permitted access to information deemed confidential. *See U.S. Steel,* 730 F.2d at 1468; *Brown Bag Software*, 960 F.2d at 1470-71. Wells Fargo argues that due to Phoenix's pending continuation applications, Mr. Gross could draft claims that could cover Wells Fargo's systems for the purpose of another infringement action. However, upon analysis of the case law, it is clear that the sort of harm alleged by Wells Fargo was not contemplated by the courts. Particularly, all the cases that denied access, even those that would be relied upon by Wells Fargo, involved competitors. *See e.g. U.S. Steel*, 730 F.2d 1465; *Brown Bag Software*, 960 F.2d 1465; *Motorola*, 1994 WL 16189689; *Presidio*, 546 F.Supp.2d 951. In cases where two parties are competitors, the fear of inadvertent disclosure to the client is warranted, as both parties deal with the same market, technologies, products, and customers, and thus there is a high likelihood that one competitor can use confidential information to gain a competitive advantage. *See e.g. Intel*, 198 F.R.D. at 529 (noting that the potential injury "would be great, because the information could be used to duplicate [the competitor's] products, compete for its customers, or interfere with its business plan and thereby gain a competitive advantage in the marketplace").

Again this is not a situation where the parties are two competitors attempting to learn of each other's product development. Wells Fargo does not sell the accused speech recognition systems. Wells Fargo does not own patents for speech recognition systems. It licenses these systems from a third-party and, thus, the idea that Phoenix can draft continuing applications to cover any developmental or confidential system of *Wells Fargo* is without merit. Additionally, Phoenix does not currently make or sell the patented systems. As such, there is no risk that Phoenix would gain an unfair competitive advantage by Mr. Gross learning of

Wells Fargo's technological developments, marketing strategy, or otherwise attempt to steal Wells Fargo's customers. In light of these facts and the relevant case law, it is clear that the potential injury alleged by Wells Fargo does not rise to the standard required by law.

Thus, since Wells Fargo and Phoenix are not competitors, there is no basis to assume that if Mr. Gross were to have access to confidential information, it would damage Wells Fargo in the marketplace. Additionally, Wells Fargo cannot show any activities by Mr. Gross that could fall within the definition of "competitive" decision making. Therefore, Wells Fargo's fear is unfounded, and certainly it does not outweigh the extreme burden and prejudice that Phoenix would surely face if Mr. Gross were excluded.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny Wells Fargo's proposed protective order, and enter a protective order that allows Mr. Gross access to confidential information.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | TROJAN LAW OFFICES |
|  | By |
| September 8, 2008 | /s/R. Joseph Trojan |
|  | R. Joseph Trojan |
|  | Attorneys for Plaintiff, |
|  | Phoenix Solutions, Inc. |