1  R. Joseph Trojan  CA Bar No. 137,067
2  trojan@trojanlawoffices.com
   Dylan C. Dang CA Bar No. 223,455
3  dang@trojanlawoffices.com
4  TROJAN LAW OFFICES
   9250 Wilshire Blvd., Suite 325
5  Beverly Hills, CA  90212
6  Telephone:   (310) 777-8399
   Facsimile:   (310) 777-8348
7  **Attorneys for Plaintiff,**
8  **PHOENIX SOLUTIONS, INC.**

9
       **UNITED STATES DISTRICT COURT**
10      **NORTHERN DISTRICT OF CALIFORNIA**
             **SAN FRANCISCO**
11

12  PHOENIX SOLUTIONS, INC., a        CASE NO. CV08-0863 MHP
    California corporation,
13                                     **PLAINTIFF PHOENIX SOLUTIONS,**
14               Plaintiff,            **INC.'S MEMORANDUM OF POINTS**
                                       **AND AUTHORITIES IN SUPPORT OF**
15                                     **MOTION FOR SUMMARY**
16      v.                             **JUDGMENT RE: DEFENDANT**
                                       **WELLS FARGO BANK, N.A.'S**
17                                     **AFFIRMATIVE DEFENSES**
18  WELLS FARGO BANK, N.A., a          **ALLEGING INEQUITABLE**
    Delaware corporation,              **CONDUCT**
19
20               Defendant.
21                                     Date: November 10, 2008
22                                     Time: 2:00 p.m.
                                       Hon. Marilyn H. Patel
23
24
25
26
27
28  **Plaintiff's Motion for Summary Judgment**                    **CV08-0863 MHP**
    **re: Inequitable Conduct**

TROJAN LAW OFFICES
BEVERLY HILLS

1

## TABLE OF CONTENTS

2  MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

3
4  I.   INTRODUCTION ................................................................................ 1

5  II.  STATEMENT OF FACTS ................................................................... 3

6  III. ARGUMENT ...................................................................................... 5

7
8       A.   Standard for Summary Judgment ................................................ 5

9       B.   Law on Inequitable Conduct ...................................................... 6

10      C.   The Prior Art Asserted in Wells Fargo's Affirmative
11           Defenses Are Not Material as Evidenced by Wells
             Fargo's Failure to Assert Them in Its Preliminary
12           Invalidity Contentions .......................................................... 7

13
14      D.   The Prior Art Patents Are Not Material Because They
             Are Cumulative to Other References Considered During
15           Prosecution ........................................................................ 8

16           1.   The Stanford and Trower Patents Are Not Material
17                to the '846 Patent ........................................................ 11
                  a)   The Stanford Patent ............................................. 11
18                b)   The Trower Patent ................................................ 12

19
20           2.   The Flanagan, Haddock and Chou Patents Are Not
                  Material to '640 Patent ................................................ 13
21                a)   The Flanagan Patent ............................................. 13
                  b)   The Haddock Patent ............................................. 15
22                c)   The Chou Patent ................................................... 16

23
24           3.   Waters, Flanagan, Haddock, Chou, Stanford and
                  Trower Patents Are Not Material to the '977 Patent ............. 17
25                a)   The Waters Patent ................................................ 17

26
27           4.   The Giangarra, Horiguchi, Kuhn and Trower
                  Patents Are Not Material to the '854 Patent ..................... 18

TROJAN LAW OFFICES
BEVERLY HILLS

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
BEVERLY HILLS

    a)    The Trower Patent ........................................................... 19

    b)    The Giangarra Patent ..................................................... 20

    c)    The Horiguchi Patent ..................................................... 20

    d)    The Kuhn Patent ............................................................ 21

E.    No Intent: Omission of the Prior Art Patents Was Not
Meant to Mislead the USPTO ........................................................... 23

IV.    CONCLUSION ................................................................................................. 25

**Plaintiff's Motion for Summary Judgment**
**re: Inequitable Conduct**
    - ii -    **CV08-0863 MHP**

1

2

# TABLE OF AUTHORITIES

3    CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ........................................................................................ 5

Cargill, Inc. v. Canbra Foods, Ltd.,
476 F.3d 1359 (Fed. Cir. 2007) .................................................................. 6, 23

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ........................................................................................ 6

Digital Control, Inc. v. Charles Mach. Works,
437 F.3d 1309 (Fed. Cir. 2006) ...................................................................... 9

Eli Lilly & Co. v. Zenith Goldline Pharms.,
471 F.3d 1369 (Fed. Cir. 2006) .................................................................... 23

Purdue Pharma L.P. v. Endo Pharms.,
438 F.3d 1123 (Fed. Cir. 2006) ................................................................ 6-7, 23

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

1

CODES, RULES, AND STATUTES

2

35 U.S.C. § 103(a).................................................................................14-16, 18, 22

3

4

35 U.S.C. § 282 ....................................................................................................... 6

5

37 C.F.R. § 1.56(a) .................................................................................................. 6

6

37 C.F.R. § 1.56(b) .................................................................................................. 6

7

8

37 C.F.R. § 1.56(b)(1) ............................................................................................. 7

9

37 C.F.R. § 1.56(b)(2) ............................................................................................. 7

10

37 C.F.R. § 1.97 .................................................................................................... 19

11

12

Fed.R.Civ.P. 56 ....................................................................................................... 5

13

Fed.R.Civ.P. 56(c) .................................................................................................. 5

14

15

Fed.R.Civ.P. 56(e) .................................................................................................. 6

16

17

18

19

20

21

22

23

24

25

26

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

**Plaintiff's Motion for Summary Judgment
re: Inequitable Conduct**                    - iv -                    **CV08-0863 MHP**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

4

5

Phoenix Solutions, Inc. ("Phoenix") hereby respectfully submits its memorandum of points and authorities in support of its motion for summary judgment on Wells Fargo Bank, N.A.'s ("Wells Fargo") affirmative defenses alleging inequitable conduct.

