1 | KEKER & VAN NEST, LLP
DARALYN J. DURIE - #169825
2 | EUGENE M. PAIGE - #202849
RYAN M. KENT - #220441
3 | SONALI D. MAITRA - #254896
710 Sansome Street
4 | San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
5 | Facsimile:  (415) 397-7188

6 | Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PHOENIX SOLUTIONS, INC., a California corporation,<br><br>                          Plaintiff,<br><br>    v.<br><br>WELLS FARGO BANK, N.A., a Delaware corporation<br><br>                         Defendant. | Case No. CV 08-0863 MHP<br><br>**WELLS FARGO'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER**<br><br>Date:      October 20, 2008<br>Time:     2:00 p.m.<br>Dept:     Courtroom 15, 18th Floor<br>Judge:   Hon. Marilyn Hall Patel<br><br>Date Comp. Filed:    February 8, 2008<br><br>Trial Date: TBD |

---

424827.01 | WELLS FARGO'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER
CASE NO. CV 08-0863 MHP

## NOTICE OF MOTION

Please take notice that on October 20, 2008, at 2:00 p.m., in Courtroom 15 of the above-entitled Court located at 450 Golden Gate Avenue, San Francisco, California, Defendant Wells Fargo Bank, N.A., will and does hereby move the Court for an Order granting leave to file its proposed first amended answer. A proposed Order is filed herewith.

Wells Fargo's motion will be based on the following Memorandum of Points and Authorities and the Declaration of Eugene M. Paige ("Paige Decl.") filed herewith, the record in this case, and such evidence and oral argument presented at the time of the hearing as this Court deems appropriate.

## FACTUAL BACKGROUND

On May 7, 2008, Wells Fargo submitted its answer to Phoenix's amended complaint, which pleaded the affirmative defense of inequitable conduct with regard to each and every patent asserted against Wells Fargo based on information that Wells Fargo had been able to uncover in the public records of the prosecution of the patents-in-suit. Shortly thereafter, Phoenix moved to strike Wells Fargo's inequitable conduct allegations. At the initial case management conference hearing held on June 9, 2008, this Court denied that motion without prejudice to Phoenix's ability to bring an early motion for summary judgment on the inequitable conduct defenses. At that time, the Court also approved the parties' proposed scheduling order, which permitted the parties until November 3, 2008 to amend their pleadings. Phoenix's proposed motion for summary judgment on Wells Fargo's inequitable conduct defenses was scheduled to be filed on Monday, September 8.

Shortly after the initial case management conference, Wells Fargo served document requests and interrogatories on Phoenix. *See* Declaration of Eugene M. Paige in support of Wells Fargo's Motion for Leave to File First Amended Answer ("Paige Decl.") ¶ 2. Phoenix responded to those requests on July 28, 2008. *Id.* ¶ 3. The parties have been conferring on various issues relating to Phoenix's responses and document production (or lack thereof) since that time. Phoenix produced seven compact discs containing a variety of documents to Wells Fargo on August 11, 2008. *Id.* ¶ 4. Wells Fargo diligently reviewed the documents on those

1  discs, and in the course of that review, discovered documentation indicating that Ian Bennett,
2  Phoenix's principal and a named inventor on each of the patents-in-suit, was aware of speech
3  recognition software companies such as Nuance Communications, ScanSoft, and Speechworks
4  during the time in which the patents-in-suit were being prosecuted.  *Id.* ¶ 5.  The details of the
5  products offered by those companies were not disclosed to the PTO, and they are not discussed
6  in the specification of the patent, although other companies (such as IBM and Dragon Systems)
7  are found there.  As explained at some length in the motion for summary judgment that Wells
8  Fargo is filing today, the Nuance Speech Recognition System (which forms the basis for the
9  speech recognition technology that Wells Fargo uses presently) was available years before the
10 filing date of Phoenix's patents, and contains each and every element of the claims as interpreted
11 by Phoenix.  Wells Fargo therefore believes that Bennett's knowledge of Nuance, and his failure
12 to impart that knowledge to the PTO, constituted inequitable conduct.
13       Upon determining that this was an additional factual basis that would need to be explored
14 for purposes of Wells Fargo's inequitable conduct claims, Wells Fargo made Phoenix aware, by
15 way of letter of September 3rd, of its desire to amend its answer to include these additional
16 factual allegations.  *Id.* ¶ 6 & Ex. 3.  In that letter, Wells Fargo made clear that it understood that
17 Phoenix intended to file a motion for summary judgment on the inequitable conduct defenses
18 shortly, and offered to stipulate to a revised briefing schedule in order to allow Phoenix to take
19 these new allegations into account in its motion.  Phoenix replied the next day that it did not
20 believe that Wells Fargo's proposed affirmative defenses were meritorious, and did not agree to
21 Wells Fargo's request that it stipulate to the filing of the first amended answer.  *Id.* ¶ 7 & Ex. 4.
22 Because the parties have reached an impasse on the issue of Wells Fargo's proposed amended
23 answer, and in order to make the factual allegations based on what Wells Fargo has learned thus
24 far in discovery part of the case in a timely fashion, Wells Fargo now respectfully requests leave
25 to file its first amended answer, which is attached to the Paige Declaration as Exhibit 5, and does
26 no more than add these recently discovered additional bases for its inequitable conduct claims to
27 its existing affirmative defenses.
28

**ARGUMENT**

Leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Because this request comes nearly two months prior to the November 3 deadline upon which the parties have agreed for amending the pleadings, leave should be freely allowed here. In deciding whether to grant leave to amend, "a court must be guided by the underlying purpose of Rule 15 -- to facilitate decision on the merits rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Accordingly, this policy of favoring amendments to pleadings "is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citations omitted). Wells Fargo's proposed first amended answer satisfies each of these factors.