6

## I.    INTRODUCTION

7

8

9

10

11

12

In order to establish inequitable conduct, Wells Fargo has to clear two hurdles: first, it must show by clear and convincing evidence that the nine prior art patents that were not disclosed to the United States Patent and Trademark Office (PTO) are, in fact, material to the patentability of the patents-in suit; second, it must show the failure to disclose the prior art were intended to deceive the PTO. Wells Fargo cannot clear either hurdle.

13

14

15

16

17

18

19

20

21

22

23

Wells Fargo alleges that the patents-in-suit are unenforceable because certain material prior art was not disclosed during prosecution of the patents. In a nutshell, the allegation is that the undisclosed prior art patents are material because they were cited in the prosecution of one or another of the patents-in-suit. Wells Fargo contends that the four patents-in-suit are related by virtue of being directed to the same subject matter. Since the undisclosed prior art patents were cited in prosecution against one or another of the patents-in-suit, Wells Fargo contends the prior art must necessarily be material to the other patents-in-suit. And because the patents-in-suit were all prosecuted by the same attorney, it is alleged the failure to disclose these prior art patents must have been intended to deceive the PTO. These allegations have no merit.

24

25

26

27

That the undisclosed prior art patents are not material is now plainly admitted by Wells Fargo. This is the only conclusion which can be drawn from the fact that Wells Fargo itself does not assert any of these references in its Preliminary Invalidity Contentions. In its invalidity contentions, Wells Fargo cites at least 89

28

**Plaintiff's Motion for Summary Judgment**                    -1-                         **CV08-0863 MHP**
**re: Inequitable Conduct**

TROJAN LAW OFFICES
BEVERLY HILLS

references against the various claims of the patents-in-suit, and argues that more than 20 of these references anticipate all the claims.  Yet, among these numerous references and claim charts, Wells Fargo does not assert the undisclosed prior art patents that it alleges in its affirmative defenses as being material to the patents-in-suit.  Though Wells Fargo alleges that these prior art patents should have been disclosed because the examiner would have regarded them as being material to the validity of the patents-in-suit, Wells Fargo itself does not find them material enough to support its invalidity contentions.  Most telling, among the references it does rely upon, Wells Fargo asserts that some of the references *already considered in the file histories of these patents* render the claims invalid.  Thus, Wells Fargo's own pleadings acknowledge that the undisclosed prior art is far less relevant than the references reviewed by the examiner.

If Wells Fargo does not consider the references to be material, then what basis is there for the contention that they should have been disclosed to the PTO?  Wells Fargo's failure to assert these references in support of its invalidity contentions, and its reliance primarily on references of record for its invalidity claims is a plain admission that the prior art patents are not material.

More importantly, the asserted prior art patents are not material because they are cumulative to other references of record.  During the prosecution of each patent-in-suit, the claims were invariably rejected as being either anticipated or obvious in view of certain references cited by the examiner. As discussed below, the undisclosed prior art patents are cumulative to these references.  There is no genuine issue of material fact that the undisclosed prior art patents could have added nothing beyond the references already considered by the examiner, and therefore they would not have been material to the patentability of the patents-in-suit.

In addition to the prior art being not material, the failure to disclose the prior

art was not intended to deceive the PTO.  Since each undisclosed prior art patent is cumulative to other references already of record, the applicants and their counsel did not believe it was necessary to disclose the art.    In fact, the same examiner prosecuted three of the four patents-in-suit.  That the examiner chose to assert certain of the prior art against some of the patents-in-suit but not against others indicates that, where he did not assert a particular prior art, he considered the prior art not to be material.  There is no basis in fact to infer that the applicants and their counsel intended to mislead the PTO by not disclosing these references.

## II.    STATEMENT OF FACTS

Phoenix sued Wells Fargo for patent infringement on February 12, 2008, alleging that Wells Fargo's operation of a "natural language interactive voice response system" infringes four of its patents.  *See* Docket Entry 1.  The patents at issue are U.S. Patent Nos. 6,633,846 ("'846 patent"), 6,665,640 ("'640 patent"), 7,050,977 ("'977 patent") and 7,277,854 ("'854 patent"), all directed to speech recognition software.  *See* Declaration of R. Joseph Trojan ("Trojan Decl."), Exhs. 1, 2, 3 and 4 respectively.[1]  Speech recognition software allows users to verbally communicate with a computer by enabling the computer to process the user's natural speech and generate appropriate responses.

In response to the complaint, Wells Fargo pled four affirmative defenses—nos. 35, 36, 37 and 38—each alleging that the patents-in-suit are unenforceable due to inequitable conduct before the PTO.  *See* Exh. 5 (¶¶ 82-147).  Specifically, Wells Fargo alleges that the patentees violated the duty of candor by not disclosing certain prior art patents during prosecution of the patents-in-suit.  *See id*.  For the '846 patent, Wells Fargo alleges U.S. Patent Nos. 5,615,296 to Stanford *et al*. ("Stanford patent") and 5,983,190 to Trower *et al*. ("Trower patent") were improperly omitted.

---

[1] All exhibits herein are attached to the Declaration of R. Joseph Trojan, and thus all citations are to the Trojan Declaration.

TROJAN LAW OFFICES
BEVERLY HILLS

*See id*. (¶¶ 82-92).   For the '640 Patent, Wells Fargo alleges U.S. Patent Nos. 5,737,485 to Flanagan *et al*. ("Flanagan patent"), 5,265,014 to Haddock *et al*. ("Haddock patent"), and 6,336,090 to Chou *et al*. ("Chou patent") were improperly omitted.  *See id*. (¶¶ 93-105).  For the '977 patent, Wells Fargo alleges the Stanford, Trower, Flanagan, Haddock, and Chou patents, along with U.S. Patent Nos. 5,540,589 to Waters ("Waters patent"), were improperly omitted. *See id*. (¶¶ 106-130).   And for the '854 patent, Wells Fargo alleges the Trower patent, and U.S. Patent Nos. 6,101,472 to Giangarra *et al*. ("Giangarra patent"), 6,330,530 to Horiguchi *et al*. ("Horiguchi patent"), and 6,901,366 to Kuhn *et al*. ("Kuhn patent") were improperly omitted.  *See id*. (¶¶ 131-147).  In summary:

| Asserted Prior Art Omitted | Patents-in-Suit | | | |
|---|---|---|---|---|
| | '846 Patent | '640 Patent | '977 Patent | '854 Patent |
| Stanford | √ | | √ | |
| Trower | √ | | √ | √ |
| Flanagan | | √ | √ | |
| Haddock | | √ | √ | |
| Chou | | √ | √ | |
| Waters | | | √ | |
| Giangarra | | | | √ |
| Horiguchi | | | | √ |
| Kuhn | | | | √ |

However, it is to be noted that Stanford, Flanagan, Haddock, Chou, and Waters are cited on the face of the '854 patent and were thus considered during such prosecution. *See* Exh. 4.