**A.    Wells Fargo has acted in good faith and brought this motion as promptly as possible**

The documents upon which Wells Fargo bases its additional inequitable conduct allegations were produced less than a month ago. Phoenix's documents were produced in mid-August despite a commitment by Phoenix to produce its documents upon the extended date to serve its discovery responses (July 28, 2008). It took several letters and a telephonic conference with Phoenix simply to obtain production of the documents at issue on August 11. Paige Decl. ¶ 3 & Exs. 1 and 2. And during the few weeks between the date upon which Phoenix produced its documents and today, Wells Fargo has also been engaging in the claim construction process, exchanging proposed claim constructions on August 29, and preparing its motion for summary judgment. Clearly, then, Wells Fargo's request to amend its affirmative defenses is made at the earliest possible opportunity, and in good faith based on what it has learned from the limited discovery it has been able to obtain to date.

**B.    Phoenix will suffer no prejudice from allowing the amended answer to be filed**

Upon ascertaining that it had additional bases for its inequitable conduct claims, Wells Fargo promptly informed Phoenix of the existence of this additional evidence of inequitable

1 conduct.  Given Phoenix's impending date to file the early motion for summary judgment that it
2 had requested, Wells Fargo offered to stipulate to having that motion filed at a later date.
3 Phoenix refused even to respond to this proposed accommodation.  Indeed, if there is any
4 prejudice to Phoenix coming from the timing of this motion, it is a result of Phoenix's own
5 recalcitrance in discovery.  It made its August production of documents (a production that
6 remains incomplete) nearly two months after Wells Fargo served its discovery requests, and only
7 after repeated prodding by Wells Fargo.  It would be unjust to allow Phoenix to oppose Wells
8 Fargo's amendment by crying prejudice now, having successfully sought leave to file an early
9 summary judgment motion and having produced some of the evidence necessary to form the
10 basis for Wells Fargo's claims after much delay.

**C.     Wells Fargo's proposed amendment is far from futile**

In its letter declining to stipulate to the filing of Wells Fargo's amended answer, Phoenix argued that Wells Fargo does not at this point possess sufficient evidence to prove its additional inequitable conduct allegations.  Of course, that is precisely why Wells Fargo is seeking to amend its answer -- to add these allegations, whose basis was recently discovered, to the case so that it may take discovery to explore and support these allegations.  Phoenix has argued that Wells Fargo cannot point to any particular document demonstrating conclusively Bennett's knowledge of how the Nuance system worked at the time.  Yet Phoenix's document production is admittedly still incomplete.  Some of what may be the most telling documents are still the subject of a dispute between the parties over the scope of the waiver of Phoenix's attorney-client privilege resulting from Phoenix's decision to voluntarily produce multiple attorney-client privileged communications relating to the prosecution of Phoenix's patents.  Phoenix has essentially refused to provide a complete response to Wells Fargo's interrogatories seeking the facts regarding the references of which it was aware yet withheld from the PTO.  And despite repeated requests over the course of several weeks, Phoenix has yet to so much as offer dates for Bennett's deposition, at which additional information regarding what he knew and when he knew it could be gathered.  All of this information will further inform and flesh out the inequitable conduct allegations that Wells Fargo has put forward in this case.

Wells Fargo's motion for summary judgment amply demonstrates the relevance of the Nuance prior art to this case: it contains each and every element of the asserted claims of the patents, as those claims have been interpreted by Phoenix in its infringement contentions. Wells Fargo now knows that Bennett knew of Nuance during the time period that the prosecution was pending. The evidence submitted with Wells Fargo's summary judgment motion demonstrates that the Nuance Speech Recognition System was on sale years before the filing date of the patents-in-suit. If the evidence demonstrates that Bennett, or someone else with a duty of candor to the PTO, knew or should have known of the manner in which the Nuance system operated at that time, that would support a clear-cut case of inequitable conduct. Wells Fargo is not required to prove its allegations in order to obtain leave to file an amended pleading that allows it further to explore those allegations, and Phoenix's arguments against the merits of those allegations on the basis of the limited discovery obtained thus far are simply not sufficient to demonstrate futility. Accordingly, Wells Fargo should be granted leave to file its first amended answer.

## CONCLUSION

For the foregoing reasons, Wells Fargo's motion for leave to amend its answer should be granted and Wells Fargo's first amended answer should be ordered filed.

Dated:  September 8, 2008                                     KEKER & VAN NEST, LLP


                                                              By:        /s/ Eugene M. Paige
                                                                    Eugene M. Paige
                                                                    Attorneys for Defendant
                                                                    WELLS FARGO BANK, N.A.