Pursuant to Local Patent Rule 3-3, Wells Fargo served its Preliminary Invalidity Contentions on July 31, 2008.  *See* Exh. 6.  In its contentions, Wells

Fargo enumerated some 24 references as anticipating prior art. *Id*. Wells Fargo also enumerated some 65 references in support of its obviousness contentions. *Id*. In total, at least 89 references were cited in support of its invalidity contentions, amounting to more than 12,000 electronic pages of prior art exhibits, appended to more than 500 pages of claim charts. *Id*. Yet, among this mountain of documents, eight of the nine prior art patents that Wells Fargo cited in their affirmative defenses of inequitable conduct—namely, Stanford, Trower, Flanagan, Haddock, Waters, Giangarra, Horiguchi and Kuhn—were not asserted in the invalidity contentions. *See* Exh. 6. Only the Chou patent is asserted in the invalidity contentions, but even there it is asserted only against the '846 patent, and *not* the '977 and '640 patents where Wells Fargo claims such omission renders such patents unenforceable. While Wells Fargo alleged these patents were so important that it was fraud not to disclose them, eight of nine were so irrelevant that they did not receive even an honorable mention in the invalidity contentions. Instead, Wells Fargo relies heavily on other references, including in many instances, materials already considered during prosecution.

## III.    ARGUMENT

### A.    Standard for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact is said to exist only when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). While the party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of

TROJAN LAW OFFICES
BEVERLY HILLS

1    material fact, once this initial burden has been satisfied, the non-moving party must

2    designate specific facts showing that there is a genuine issue for trial.  *See* <u>Celotex</u>

3    <u>Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  It is the opposing party's burden to

4    show a triable issue of fact as to matters on which it will bear the burden of

5    persuasion at trial.  *See id*.  Mere disagreement or the bald assertion that a genuine

6    issue of material fact exists does not preclude summary judgment.  *See*

7    Fed.R.Civ.P. 56(e) ("an adverse party may not rest upon mere allegations or denials

8    … [but] must set forth specific facts showing that there is a genuine issue for trial").

9    **B.    Law on Inequitable Conduct**

10       Under 37 C.F.R. § 1.56(a), those associated with the filing and prosecution of

11   a patent application has a duty of candor and good faith to disclose to the PTO all

12   information known to be material to patentability.   *See* 37 C.F.R. § 1.56(a).

13   Accordingly, to establish that a patent is unenforceable for inequitable conduct

14   under 35 U.S.C. § 282, it must be shown by clear and convincing evidence that the

15   patent applicant and his or her counsel (1) "made an affirmative misrepresentation

16   of material fact, failed to disclose material information, or submitted false material

17   information, <u>and</u> (2) intended to deceive the … [PTO]."  <u>Cargill, Inc. v. Canbra</u>

18   <u>Foods, Ltd.</u>, 476 F.3d 1359, 1363 (Fed. Cir. 2007) (emphasis added).  Information

19   is material:

20           [W]hen it is not cumulative to information already of record or
              being made of record in the application, and
21                   (1) It establishes, by itself or in combination with other
22           information, a prima facie case of unpatentability of a claim; or
                     (2) It refutes, or is inconsistent with, a position the
23           applicant takes in:
                             (i) Opposing an argument of unpatentability relied
24                   on by the Office, or
25                           (ii) Asserting an argument of patentability.

26

27   37 C.F.R. § 1.56(b); *see also,* <u>Purdue Pharma L.P. v. Endo Pharms.</u>, 438 F.3d 1123,

28

TROJAN LAW OFFICES
BEVERLY HILLS

1133-34 (Fed. Cir. 2006). And the intent to deceive "cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." Purdue Pharma, 438 F.3d at 1134 (internal quotations omitted).

### C. The Prior Art Asserted in Wells Fargo's Affirmative Defenses Are Not Material as Evidenced by Wells Fargo's Failure to Assert Them in Its Preliminary Invalidity Contentions

In each of its affirmative defense alleging inequitable conduct, Wells Fargo contends:

> The materiality of the information that was omitted is confirmed by the fact that…in each instance the reference in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject matter, and the reference was cited as a ground for rejecting the claims of the pending application. That demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here.

See Exh. 5 (¶¶ 82, 93, 106, 131). At the core of the argument is the assertion that the nine undisclosed prior art patents are material because they purportedly establish, by themselves or in combination with other information, a *prima facie* case of unpatentability.[2] Yet, of the nine references, Wells Fargo does not assert eight of them in support of its invalidity contentions; the only one it does rely upon is the Chou patent – but even in that case it is only against the '846 patent,[3] and *not*

_____

[2] It should be noted that Wells Fargo does not rely on § 1.56(b)(2) to assert that the withheld prior art "refutes, or is inconsistent with," a position taken during prosecution. *See* 37 C.F.R. § 1.56(b)(2). The entirety of its inequitable conduct defense is based on § 1.56(b)(1).

[3] This contention is substantially weakened by the fact that, as with many of Wells Fargo's contentions, the Chou reference was in fact cited in the '846 prosecution. *See* Exh. 1.

TROJAN LAW OFFICES
BEVERLY HILLS

the '977 and '640 patents where Wells Fargo claims such omission renders such patents unenforceable.

Among the more than 89 references asserted by Wells Fargo and the 13,000 or so pages of exhibits and claim charts marshaled in support of its invalidity contentions, there is not a mention of the Stanford, Trower, Flanagan, Haddock, Waters, Giangarra, Horiguchi or Kuhn patents. *See* Exh. 6. Only the Chou patent is identified, as noted above, and that is against a different patent. *Id*. Though Wells Fargo alleges that a reasonable examiner would have likely considered these patents to be material in its affirmative defenses, Wells Fargo itself does not deem them material enough for its invalidity contentions. Wells Fargo's failure to assert these references in support of its invalidity contentions is a plain admission that the prior art patents are not material. These references are also not material because they are cumulative to other references disclosed during prosecution.

**D.    The Prior Art Patents Are Not Material Because They Are Cumulative to Other References Considered During Prosecution**

Wells Fargo's own contentions compel the conclusion that the nine uncited references are less relevant than other prior art of record. To wit:

- As to the '846 patent, Wells Fargo asserts that U.S. Patents 6,408,272 and 6,336,090 anticipate the claims of such patent (Exhs. 17-R,-U); yet both references were cited and considered in the prosecution of the '846 patent. Therefore Wells Fargo admits that the non-disclosed prior art, none of which is applied by them against the '846 patent in their invalidity contentions, is cumulative and less material than the art of record reviewed by the Examiner.

- For the '640 patent, Wells Fargo asserts that the same U.S. Patent 6,408,272 anticipates the claims of such patent (Exh. 17-R); yet again such reference was cited and considered in the prosecution of the '640 patent. Again this

TROJAN LAW OFFICES
BEVERLY HILLS

constitutes an admission by Wells Fargo that the non-disclosed prior art, none of which is applied by them against the '640 patent in their invalidity contentions, is cumulative and less material than the art of record reviewed by the Examiner.

• Looking at the '977 patent, Wells Fargo asserts that U.S. Patents 6,408,272, 6,532,444, 6,078,886 and 6,157,705 each anticipate the claims of such patent (Exhs. 17-R,-S,-T,-V); yet again such references were cited and considered in the prosecution of the '977 patent.   Again this constitutes an admission by Wells Fargo that the non-disclosed prior art, none of which is applied by them against the '977 patent in their invalidity contentions, is cumulative and less material than the art of record reviewed by the Examiner.

• Finally as to the '854 patent, Wells Fargo asserts that U.S. Patents 7,003,463, 6453290, 6532444, 6078886, 6157705, 6647363 and 6311182 each anticipate the claims of such patent (Exhs. 17-A,-Q,-S,-T,-V,-W,-X); yet again such references were cited and considered in the prosecution of the '854 patent.   Again this constitutes an admission by Wells Fargo that the non-disclosed prior art, none of which is applied by them against the '977 patent in their invalidity contentions, is cumulative and less material than the art of record reviewed by the Examiner.

Accordingly, there was no reason during prosecution of the patents-in-suit to disclose the asserted prior art patents because even Wells Fargo admits these references are cumulative to other references already considered by the patent examiner. *See* Digital Control, Inc. v. Charles Mach. Works, 437 F.3d 1309, 1319 (Fed. Cir. 2006) ("a withheld otherwise material prior art reference is not material for the purposes of inequitable conduct if it is merely cumulative to that information considered by the examiner").

Unable to demonstrate with clear and convincing evidence that the prior art

patents are not cumulative, Wells Fargo, to create the appearance of materiality, cherry picks language from the claims of the patents-in-suit and then asserts the prior art has some teaching relating to that particular limitation. This is not the test for materiality. That Wells Fargo can find a reference teaching something relating to a particular, isolated limitation is not the test for materiality. By that definition, there would be no such thing as an immaterial reference.

More particularly, what Wells Fargo does is to take a prior art patent from the prosecution history of one patent-in-suit and asserts it against another patent-in-suit. For example, Wells Fargo asserts that the '846 patent is unenforceable due to the Stanford and Trower patents, which were cited against the '640 patent. *See* Exh. 5 (¶¶ 83, 88). Wells Fargo then turns around and asserts that the '640 patent is unenforceable due to the Flanagan, Haddock and Chou patents, which were cited against the '846 patent. *Id*. (¶¶ 93-105). This is nothing more than a reshuffling of the prior art.

Just because a prior art was cited during the prosecution of one application does not make it material to the patentability of another application. Here, three of the four patents-in-suit were examined by the same examiner, Martin Lerner. *See* Exhs. 1, 3, and 4. The fact that Examiner Lerner cited certain prior art in one application but chose not to cite it in another would suggest that he did not consider the art to be material to that application.[4]

Phoenix submits that the discussion above illustrates quite clearly why Wells Fargo's own pleadings preclude any possibility that they can ever demonstrate that these references are material. To the extent the Court requires further elaboration on the lack of relevance, Phoenix provides additional discussion below on why the nine prior art patents are not material because they are cumulative to other

---

[4] Examiner Lerner was the primary examiner for the '854 and '977 patents, and the was also an assistant examiner for the '846 patent.

TROJAN LAW OFFICES
BEVERLY HILLS

references already considered during prosecution.

### 1.    The Stanford and Trower Patents Are Not Material to the '846 Patent

In its Thirty-Fifth Affirmative Defense, Wells Fargo alleges that the '846 patent is unenforceable due to the failure to disclose the Stanford and Trower patents. *See* Exh. 5 (¶¶ 82-92). Both Stanford and Trower were considered during prosecution of the '640 patent. *Id*. (The '846 and '640 patents were examined by Examiner Lerner.)

### a)    The Stanford Patent

As Wells Fargo frames it, the '846 patent claims a system "wherein said speech representatives values are transmitted continuously during said speech utterances," quoting claim 1. *See* Exh. 5 (¶ 84). Wells Fargo alleges the Stanford patent is material because it discloses a "technique of speaker-independent, continuous-speech phrases and bi-grams." *Id*. Wells Fargo alleges that "the Stanford patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family," namely the '640 patent. *Id*. Wells Fargo does not challenge the validity of claim 1 in its invalidity contentions; specifically, it does not assert that claim 1 is obvious in light of the Stanford patent.

During prosecution of the '640 patent, the examiner determined that Stanford "teach[es] a client-server arrangement…, but not a distributed speech recognition system." *See* Exh. 7 (p. 4). Since the claims in the '846 patent are all directed to a distributed speech recognition system, Stanford is not material to the '846 patent. *See* Exh. 1.

Moreover, the particular disclosure from the Stanford patent ("technique of speaker-independent, continuous-speech phrases and bi-grams") that Wells Fargo asserts to be material to the '846 patent was not cited by the examiner against the

TROJAN LAW OFFICES
BEVERLY HILLS

1
2
3
4

'640 patent. *See* Exh. 7. When the prosecution history of the '640 patent is more closely examined, it becomes clear that Stanford was asserted against the '640 patent in ways that have no bearing on the patentability of the '846 patent as alleged by Wells Fargo in its affirmative defense.

5
6
7
8
9
10
11
12

Regardless, Stanford is cumulative to other references of record in the '846 patent. During prosecution of the '846 patent, the examiner cited U.S. Patent No. 5,960,399 to Barclay *et al*. ("Barclay"), which the applicants had disclosed to the examiner. *See* Exh. 8 (pp. 4-9). The examiner cited Barclay as anticipating then pending claim 1. *Id*. The examiner noted that Barclay taught *all* the limitations of then pending claim 1, including the limitation cited by Wells Fargo here. *Id*. Therefore, as Stanford is necessarily cumulative to at least the Barclay patent, it is not material to the '846 patent.

### b)    The Trower Patent

13

14
15
16
17
18
19
20
21
22
23

In addition to Stanford, Wells Fargo also alleges Trower as being material to the validity of the '846 patent. More particularly, Wells Fargo recites claim 1 of the '846 patent as claiming a program used in system "for receiving user speech utterance signals representing speech utterances to be recognized." *See* Exh. 5 (¶ 89). Wells Fargo asserts that this system "works within a browser program executing on said computing system," quoting claim 2 of the '846 patent. *Id*. The Trower patent, according to Wells Fargo, is material because it discloses a system that relates to "speech input" and utilizes "a microphone and analog to digital convertor circuitry for converting sound to digitized audio," which is "advantageous for web pages." *Id*.

24
25
26
27

Amazingly, Wells Fargo does not challenge the validity of claim 1 or claim 2 in its invalidity contentions, nor does Wells Fargo make any mention of the Trower patent. *See* Exh. 6. It also bears noting that Trower was applied (in combination with Waters) to only six of the 41 claims in the '640 patent. *See* Exh. 7 (p. 5). The

TROJAN LAW OFFICES
BEVERLY HILLS

28

**Plaintiff's Motion for Summary Judgment**                -12-                **CV08-0863 MHP**
**re: Inequitable Conduct**

manner in which Trower was asserted against these six claims in the '640 patent has no bearing on claim 1 of the '846 patent. During prosecution of the '640 patent, Trower was cited generally for the "animated visible agent" feature in the claims of the '640 patent. *Id*. This feature is not present in claim 1 of the '846 patent. *See* Exh. 1.

Regardless, Trower (like Stanford) is cumulative to the prior art of record in the '846 patent. Though Wells Fargo alleges that Trower shows a first audio signal receiving routine for "receiving user speech utterance signals," there are numerous references cited during prosecution that also show this same limitation. For example, in the Office Action rejecting claim 1 of the '846 patent as being anticipated by Barclay, the examiner expressly asserted that Barclay teaches this limitation. *See* Exh. 8 (p. 4). Therefore, Trower is cumulative at least to the Barclay patent and not material to the claims of the '846 patent.

## 2. The Flanagan, Haddock and Chou Patents Are Not Material to '640 Patent

In its Thirty-Sixth Affirmative Defense, Wells Fargo alleges that the '640 patent is unenforceable because the Flanagan, Haddock, and Chou patents were not disclosed during prosecution. *See* Exh. 5 (¶¶ 93-105). Wells Fargo alleges the materiality of these references is demonstrated by the fact that they were used to reject the claims of the '846 patent. *Id.*

### a) The Flanagan Patent

The '640 patent claims "a speech recognition system for generating recognized speech utterance data from partially processed speech data," as recited in claim 1. *See* Exh. 2. Wells Fargo asserts Flanagan "is material to issues relating to the patentability of the claims of the '640 patent, because it discloses a "feature extractor [that] extracts speech features or cepstrum coefficients," which data are then "provided as inputs to the speech recognizer." *See* Exh. 5 (¶ 95). In

TROJAN LAW OFFICES
BEVERLY HILLS

challenging the validity of claim 1 in its invalidity contentions Wells Fargo cites at least seven (7) references.  Yet, no mention is made of the Flanagan patent.  *See* Exh. 6.[5]  Clearly, it is immaterial that Flanagan teaches a "feature extractor [that] extracts speech features or cepstrum coefficients," since Wells Fargo does not rely on this to support the contention that claim 1 is invalid.

Furthermore, during prosecution of the '846 patent, Fanagan was cited as a secondary reference in combination with the main reference Barclay.  *See* Exh. 8. Flanagan was cited (in combination with Barclay) for its discussion on mel-frequency cepstrum coefficients:

> Claims 5 to 7, 13 to 14…are rejected under 35 U.S.C. 103(a) as being unpatentable over Barclay *et al*. in view of Flanagan *et al*. ('485).
> Barclay et al. suggests cepstrals can represent speech data, but omits the specifics of computing delta and acceleration coefficients from the cepstral coefficients, or mel-frequency cepstral coefficients (MCFF) with delta and acceleration values. However, Flanagan et al. ('485) teaches that it is knows to utilize Mel-Frequency Cepstrum Coefficients …..

*See* Exh. 8 (p. 9).   In the '640 patent, there are no claims presented with limitations pertaining to mel-frequency cepstral coefficients.  *See* Exh. 2.   As such, the Flanagan patent is not material to the claims of the '640 patent.

Further still, numerous references were cited for cepstrum coefficients during prosecution of the '640 patent.   For example, Stanford expressly teaches the cepstrum coefficients.  *See* Exh. 9 (col. 2, lines 22-38).   More generally, during prosecution of the '640 patent the examiner cited Stanford as anticipating claim 1. *See* Exh. 7.   Since Wells Fargo only alleges that Flanagan is germane to *one*

---

[5] *See also,* Exhibits D, F, N, O, P, S, W to Wells Fargo's Preliminary Invalidity Contentions, which are attached to the Trojan Declaration as Exhs. 17-D, 17-F, 17-

TROJAN LAW OFFICES
BEVERLY HILLS

1  *limitation* in the claim, whereas the examiner considered Stanford to have disclosed
2  *all the limitations* in the claim, Flanagan adds nothing to Stanford or any of the
3  other references in the file wrapper.  Therefore, Flanagan is cumulative to at least
4  the Stanford patent and is thus immaterial to the patentability of the '640 patent.

5            **b)      The Haddock Patent**

6        The Haddock patent is also not material to patentability of the '640 patent.
   From claim 1 of the '640 patent, Wells Fargo recites the limitations of a system
7  "adapted for responding to speech-based queries" that has a "speech recognition
8  system for generating recognized speech utterance data" and "a query formulation
9  system for converting said recognized speech data into a search query suitable for
10 identifying a topic query entry corresponding to said speech-based query."  *See*
11 Exh. 5 (¶ 99).  According to Wells Fargo, Haddock discloses a system whereby
12 "the user communicates textual information to the computer system by talking to
13 the computer rather than by typing the information at the keyboard" and is
14 "embodied in a user interface of a database system which receives a database query
15 from a user, evaluates the query, and provides a result of the evaluation to the user."
16 *Id*.

17       Like Flanagan, Haddock was cited during prosecution of the '846 patent as a
18 secondary reference in combination with Barclay.
19

20            Claims 30 to 34 and 68 to 69 are rejected under 35 U.S.C.
21            103(a) as being unpatentable over Barclay et al. in view of
              Haddock et al.
22

23            Barclay et al. discloses a number of server application programs,
              but omits utilizing a natural language engine for examining noun
24            phrases to identify a query.  However, Haddock et al. teaches
25            natural language processing to identify noun phrases so as to
              unambiguously identify search predicates for a query.
26

27 ─────────────────────────────────────────────
   N, 17-O, 17-P, 17-S, and 17-W.
28 **Plaintiff's Motion for Summary Judgment**          -15-                    **CV08-0863 MHP**
   **re: Inequitable Conduct**

TROJAN LAW OFFICES
BEVERLY HILLS

*See* Exh. 10 (p. 6). In the '640 patent there are no claims presented with limitations concerning noun phrases. *See* Exh. 2. Moreover, like Flanagan, Haddock is cumulative to the Stanford patent, which was cited by the examiner as disclosing all the limitations of then pending claim 1. *See* Exh. 7. Therefore, Haddock is not material to the patentability of the '640 patent.

### c) The Chou Patent

Wells Fargo alleges the Chou patent is material to the '640 patent because it discloses a "feature extraction and/or ASR units can be located at the receiving base station, the switch connect to the base station… or at another location connection on the network(s) to which these elements are connected" and that it will sometimes "be convenient to have the feature extraction and ASR operations performed at different locations." *See* Exh. 5 (¶ 103). The '640 patent claims a system that involves "partially processed speech data being received from a remote speech capturing system." *See* Exh. 2.

During prosecution of the '846 patent, the examiner asserted Chou:

> Claim 40 is rejected under 35 U.S.C. 103(a) as being over Barclay e*t al.* in view of Chou *et al.*
>
> Barclay *et al.* discloses a distributed speech recognition system operating over a TCP/IP communications channel, but does not expressly disclose a wireless client/server architecture. However, Chou *et al.* teaches a wireless speech recognition system….

*See* Exh. 8 (p. 11). Since there are no claims in the '640 patent with limitations for a wireless client/server architecture, Chou is not material to the '640 patent. *See* Exh. 2. Furthermore, like Flanagan and Haddock, Chou is cumulative to the Stanford patent. *See* Exh. 7. Therefore, Chou is not material to the '640 patent.

//

//

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

3.    **Waters, Flanagan, Haddock, Chou, Stanford and Trower Patents Are Not Material to the '977 Patent**

In its Thirty-Seventh Affirmative Defense, Wells Fargo alleges that the '977 patent in unenforceable because the Stanford, Trower, Flanagan, Haddock, Chou and Waters patents were not disclosed during prosecution.  *See* Exh. 5 (¶¶ 93-105). Wells Fargo alleges the materiality of these references is demonstrated by the fact that they were used to reject the claims of other applications "in the same family." *Id.*  As discussed above, Stanford and Trower were asserted during prosecution of the '640 patent, while Flanagan, Haddock, Chou and Waters were asserted during prosecution of the '846 patent.

The Stanford, Trower, Flanagan, Haddock, and Chou patents are not material to the patentability of the '977 patent for the same reasons discussed above with respect to the '846 patent and the '640 patent.[6]   The manner in which these references were applied against the '846 and '640 patents has no bearing on the '977 patent, since the limitations at issue in these other patents are not present in the '977 patent.  Accordingly, Phoenix addresses only the Waters patent below.

a)    **The Waters Patent**

The '977 patent claims a system "wherein signal processing functions required to generate said recognized speech query can be allocated between a client platform and the server computing system as needed based on computing resources available to said client platform and server computing system respectively." *See* Exh. 3.  Wells Fargo alleges the Waters patent is material to the '977 patent because Waters discloses a system where the "voice recognizer is illustrated as a stand alone component, although it may be built-in to the controller." *See* Exh. 5 (¶ 120).

During prosecution of the '846 patent, Waters was applied as a secondary

1   reference to three dependent claims out of 70 claims in the '846 patent:

2
3
> Claims 30, 67 and 70 are rejected under 35 U.S.C. 103(a) as
> being unpatentable over Barclay *et al.* in view of Waters.

4
5
6
7
> Barclay *et al.* omits recognizing predefined sentences according
> to a context dictionary loaded in response to a topic or an
> operating environment associated with an interactive lesson
> tutorial. Waters teaches an application of a speech recognition
> system where instructional materials are supplied according to a
> user-selected domain of knowledge.

8

9   *See* Exh. 10 (p. 7). The claims of the '977 patent do not have the limitation of "a

10  speech recognition system where instructional materials are supplied according to a

11  user-selected domain of knowledge." *See* Exh. 3.

12      Furthermore, claim 1 of the '977 patent was rejected as being anticipated by

13  U.S Patent No. 6,742,021 to Halverston *et al.* ("Halverston") and later as being

14  obvious over U.S. Patent No. 6,408,272 to White *et al.* ("White") in view of U.S

15  Patent No. 6,418,199 to Perrone ("Perrone"). *See* Exhs. 11 (p. 3) and 12 (p. 2).

16  Since Halverston, and White in view of Perrone, were asserted to have disclosed all

17  the limitations of claim 1, it follows that Waters would necessarily be cumulative to

18  these references.

19      For these reasons, Waters is not material to the '977 patent.

20      **4.      The Giangarra, Horiguchi, Kuhn and Trower Patents Are**

21  **Not Material to the '854 Patent**

22      In its Thirty-Eighth Affirmative Defense, Wells Fargo alleges that the '854

23  patent is unenforceable because the Trower, Giangarra, Horiguchi, and Kuhn

24  patents were not disclosed during prosecution. *See* Exh. 5 (¶¶ 131-47). Wells

25  Fargo alleges the materiality of these references is demonstrated by the fact that

26  ───────────────
27  [6] The 977 patent was examined by Examiner Lerner, who also examined the '846
    patent. Though Examiner Lerner cited Flanagan, Haddock, Chou and Waters
    against the '846 patent, he did not cite these references against the '977 patent.

28  **Plaintiff's Motion for Summary Judgment**        -18-        **CV08-0863 MHP**
    **re: Inequitable Conduct**

they were used to reject the claims of other applications "in the same family," namely the '640 patent and the '977 patent. *Id.* However, the Giangarra, Horiguchi, and Kuhn patents were, in fact, disclosed in an Information Disclosure Statement (IDS) submitted under 37 C.F.R. § 1.97 on August 16, 2007. *See* Exh. 13.

### a)    The Trower Patent

Wells Fargo asserts the '854 patent claims "a method employing an 'interactive electronic agent' that 'is an animated character on a screen of the client device.'" *See* Exh. 5 (¶ 133). According to Wells Fargo, "[t]he Trower patent, at column 2, lines 2-25 notes that it discloses 'a client-server animation system used to display interactive, animated user interface characters with speech input and output capability." *Id.*

Wells Fargo asserts that Trower is material because it is directed to an animated agent. Of the 33 claims in the '854 patent, only dependent claim 4 recites a method "wherein the electronic interactive conversational agent form is an animated character on a screen of the client device." *See* Exh. 4. Dependent claim 4 was originally numbered claim 22. *See* Exh. 14 (p. 3). Original claim 22 (*i.e.* claim 4) was rejected during prosecution as being unpatentable over U.S. Patent No. 5,730,603 to Harless ("Harless") in view of U.S. Patent No. 6,647,363 to Claassen ("Claassen"), and further in view of Barclay, *supra*. *See* Exh. 15. Specifically, the examiner noted:

> Concerning claims 22 and 37, Harless discloses simulated audiovisual characters ("an animated character on a screen") (column 4, line 48 to column 5, line 6); scenarios are presented in full color action (column 5, line 47).

*Id*. (p. 9). Thus, Trower is cumulative to Harless. It is therefore not material to patentability of the '854 patent.

TROJAN LAW OFFICES
BEVERLY HILLS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

### b)     The Giangarra Patent

Wells Fargo alleges Giangarra is material to the '854 patent.  *See* Exh. 5 (¶¶ 136-39).   The '854 patent claims a method that includes "providing a speech recognition engine adapted to recognize a first set of words and/or phrases during an interactive speech session."     *See* Exh. 4.   According to Wells Fargo, the Giangarra patent discloses a "vocabulary list stored in speech recognition unit [that] provides a list of all words and utterances by an external user which will be recognized as voice commands." *See* Exh. 5 (¶ 137).

Notwithstanding the fact that Giangarra was disclosed in an IDS, the Giangarra patent is not material.  (Notably, Wells Fargo does not assert Giangarra in its invalidity contentions.  *See* Exh. 6.)  Giangarra is not material to the '854 patent because it is cumulative to the other references already of record.  Of the 26 claims in the '854 patent, claim 1 (originally numbered claim 19)[7] was rejected as being obvious over Harless in view of Claassen.

> Concerning independent claims 19 and 34, Harless discloses an interactive system and method for recognizing a query from a user, comprising:
> ….recognition program associates the received voice signals with a corresponding one of the stored sound patterns….

*See* Exh. 15 (p. 4).    Like the Trower patent, therefore, the Giangarra patent is cumulative to Harless.

### c)     The Horiguchi Patent

Wells Fargo alleges Horiguchi is material to the '854 patent because the '854 patent claims "a natural language query system," and the Horiguchi patent describes a "natural language processing system." *See* Exh. 5 (¶ 141).

---

[7]  Of the 40 original claims submitted, claims 1 to 18 and 26 to 33 were subsequently withdrawn; claims 41-55 were added.   Independent claim 19 was renumbered as claim 1.

The Horiguchi patent was disclosed during prosecution of the '854 patent. *See* Exh. 13. Regardless, it is not material. The patent was applied as a secondary reference to four dependent claims in the '977 patent, as a natural language system. In an Office Action dated August 10, 2004, Examiner Lerner (who also examined the '854 patent) noted:

> Specifically, Horiguchi et al. teaches an analogous art system
> and method for natural language parsing and translating…

*See* Exh. 11 (p. 9). During prosecution of the '854 patent, Examiner Lerner remarked that Harless "provid[es] a database of query/answer pairs concerning one or more topics which can be responded to by [the natural language] query system….". *See* Exh. 15 (p. 4) (bracketed language in original). Though Examiner Lerner cited Horiguchi against the '977 patent, he did not cite it against the '854 patent, choosing instead to rely on Harless. Therefore, Horiguchi is cumulative to Harless in respect to the '854 patent.

Moreover, there are numerous references for natural language processing systems. For example, Claassen teaches a method for automatically responding to an inquiry from a user, which "generat[es] at least one natural language phrase to present the obtained information items according to a presentation scenario; and verbally presenting the generated phrase(s) to the user." *See* Exh. 16 (col. 12, lines 52-55). The Horiguchi patent does not contribute any relevant disclosure beyond the other references, including Claassen, that were considered in allowing the '854 patent.

### d)    The Kuhn Patent

Finally, Wells Fargo alleges the Kuhn patent is material to the '854 patent. *See* Exh. 5 (¶¶ 144-47). The '854 patent claims a method of using a system that provides "a database of query/answer pairs concerning one or more topics which can be responded to by the natural language query system." *See* Exh. 4. The Kuhn

TROJAN LAW OFFICES
BEVERLY HILLS

patent is alleged to be material because it discloses a "knowledge database" as well as a "natural language parser [that] analyzes and extracts semantically important and meaningful topics from a loosely structured, natural language text." *See* Exh. 5 (¶ 145).

Kuhn was disclosed in an IDS during prosecution of the '854 patent. *See* Exh. 13. Examiner Lerner, who cited Kuhn during prosecution of the '977 patent, did not cite Kuhn against the '854 patent, though it had been disclosed. Moreover, the Kuhn patent is not more relevant than Harless, cited as the main reference in the '854 patent by Examiner Lerner. And Wells Fargo does not allege that it is, having failed to cite Kuhn in its invalidity contentions. *See* Exh. 6.

In an Office Action dated June 22 2005, the Kuhn patent was applied as a secondary reference to a single dependent claim out of 26 claims in the '977 patent:

> Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over White et al. in view of Perrone as applied to claim 13 above, and further in view of Kuhn et al. ('366).
>
> ….Specifically, Kuhn et al. ('366) discloses a system and method for accessing information over the Internet by speech recognition, where there are multiple search engines simultaneous launched.

*See* Exh. 12. As such, the manner in which Kuhn was cited against pending claim 14 of the '977 patent does not make it material to the '854 patent. None of the claims in the '854 patent are directed to a system and method for accessing information over the Internet by speech recognition, where there are multiple search engines simultaneous launched, as disclosed by Kuhn. *See* Exh. 4.

Further, Kuhn is cumulative to Harless. During prosecution Examiner Lerner asserted that the claims of the '854 were unpatentable in view of Harless. In particular, Examiner Lerner noted that Harless discloses the same limitation that is in Kuhn: "Harless discloses an interactive system and method for recognizing a

TROJAN LAW OFFICES
BEVERLY HILLS

query from a user…".  *See* Exh. 15 (p. 4).  Therefore, Kuhn is not more material than Harless to the patentability of the '854 patent.

## E.    No Intent: Omission of the Prior Art Patents Was Not Meant to Mislead the USPTO

In addition to having to show that the undisclosed references are material to the patents-in-suit, Wells Fargo must also establish, by clear and convincing evidence, how the applicants or their counsel intended to mislead the PTO.  *See* Cargill, *supra*, 476 F.3d at 1363.  The quantum of proof needed to establish the requisite intent is especially high where, as here, the materiality (if any) of the undisclosed references is low.  *See* Purdue Pharma, 438 F.3d at 1128-29.   As the Federal Circuit instructs, the intent to deceive "cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent."  *Id*.  When determining whether intent has been shown, the Federal Circuit instructs that all the evidence must be weighed, "including evidence of good faith."  *Id*.

Wells Fargo alleges that the applicants of the patents-in-suit "withheld the information with the intent to deceive the USPTO."  *See* Exh. 5.  As there is not a single fact to support the allegation that the applicants or their counsel intended to deceive the PTO, Wells Fargo goes to great lengths to emphasize that multiple IDS were submitted during prosecution of the patents-in-suit without identifying the asserted prior art.   However, these references were not disclosed for the simple reason that the inventors and their counsel could reasonably believe the references to be either immaterial or merely cumulative to the art already considered by the examiners for the reasons discussed above.  *See* Eli Lilly & Co. v. Zenith Goldline Pharms., 471 F.3d 1369, 1382 (Fed. Cir. 2006) ("Intent to deceive cannot be inferred simply from the decision to withhold the reference where the reasons given for the withholding are plausible." (internal quotations and citations omitted)).

TROJAN LAW OFFICES
BEVERLY HILLS

For example, Wells Fargo alleges that the four references (discussed above) cited during prosecution of the '846 patent should have been disclosed during prosecution of the '977 patent. *See* Exh. 5. This begs the question: how could the same examiner, who examined both applications, be misled by a failure to disclose the four references during the prosecution of the '977 patent when he had already considered these same references in examining the '846 patent? If, as Wells Fargo suggests, the subject matter were so "related," one would expect a reasonable examiner, knowing of such references, to apply the same to both patents. The fact that the same examiner who asserted these references against the '846 patent did not assert them against the '977 patent indicates precisely that the references were not considered to be material to the '977 patent.

Finally, the fact that the applicants had submitted multiple IDS during the prosecution of the patents-in-suit does not show that the omission of these particular references was meant to deceive the PTO. To the contrary, the submission of multiple IDS indicates that the applicants and their patent attorney were acutely conscientious in bringing any and all prior art that were regarded as material to the attention of the examiner.

In summary, there is no genuine issue of material fact to support the allegation that the patents-in-suit were procured by inequitable conduct. There is no genuine issue of fact that the asserted prior art references are not material to the patents-in-suit, or otherwise merely cumulative to other references of record. There is no genuine issue of fact that the applicants and their counsel acted without deceptive intent in disclosing all known material art to the PTO.

1  **IV.    CONCLUSION**

2          For the foregoing reasons, summary judgment should be GRANTED in favor

3  of Phoenix on Wells Fargo's affirmative defense nos. 35, 36, 37 and 38.

4                                          Respectfully submitted,

5                                          TROJAN LAW OFFICES
6                                          By

7

8  September 8, 2008              /s/R. Joseph Trojan
9                                          R. Joseph Trojan
                                           Attorneys for Plaintiff,
10                                         Phoenix Solutions, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  **Plaintiff's Motion for Summary Judgment**            -25-                **CV08-0863 MHP**
    **re: Inequitable Conduct**

TROJAN LAW OFFICES
BEVERLY HILLS