KEKER & VAN NEST, LLP
DARALYN J. DURIE - #169825
EUGENE M. PAIGE - #202849
RYAN M. KENT - #220441
SONALI D. MAITRA – #254896
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PHOENIX SOLUTIONS, INC., a California corporation,<br><br>                                    Plaintiff,<br><br>        v.<br><br>WELLS FARGO BANK, N.A., a Delaware corporation<br><br>                                    Defendant. | Case No. CV 08-0863 MHP<br><br>**DECLARATION OF EUGENE M. PAIGE IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER**<br><br>Date:          October 20, 2008<br>Time:         2:00 p.m.<br>Dept:         Courtroom 15, 18th Floor<br>Judge:       Hon. Marilyn Hall Patel<br><br>Date Comp. Filed:      February 8, 2008<br><br>Trial Date:  TBD |

I, Eugene M. Paige, declare as follows:

1.      I am an attorney duly licensed to practice before this Court and a partner in the law firm of Keker & Van Nest LLP, counsel of record for Wells Fargo Bank, N.A. ("Wells Fargo") in this matter.  I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so competently under oath..

2.      On June 18, 2008, Wells Fargo served its first set of requests for production on Phoenix.

3.      Following a courtesy extension of time to respond to Wells Fargo's discovery

requests, Phoenix provided its responses and objections to the requests on July 28, 2008.  The next day, I sent a letter to William Wong, Esq., counsel for Phoenix, inquiring as to why the documents Phoenix had agreed to produce with its responses and objections had not been produced.  A true and correct copy of that letter is attached hereto as **Exhibit 1**.  In the course of a telephonic conference held on August 5, 2008, Mr. Wong agreed to produce Phoenix's responsive documents so that they would be received by Wells Fargo on August 11, 2008.  A true and correct copy of the letter memorializing that agreement is attached hereto as **Exhibit 2**.

4.      Phoenix produced seven compact discs of documents to Wells Fargo on or about August 11, 2008.

5.      The documents produced by Phoenix on August 11 contained documentation indicating that Ian Bennett, Phoenix's principal and a named inventor on each of the patents-in-suit, was aware of speech recognition software companies such as Nuance Communications, ScanSoft, and Speechworks no later than July of 2002.

6.      On September 3, 2008, I sent a letter to R. Joseph Trojan, Esq., counsel for Phoenix, indicating that Wells Fargo intended to file an amended answer to take into account the newly discovered facts discussed above, and requesting Phoenix's consent to the filing of such an amended answer.  A true and correct copy of that letter is attached hereto as **Exhibit 3**.

7.      On September 4, 2008, I received a letter from Mr. Trojan, which indicated that Phoenix disagreed with the merits of Wells Fargo's proposed amended answer, and did not provide consent to the filing of an amended answer.  A true and correct copy of that letter is attached hereto as **Exhibit 4**.

8.      Attached hereto as **Exhibit 5** is a true and correct copy of the first amended answer that Wells Fargo seeks to file in this action.

PAIGE DECL. IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER
CASE NO. 08-0863 MHP

1         I declare under penalty of perjury under the laws of the state of California that the

2    foregoing is true and correct to the best of my knowledge. Executed this 8th day of September,

3    2008 in San Francisco, California.

4

5

6                                           /s/ Eugene M. Paige

7                                          EUGENE M. PAIGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAIGE DECL. IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER
CASE NO. 08-0863 MHP

# PAIGE DECLARATION EXHIBIT 1

LAW OFFICES

# KEKER & VAN NEST
### LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

EUGENE M. PAIGE
EPAIGE@KVN.COM

July 29, 2008

**VIA FACSIMILE AND U.S. MAIL**

William Wong, Esq.
Trojan Law Offices
9250 Wilshire Boulevard, Suite 325
Beverly Hills, CA 90212

RE:  *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*
No. CV-08-0863 MHP

Dear Mr. Wong:

Thank you for arranging to furnish Wells Fargo with Phoenix's discovery responses, which were received by Federal Express today.

Those responses are in many respects deficient, and I will address those deficiencies soon in a separate letter to Joe Trojan. However, in addition to the substantive deficiencies with the responses, no document production whatsoever accompanied the responses. As we discussed on Friday, May 18, and as confirmed by my letter of that date, Wells Fargo granted Phoenix a courtesy extension of time to supply its responses with the understanding that Phoenix would, in return, produce documents that would accompany the responses it sent by Federal Express. Please immediately forward Phoenix's production of responsive documents, as agreed. Thank you very much for your cooperation.

Sincerely,

Eugene M. Paige

EMP:daf

422148.01

# PAIGE DECLARATION EXHIBIT 2

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

EUGENE M. PAIGE
EPAIGE@KVN.COM

August 6, 2008

## VIA FACSIMILE AND U.S. MAIL

William Wong, Esq.
Trojan Law Offices
9250 Wilshire Boulevard, Suite 325
Beverly Hills, CA 90212

> RE:   *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*
>        No. CV-08-0863 MHP

Dear Mr. Wong:

Thank you very much for taking the time to meet and confer with me on the issues raised in my letter of July 30 yesterday afternoon. I set forth below my understanding of the meet and confer and of the agreements that we reached, and ask that you inform me immediately if I have misunderstood in any way.

**Date for Phoenix's Document Production.** I understand that Phoenix will be producing documents no later than this coming Friday, August 8, such that Wells Fargo will receive the documents no later than next Monday, August 11. I understand that many of these documents will be coming from the files of Mr. Nicholas Gross, who has been away on vacation, and that those documents had not yet been provided to you at the time of our conversation. As discussed below, I understand that Phoenix will also be providing other documents, such as the Sony license agreement, shortly.

**Documents in the possession of Phoenix's counsel that have not been produced.** We discussed other documents that Wells Fargo believes Phoenix should have in its possession, and which should have produced already, such as the license agreement between Phoenix and Sony that was called for by several document requests, and was also expressly referenced in my letter of July 30. I understand from our conversation that Mr. Trojan conducted the search for documents in the possession of Phoenix's counsel, and informed you that all such documents had been produced. I appreciate that you did not personally conduct the search and therefore were not in a position to answer my questions during our meet and confer regarding why the Sony license agreement, and other such documents, had not yet been produced. Although I requested to speak with him, Mr. Trojan was not available during our call to discuss the search that had

William Wong, Esq.
August 6, 2008
Page 2

been conducted and why the Sony license agreement has not been produced to Wells Fargo. However, you agreed to produce the Sony license agreement as soon as possible.

**Protective order for produced documents.**  On our call, Phoenix raised for the first time a concern with having a protective order in place before producing its documents. As we discussed, I have not yet received a reply to my letter of July 1, which responded to Mr. Trojan's proposal of June 30 regarding the protective order. Wells Fargo stands ready to continue negotiations on the terms of a suitable protective order, as set forth in that letter. Until agreement is reached, Wells Fargo will observe the strictures of Patent Local Rule 2-2, which limits the dissemination of documents marked as confidential to outside counsel and employees of outside counsel pending entry of a protective order. That agreement is, of course, without prejudice to Wells Fargo's right to challenge the designation of any particular document as confidential.

**Phoenix's further response to Interrogatory No. 1.**  Phoenix agreed that it would provide a supplemental response to Interrogatory No. 1, which would include a substantive response listing the prior art of which Phoenix was aware that it did not provide to the examiner in various of its prosecutions of the patents-in-suit. Phoenix also agreed that it would not limit its response to prior art that it viewed as "material," instead listing the prior art that was not provided regardless of Phoenix's subjective view of materiality or lack thereof. Phoenix committed to producing this supplemental response on Friday, August 8.

**Phoenix's continued refusal to provide information about the circumstances of alleged invention.**  Phoenix refused to supplement its response to Interrogatory No. 3, in which Phoenix stated that it had undertaken no efforts to determine the circumstances under which the alleged inventions were conceived or reduced to practice. Phoenix's position is based on the notion that providing Wells Fargo with the requested information would be unduly burdensome, because it does not believe that Wells Fargo has provided it with prior art that would necessitate it claiming a date of invention prior to the filing date. Phoenix also, however, purported to "reserve the right" to later introduce evidence of the circumstances of conception or reduction to practice at a later date by submitting an amended interrogatory response at some undetermined future date. As we discussed, please be aware that Wells Fargo will object to any such belated attempt to provide information that Wells Fargo has properly requested in discovery now; Wells Fargo will move in limine to bar introduction of any evidence, documents, or testimony relating to conception or reduction to practice prior to the filing date of the patents-in-suit based upon Phoenix's flat refusal to provide this information when requested in discovery.

**Phoenix's continued refusal to provide its contentions regarding cumulativeness.**  Phoenix also refused to amend its response to Interrogatory No. 2 to provide the facts underlying any arguments that it may make regarding the alleged cumulativeness of the prior art that Phoenix withheld from the examiner during the prosecution of the patents-in-suit. As we discussed, similar to Wells Fargo's position on Interrogatory No. 3, Wells Fargo will object to any arguments that Phoenix seeks to make in its motion for summary judgment or elsewhere that

422614.01

William Wong, Esq.
August 6, 2008
Page 3

rely on alleged cumulativeness of the references at issue if Phoenix is not willing to provide the facts underlying those arguments in discovery. You indicated that you would speak with Mr. Trojan and provide Phoenix's position on Interrogatory No. 2.

**Phoenix's waiver of privilege with respect to communications between Mr. Gross and Mr. Bennett.** You acknowledged that the previous production of communications between Mr. Gross and Mr. Bennett had waived the privilege that might otherwise apply to such documents. However, because you had not reviewed the documents Phoenix had already produced reflecting communications between Mr. Gross and Mr. Bennett, you were unwilling to take a position on the scope of the waiver. Instead, you stated that your belief was that the waiver was "narrow," and indicated that Phoenix would likely be withholding some of the documents that Mr. Gross is providing for its review on privilege grounds. Wells Fargo would like to see if the parties are able to reach an agreement on the scope of the waiver without the need to resort to motions practice; accordingly, once Phoenix has reviewed the documents that it has previously produced containing communications between Mr. Gross and Mr. Bennett, please provide Phoenix's proposal as to the scope of the waiver that should result.

**References that Phoenix did not provide to the examiner.** You indicated that Phoenix would revise its responses to Request Nos. 58 and 60 to remove the assertion that no such documents exist, and would instead produce the references that Phoenix did not provide to the examiner. In a manner similar to Phoenix's revised response to Interrogatory No. 1, you agreed that those references would be provided regardless of Phoenix's subjective belief as to their materiality.

**Objections pursuant to which no documents are being withheld.** With regards to Phoenix's objections to producing documents that relate to claims of the patents-in-suit other than the claims asserted in this litigation, or that are supposedly "publicly available," you stated that no documents were being withheld on the basis of those objections. However, in light of the fact that Mr. Trojan apparently conducted the search for documents and you were not aware of the parameters of that search, I would ask that you confirm with Mr. Trojan that no documents are being withheld on the basis of those objections.

**Phoenix's statements about "the product" not being sold.** As we discussed, the fact that Phoenix has admitted that it never sold a product does not provide an answer to whether documents exist that are responsive to Request No. 12, which calls for (among other things) lab notebooks and software code that relate to the alleged inventions. You indicated that Phoenix may well produce documents responsive to these requests with the materials it produces on Friday. Phoenix has agreed to submit amended responses to these requests, along with the other requests discussed above, no later than this Friday, August 8th.

William Wong, Esq.
August 6, 2008
Page 4


      Please let me know immediately if you disagree with any of the foregoing.  Thank you for your attention to this matter.

                     Sincerely,

                     Eugene M. Paige

EMP:daf

# PAIGE DECLARATION EXHIBIT 3

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

EUGENE M. PAIGE
EPAIGE@KVN.COM

September 3, 2008

**VIA FACSIMILE AND U.S. MAIL**

R. Joseph Trojan, Esq.
Trojan Law Offices
9250 Wilshire Boulevard, Suite 325
Beverly Hills, CA  90212

> RE:  *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*
>      No. CV-08-0863 MHP

Dear Joe:

I write regarding Wells Fargo's affirmative defenses of inequitable conduct.

In our review of the documents that Phoenix produced to Wells Fargo in mid-August, it has come to our attention that Mr. Bennett, a named inventor on each of the patents-in-suit, knew of (among other companies) Nuance, SpeechWorks, Scansoft, BeVocal, TellMe, Hey Anita, and VoiceNet during the pendency of the prosecutions of the patents-in-suit.  Yet it appears from the record that Phoenix never disclosed any materials relating to the workings of the systems created by those companies that pre-date Phoenix's patent filings by more than a year.  As Phoenix is aware from the past discussions of Wells Fargo's intended motion for summary judgment, Wells Fargo believes that the claims as interpreted by Phoenix read upon at least the Nuance prior art.  Accordingly, Wells Fargo intends to submit a motion for leave to file an amended answer that adds to the facts supporting its affirmative defenses of inequitable conduct Phoenix's failure to disclose such prior uses to the Patent and Trademark Office.

Please let me know whether Phoenix will stipulate to the filing of Wells Fargo's proposed amended answer.  If Phoenix does not provide its consent by this Friday, Wells Fargo will understand that Phoenix intends to oppose this request for leave to file an amended answer, and will proceed with a motion for leave to file the amended answer.

Wells Fargo recognizes that Phoenix intends to file a motion for summary judgment on inequitable conduct this coming Monday, September 8.  Wells Fargo is of course willing to stipulate to having that motion filed at a later date in light of this newly discovered additional ground for Wells Fargo's inequitable conduct defense.  Please let me know if Phoenix would like

R. Joseph Trojan, Esq.
September 3, 2008
Page 2

to discuss modifying the schedule for its planned motion for summary judgment on inequitable conduct.

       Thank you for your attention to this matter, and please do not hesitate to contact me should you wish to discuss it further.

                     Sincerely,

                     Eugene M. Paige

EMP:at

424595.01

# PAIGE DECLARATION EXHIBIT 4

R. JOSEPH TROJAN

# TROJAN LAW OFFICES

DYLAN C. DANG
JEEYEON HAN
SHARON E. GHAUSI
WILLIAM WONG
LLOYD VU

OF COUNSEL
J. NICHOLAS GROSS

Rexford Plaza
9250 Wilshire Boulevard
Suite 325
Beverly Hills, California 90212
www.patenTrademark.com
REGISTERED PATENT ATTORNEYS

PATENT, TRADEMARK,
COPYRIGHT, TRADE SECRET &
RELATED CAUSES

TELEPHONE (310) 777-8399
FACSIMILE (310) 777-8348

September 4, 2008

Eugene M. Paige, Esq.
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, California 94111-1704

VIA Fax 415-397-7188 and Mail (2 pages)

Re:   [Phoenix]
      *Phoenix Solutions, Inc. v. Wells Fargo & Company*
      U.S.D.C., Northern District of California
      Case No. CV08-0863 MHP
      TLO File No. 08-02-4824

Dear Eugene:

The following is our response to your letter of September 3, 2008 asking if we oppose your motion to amend your affirmative defense of inequitable conduct. Your letter is so deficient in any specific details of your proposed new allegations that it is impossible to provide any kind of meaningful response. But from the superficial detail that you did provide, it appears that you propose to allege that Dr. Bennett's awareness of the existence of potential competing systems obligated him to disclose such systems to the Patent Office. Such an allegation is grossly insufficient for all the following reasons:

The mere fact that Dr. Bennett was aware of the existence of other systems does not in anyway suggest that he was aware of the details concerning how those systems operated, *let alone if he thought they were germane in any way to any of the claims at issue*. Wells Fargo is aware of the existence of Bank of America, but that does not mean that Wells Fargo knows the internal operations of the software and hardware used by Bank of America. Mr. Bennett's knowledge of the existence of other companies is no different. He could no more acquire the operational details of the systems of other companies than Wells Fargo could demand the operational details of another bank.

At least four of the companies you have identified on your list did not have systems *available for use/sale* until after the patent application was filed. If you had done even the most basic due diligence, you would have <u>known</u> that.

You have failed to identify a single document from any of the companies on your list that was in Dr. Bennett's possession that was relevant to a claim in his patent application that was not

Eugene Page, Esq.
*Re: Phoenix v. Wells Fargo*
September 4, 2008
Page 2 of 2

disclosed. This is fundamental to an allegation of inequitable conduct. Your failure to even attempt to identify such a document and its relevance is further evidence of your lack of due diligence before making this new, unsubstantiated allegation. Your letter makes no mention of any prior art documentation that Dr. Bennett failed to disclose. Your letter accuses him of inequitable conduct for failing to disclose the identity of companies to the Patent Office. Such a theory of inequitable conduct is unsupported by any case law. In fact, there is no good faith basis for urging the adoption of such a new theory as an extension of existing case law because the Patent Office has no ability to evaluate the patentability of patent claims based upon a list of names of companies. If you have specific prior art documents you believe should have been disclosed that were in Dr. Bennett's possession that were relevant to a pending claim, then you have an obligation to identify those prior art documents to us immediately so that we can evaluate your allegations.

The fact that certain companies had voice recognition systems before Dr. Bennett's invention is not news. Other systems are documented in the file history. As you are fully aware, the list of prior art references for Dr. Bennett's patents goes on for two and a half pages in single spaced, small 8 point type. It includes U.S. and foreign patents, and an extensive listing of industry literature. If you have any document that is prior art to Dr. Bennett's invention that was in Dr. Bennett's possession that is not merely cumulative to the extensive prior art already disclosed, then you have an obligation to provide it to us immediately with an explanation of its relevance to a specific claim.

The fact that your letter makes no mention whatsoever of any claim of any of the patents at issue strongly suggests that you have not compared any prior art document to the pending claims to answer the most basic question of inequitable conduct: Whether the information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability." 37 C.F.R. §1.56. The fact that you make no mention whatsoever of any patent claim once again re-enforces the conclusion that you have failed to engage in the most basic due diligence. Since you are prepared already to file your motion to amend your answer, you must have done such an analysis in order to fulfill your Rule 11 obligations. We demand that you immediately provide your claim analysis under 37 C.F.R. §1.56 that supports your allegation of inequitable conduct so that we can properly evaluate your proposed amendment. If you do not provide us with such an analysis, we will know you did not do it and we will proceed under Rule 11 accordingly.

Very truly yours,

TROJAN LAW OFFICES
By

R. Joseph Trojan

# PAIGE DECLARATION
# EXHIBIT 5

1   KEKER & VAN NEST, LLP
    DARALYN J. DURIE - #169825
2   EUGENE M. PAIGE - #202849
    RYAN M. KENT - #220441
3   SONALI D. MAITRA - #254896
    710 Sansome Street
4   San Francisco, CA  94111-1704
    Telephone:  (415) 391-5400
5   Facsimile:  (415) 397-7188

6   Attorneys for Defendant
    WELLS FARGO BANK, N.A.

7

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12

13  PHOENIX SOLUTIONS, INC., a California       Case No. CV 08-0863 MHP
    corporation,

14                              Plaintiff,      **FIRST AMENDED ANSWER TO
                                                AMENDED COMPLAINT**
15       v.
                                                **DEMAND FOR JURY TRIAL**
16  WELLS FARGO BANK, N.A., a Delaware
    corporation,

17
                               Defendant.
18

19

20

21       Defendant Wells Fargo Bank, N.A. ("Wells Fargo") answers Phoenix Solutions, Inc.'s

22  ("Phoenix's") amended complaint ("Complaint") as follows:

23       1.      Wells Fargo admits that the Complaint purports to recite an action for

24  infringement under the patent laws of the United States.

25              I.      **THE PARTIES**

26       2.      Wells Fargo denies that Phoenix is a corporation organized and existing under the

27  laws of the State of California; Wells Fargo lacks knowledge or information sufficient to form a

28

                                            1
424905.01

1  belief about the truth of the remainder of the allegations in this paragraph and, on that basis,

2  denies the remainder of the allegations in this paragraph.

3      3.      Wells Fargo admits that it has a place of business at 420 Montgomery Street, San

4  Francisco, California 94163.  Wells Fargo denies the remainder of the allegations of this

5  paragraph.

6                      **II.    FACTUAL BACKGROUND**

7      4.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

8  truth of the allegations in this paragraph and, on that basis, denies the allegations in this

9  paragraph.

10      5.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

11  truth of the allegations in this paragraph and, on that basis, denies the allegations in this

12  paragraph.

13      6.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

14  truth of the allegations in this paragraph and, on that basis, denies the allegations in this

15  paragraph.

16      7.      Wells Fargo admits that it provides financial services including banking,

17  insurance, investment, mortgage loan, and consumer finance services.  Wells Fargo admits that it

18  operates customer support lines, some of which are toll-free.  Wells Fargo admits that some of its

19  customer support lines employ interactive voice response (IVR) systems that provide customers

20  with audible responses.  Wells Fargo lacks information sufficient to form a belief about the truth

21  of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of

22  the allegations in this paragraph.

23      8.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

24  truth of the allegations in this paragraph and, on that basis, denies the allegations in this

25  paragraph.

26      9.      Wells Fargo lacks knowledge or information sufficient to form a belief about the

27  truth of the allegations in this paragraph and, on that basis, denies the allegations in this

28  paragraph.

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

424905.01

1        10.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

2    truth of the allegations in this paragraph and, on that basis, denies the allegations in this

3    paragraph.

4        11.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

5    truth of the allegations in this paragraph and, on that basis, denies the allegations in this

6    paragraph.

7        12.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

8    truth of the allegations in this paragraph and, on that basis, denies the allegations in this

9    paragraph.

10        13.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

11    truth of the allegations in this paragraph and, on that basis, denies the allegations in this

12    paragraph.

13        14.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

14    truth of the allegations in this paragraph and, on that basis, denies the allegations in this

15    paragraph.

16        15.    Wells Fargo admits that some of the IVR systems used in its customer support

17    lines may respond with an audible response or may route the caller to a live person.  Wells Fargo

18    lacks information sufficient to form a belief about the truth of the remainder of the allegations in

19    this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

20        16.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

21    truth of the allegations in this paragraph and, on that basis, denies the allegations in this

22    paragraph.

23        17.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

24    truth of the allegations in this paragraph and, on that basis, denies the allegations in this

25    paragraph.

26        18.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

27    truth of the allegations in this paragraph and, on that basis, denies the allegations in this

28    paragraph.

1    19.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

2    truth of the allegations in this paragraph and, on that basis, denies the allegations in this

3    paragraph.

4    20.    Wells Fargo admits that the IVR systems used in its customer support lines are a

5    combination of components, including hardware, software, and content, that it obtained from

6    third parties.  Wells Fargo lacks knowledge or information sufficient to form a belief about the

7    truth of the allegations in the remainder this paragraph and, on that basis, denies the allegations

8    in the remainder of this paragraph.

9    21.    Wells Fargo lacks knowledge or information sufficient to form a belief about the

10   truth of the allegations in this paragraph and, on that basis, denies the allegations in this

11   paragraph.

12   22.    Wells Fargo admits that, on or about June 2, 2006, J. Nicholas Gross of the Trojan

13   Law Offices sent a letter addressed to James Strother, purportedly on behalf of Phoenix, in which

14   Mr. Gross stated that the "speech based electronic agent" that Mr. Gross apparently assumed was

15   operated by Wells Fargo "is very likely covered one or more claims of the Phoenix portfolio in

16   this area."  Wells Fargo admits that the letter listed U.S. Patent Nos. 6,633,846, 6,616,172,

17   6,665,640, and 7,050,977 and a pending publication, Publication No. 2004/0117189.  Wells

18   Fargo further admits that the letter stated that "we request that you please review the enclosed

19   materials, and let us know within 30 days if Wells Fargo is interested in securing a license to the

20   above technologies."  Wells Fargo admits that, on or about June 27, 2006, Walter Linder pointed

21   out in a letter to Mr. Gross that Mr. Gross had failed to identity any specific claims that were

22   infringed and had not provided any specific reasons why any such claims were infringed.  Wells

23   Fargo admits that, on or about June 29, 2006, Mr. Gross replied by letter to Mr. Linder that

24   Wells Fargo may have overlooked a CD enclosed with the original letter.  Wells Fargo admits

25   that, on or about October 18, 2007, R. Joseph Trojan, purportedly representing Phoenix, sent a

26   letter to Mr. Linder stating, *inter alia*, "the only rational choice is for Wells Fargo to solicit more

27   favorable treatment as a willing licensee than the terms it would receive as a defendant in

28   litigation."  The letter further demanded that Wells Fargo "disclose its call volume for each of

4

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

1  the past three years for its interactive natural language processing customer support lines."

2  Wells Fargo denies the remainder of the allegations in this paragraph.

3  **III.    JURISDICTION AND VENUE**

4      23.    This paragraph states no more than a legal conclusion to which no response is

5  required.

6      24.    This paragraph states no more than a legal conclusion to which no response is

7  required.

8      25.    This paragraph states no more than a legal conclusion to which no response is

9  required.

10  **IV.    FIRST COUNT FOR INFRINGEMENT OF UNITED
      STATES PATENT NO. 6,633,846**

11

12      26.    Wells Fargo repeats and realleges its responses set forth in paragraphs 1-25

13  above.

14      27.    Wells Fargo admits that what purports to be a copy of U.S. Patent No. 6,633,846

15  (" '846 patent") is attached to the Complaint as Exhibit 1. Wells Fargo admits that the '846

16  patent is entitled "Distributed Real Time Speech Recognition System." Wells Fargo lacks

17  knowledge or information sufficient to form a belief about the truth of the remainder of the

18  allegations in this paragraph and, on that basis, denies the remainder of the allegations in this

19  paragraph.

20      28.    Denied.

21      29.    Denied.

22      30.    Denied.

23  **V.    SECOND COUNT FOR INFRINGEMENT OF UNITED
      STATES PATENT NO. 6,665,640**

24      31.    Wells Fargo repeats and realleges its responses set forth in paragraphs 1-25

25  above.

26      32.    Wells Fargo admits that what purports to be a copy of U.S. Patent No. 6,665,640

27  (" '640 patent") is attached to the Complaint as Exhibit 2. Wells Fargo admits that the '640

28  patent is entitled "Interactive Speech Based Learning/Training System Formulating Search

5

1    Queries Based on Natural Language Parsing of Recognized User Queries." Wells Fargo lacks

2    knowledge or information sufficient to form a belief about the truth of the remainder of the

3    allegations in this paragraph and, on that basis, denies the remainder of the allegations in this

4    paragraph.

5        33.    Denied.

6        34.    Denied.

7        35.    Denied.

8        **VI.    THIRD COUNT FOR INFRINGEMENT OF UNITED
                  STATES PATENT NO. 7,050,977**

9

10       36.    Wells Fargo repeats and realleges its responses set forth in paragraphs 1 - 25

11   above.

12       37.    Wells Fargo admits that what purports to be a copy of U.S. Patent No. 7,050,977

13   (" '977 patent") is attached to the Complaint as Exhibit 3. Wells Fargo admits that the '977

14   patent is entitled "Speech-Enabled Server for Internet Website and Method." Wells Fargo lacks

15   knowledge or information sufficient to form a belief about the truth of the remainder of the

16   allegations in this paragraph and, on that basis, denies the remainder of the allegations in this

17   paragraph.

18       38.    Denied.

19       39.    Denied.

20       40.    Denied.

21       **VII.    FOURTH COUNT FOR INFRINGEMENT OF UNITED
                   STATES PATENT NO. 7,277,854**

22       41.    Wells Fargo repeats and realleges its responses set forth in paragraphs 1 - 25

23   above.

24       42.    Wells Fargo admits that what purports to be a copy of U.S. Patent No. 7,277,854

25   (" '854 patent") is attached to the Complaint as Exhibit 4. Wells Fargo admits that the '854

26   patent is entitled "Speech Recognition System Interactive Agent." Wells Fargo lacks knowledge

27   or information sufficient to form a belief about the truth of the remainder of the allegations in

28   this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

6

1    43.    Denied.

2    44.    Denied.

3    45.    Denied.

4                    VIII.    **DEMAND FOR JURY TRIAL**

5    46.    This paragraph demands a jury trial, and accordingly no response is necessary for

6    this paragraph.

7                    IX.    **PRAYER FOR RELIEF**

8    47.    Wells Fargo denies each allegation of the Complaint not expressly admitted

9    herein.

10                    **AFFIRMATIVE DEFENSES**

11                    **FIRST AFFIRMATIVE DEFENSE**

12    48.    On information and belief, the '846 patent is invalid because it fails to enable a

13    person of ordinary skill in the art to make and/or use the purported inventions claimed therein as

14    required by 35 U.S.C. § 112.

15                    **SECOND AFFIRMATIVE DEFENSE**

16    49.    On information and belief, the '846 patent is invalid because it fails to set forth an

17    adequate written description of the purported inventions claimed therein as required by 35 U.S.C.

18    § 112.

19                    **THIRD AFFIRMATIVE DEFENSE**

20    50.    On information and belief, the '846 patent is invalid because it fails to provide the

21    best mode known to the putative inventors of practicing the purported inventions claimed therein

22    as required by 35 U.S.C. § 112.

23                    **FOURTH AFFIRMATIVE DEFENSE**

24    51.    On information and belief, the '846 patent is invalid because it fails to satisfy the

25    definiteness requirement of 35 U.S.C. § 112.

26                    **FIFTH AFFIRMATIVE DEFENSE**

27    52.    On information and belief, the '846 patent is invalid because the purported

28    inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

7

1

**SIXTH AFFIRMATIVE DEFENSE**

2    53.    On information and belief, the '846 patent is invalid because the purported

3 inventions claimed therein do not meet the requirement of non-obviousness contained in 35

4 U.S.C. § 103.

5

**SEVENTH AFFIRMATIVE DEFENSE**

6    54.    On information and belief, the '846 patent is invalid because it fails to set forth

7 the proper inventors of the purported inventions claimed in the patent.

8

**EIGHTH AFFIRMATIVE DEFENSE**

9    55.    On information and belief, the '846 patent is not infringed by Wells Fargo

10 because the claim constructions that would be required to find infringement are barred by the

11 doctrine of prosecution disclaimer and/or prosecution history estoppel.

12

**NINTH AFFIRMATIVE DEFENSE**

13    56.    On information and belief, the '640 patent is invalid because it fails to enable a

14 person of ordinary skill in the art to make and/or use the purported inventions claimed therein as

15 required by 35 U.S.C. § 112.

16

**TENTH AFFIRMATIVE DEFENSE**

17    57.    On information and belief, the '640 patent is invalid because it fails to set forth an

18 adequate written description of the purported inventions claimed therein as required by 35 U.S.C.

19 § 112.

20

**ELEVENTH AFFIRMATIVE DEFENSE**

21    58.    On information and belief, the '640 patent is invalid because it fails to provide the

22 best mode known to the putative inventors of practicing the purported inventions claimed therein

23 as required by 35 U.S.C. § 112.

24

**TWELFTH AFFIRMATIVE DEFENSE**

25    59.    On information and belief, the '640 patent is invalid because it fails to satisfy the

26 definiteness requirement of 35 U.S.C. § 112.

27

28

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

1

**THIRTEENTH AFFIRMATIVE DEFENSE**

2       60.    On information and belief, the '640 patent is invalid because the purported

3  inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

4

**FOURTEENTH AFFIRMATIVE DEFENSE**

5       61.    On information and belief, the '640 patent is invalid because the purported

6  inventions claimed therein do not meet the requirement of non-obviousness contained in 35

7  U.S.C. § 103.

8

**FIFTEENTH AFFIRMATIVE DEFENSE**

9       62.    On information and belief, the '640 patent is invalid because it fails to set forth

10  the proper inventors of the purported inventions claimed in the patent.

11

**SIXTEENTH AFFIRMATIVE DEFENSE**

12      63.    On information and belief, the '640 patent is not infringed by Wells Fargo

13  because the claim constructions that would be required to find infringement are barred by the

14  doctrine of prosecution disclaimer and/or prosecution history estoppel.

15

**SEVENTEENTH AFFIRMATIVE DEFENSE**

16      64.    On information and belief, the '977 patent is invalid because it fails to enable a

17  person of ordinary skill in the art to make and/or use the purported inventions claimed therein as

18  required by 35 U.S.C. § 112.

19

**EIGHTEENTH AFFIRMATIVE DEFENSE**

20      65.    On information and belief, the '977 patent is invalid because it fails to set forth an

21  adequate written description of the purported inventions claimed therein as required by 35 U.S.C.

22  § 112.

23

**NINETEENTH AFFIRMATIVE DEFENSE**

24      66.    On information and belief, the '977 patent is invalid because it fails to provide the

25  best mode known to the putative inventors of practicing the purported inventions claimed therein

26  as required by 35 U.S.C. § 112.

27

28

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

1

### TWENTIETH AFFIRMATIVE DEFENSE

2  67. On information and belief, the '977 patent is invalid because it fails to satisfy the

3 definiteness requirement of 35 U.S.C. § 112.

4

### TWENTY-FIRST AFFIRMATIVE DEFENSE

5  68. On information and belief, the '977 patent is invalid because the purported

6 inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

7

### TWENTY-SECOND AFFIRMATIVE DEFENSE

8  69. On information and belief, the '977 patent is invalid because the purported

9 inventions claimed therein do not meet the requirement of non-obviousness contained in 35

10 U.S.C. § 103.

11

### TWENTY-THIRD AFFIRMATIVE DEFENSE

12  70. On information and belief, the '977 patent is invalid because it fails to set forth

13 the proper inventors of the purported inventions claimed in the patent.

14

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

15  71. On information and belief, the '977 patent is not infringed by Wells Fargo

16 because the claim constructions that would be required to find infringement are barred by the

17 doctrine of prosecution disclaimer and/or prosecution history estoppel.

18

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

19  72. On information and belief, the '854 patent is invalid because it fails to enable a

20 person of ordinary skill in the art to make and/or use the purported inventions claimed therein as

21 required by 35 U.S.C. § 112.

22

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

23  73. On information and belief, the '854 patent is invalid because it fails to set forth an

24 adequate written description of the purported inventions claimed therein as required by 35 U.S.C.

25 § 112.

26

27

28

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

424905.01

1                      **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

2       74.      On information and belief, the '854 patent is invalid because it fails to provide the

3 best mode known to the putative inventors of practicing the purported inventions claimed therein

4 as required by 35 U.S.C. § 112.

5                      **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

6       75.      On information and belief, the '854 patent is invalid because it fails to satisfy the

7 definiteness requirement of 35 U.S.C. § 112.

8                      **TWENTY-NINTH AFFIRMATIVE DEFENSE**

9       76.      On information and belief, the '854 patent is invalid because the purported

10 inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

11                      **THIRTIETH AFFIRMATIVE DEFENSE**

12       77.      On information and belief, the '854 patent is invalid because the purported

13 inventions claimed therein do not meet the requirement of non-obviousness contained in 35

14 U.S.C. § 103.

15                      **THIRTY-FIRST AFFIRMATIVE DEFENSE**

16       78.      On information and belief, the '854 patent is invalid because it fails to set forth

17 the proper inventors of the purported inventions claimed in the patent.

18                      **THIRTY-SECOND AFFIRMATIVE DEFENSE**

19       79.      On information and belief, the '854 patent is not infringed by Wells Fargo

20 because the claim constructions that would be required to find infringement are barred by the

21 doctrine of prosecution disclaimer and/or prosecution history estoppel.

22                      **THIRTY-THIRD AFFIRMATIVE DEFENSE**

23       80.      On information and belief, one or more of Phoenix's claims are barred by the

24 doctrine of laches.

25                      **THIRTY-FOURTH AFFIRMATIVE DEFENSE**

26       81.      On information and belief, Phoenix's claims for damages are limited and/or

27 barred by its failure to comply with the provisions of 35 U.S.C. § 287.

28

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

82.     On information and belief, Phoenix's claims for infringement of the '846 patent are barred in whole or in part by its failure to comply with the duty of candor before the United States Patent and Trademark Office ("USPTO"). Phoenix misrepresented or omitted material information in prosecuting the '846 patent. The materiality of the information that was omitted is confirmed by the fact that, as explained further below, in almost every instance the reference in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject matter, and the reference was cited as a ground for rejecting the claims of that pending application. That demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here. Further, on information and belief, Phoenix withheld the information with the intent to deceive the USPTO. Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to cite material prior art of which it was made aware during the course of prosecuting related applications. Illustrative examples of such failures to disclose material prior art of which Wells Fargo is currently aware are discussed below. As a result of at least these omissions, the '846 patent is unenforceable due to inequitable conduct.

83.     During the time that the '846 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,615,296 to Stanford. Phoenix became aware of the Stanford patent no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office Action rejecting the claims of the '640 patent, based in part on obviousness over the Stanford patent.

84.     As explained in paragraph 82 above, the Stanford patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family. The Stanford patent also discloses information that is unquestionably material to issues relating to the patentability of the claims of the '846 patent, including the issue of obviousness. For example, the '846 patent as issued claims a system "wherein said speech representative values are transmitted continuously during said speech utterances." The Stanford

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

1    patent, at column 4, lines 10-12 notes that it discloses a "technique of speaker-independent,

2    continuous-speech phrases and bi-grams."

3        85.    Well over three months later, in September of 2002, Phoenix submitted a

4    supplemental Information Disclosure Statement. That IDS contained no mention of the Stanford

5    patent. Days after that, Phoenix submitted a set of amendments and arguments intended to

6    overcome the Examiner's prior rejection of the claims of the '846 patent. Still no mention was

7    made of the Stanford patent, despite the fact that Phoenix had attempted at length to distinguish

8    the Stanford patent in the '640 patent prosecution.

9        86.    On March 12, 2003, the Examiner gave notice of allowance of all claims of the

10   '846 patent. Phoenix still failed to disclose to the USPTO the Stanford patent, a reference that

11   may well have led the USPTO to withdraw its notice of allowance of the claims.

12       87.    The '846 patent reflects on its face that the Stanford patent was never considered

13   by the Examiner during its prosecution. Notably, the attorney prosecuting both the '846 patent

14   and the '640 patent was the same: J. Nicholas Gross. By intentionally failing to submit this

15   material reference, Phoenix committed inequitable conduct, and the '846 patent is unenforceable.

16       88.    Also during the time that the '846 patent was pending before the USPTO, Phoenix

17   was aware of U.S. Patent No. 5,983,190 to Trower. Phoenix became aware of the Trower patent

18   no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office

19   Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower

20   patent.

21       89.    As explained in paragraph 82 above, the Trower patent's materiality is

22   demonstrated by the fact that it was used to reject the claims of a patent application from the

23   same family. The Trower patent also discloses information that is unquestionably material to

24   issues relating to the patentability of the claims of the '846 patent, including the issue of

25   obviousness. For example, the '846 patent as issued claims a program used in a system "for

26   receiving user speech utterance signals representing speech utterances to be recognized" that

27   "works within a browser program executing on said computing system." The Trower patent, at

28   column 3, lines 15-16 and column 4, lines 28-34 notes that it discloses a system that relates to

13

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

1  "speech input" and utilizes "a microphone and analog to digital convertor circuitry for

2  converting sound to digitized audio" and that the system is "advantageous for web pages."

3       90.    Well over three months later, in September of 2002, Phoenix submitted a

4  supplemental Information Disclosure Statement. That IDS contained no mention of the Trower

5  patent. Days after that, Phoenix submitted a set of amendments and arguments intended to

6  overcome the Examiner's prior rejection of the claims of the '846 patent. Still no mention was

7  made of the Trower patent.

8       91.    On March 12, 2003, the Examiner gave notice of allowance of all claims of the

9  '846 patent. Phoenix still failed to disclose to the USPTO the Trower patent, a reference that

10 may well have led the USPTO to withdraw its notice of allowance of the claims.

11      92.    The '846 patent reflects on its face that the Trower patent was never considered

12 by the Examiner during its prosecution. Notably, the attorney prosecuting both the '846 patent

13 and the '640 patent was the same: J. Nicholas Gross. By intentionally failing to submit this

14 material reference, Phoenix committed inequitable conduct, and the '846 patent is unenforceable.

15      93.    In addition to its failures to submit the material references described above,

16 Phoenix failed to disclose to the United States Patent and Trademark Office material information

17 regarding systems that were in use more than a year before the filing date for the '846 patent.

18 Specifically, documents produced by Phoenix have revealed that its principal (and named

19 inventor on the '846 patent) Ian Bennett knew no later than July of 2002 of a number of

20 companies that Phoenix viewed as competitors in the speech recognition marketplace. These

21 companies included, without limitation, Nuance, SpeechWorks, Scansoft, and VoiceNet.

22      94.    Under the reading of the claims advanced by Phoenix in its infringement

23 contentions in this case, a product that was offered for sale by Nuance and in use more than a

24 year prior to the filing date of the '846 patent would have contained each of the elements of the

25 asserted claims of that patent. The Nuance product, which was available years prior to the filing

26 date of the '846 patent, would therefore have been not merely material prior art, but anticipatory

27 prior art, at least as Phoenix now reads the claims of the patents-in-suit. Accordingly,

28

424905.01

1  information regarding the products offered by these companies would have been considered

2  highly material to a reasonable examiner in considering whether to issue the '846 patent.

3      95.    Given the knowledge of this highly relevant prior art, and the fact that Phoenix

4  elsewhere failed to submit material prior art of which it was aware, as described above, it is

5  reasonable to infer that Phoenix had an intent to deceive when it withheld information regarding

6  that prior art from the USPTO.  By intentionally failing to submit this highly relevant prior art to

7  the USPTO, Phoenix committed inequitable conduct, and the '846 patent is therefore

8  unenforceable.

9                    **THIRTY-SIXTH AFFIRMATIVE DEFENSE**

10     96.    On information and belief, Phoenix's claims for infringement of the '640 patent

11  are barred in whole or in part by its failure to comply with the duty of candor before the USPTO.

12  Phoenix misrepresented or omitted material information in prosecuting the '640 patent.  The

13  materiality of the information that was omitted is confirmed by the fact that, as explained further

14  below, in almost every instance the reference in question was cited to Phoenix by a patent

15  examiner overseeing the prosecution of a patent application seeking to claim related subject

16  matter, and the reference was cited as a ground for rejecting the claims of that pending

17  application.  That demonstrates that a reasonable examiner would have likely considered the

18  withheld information relevant in assessing the patentability of the claims here.  Further, on

19  information and belief, Phoenix withheld the information with the intent to deceive the USPTO.

20  Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to

21  cite material prior art of which it was made aware during the course of prosecuting related

22  applications.  Illustrative examples of such failures to disclose material prior art of which Wells

23  Fargo is currently aware are discussed below.  As a result of at least these omissions, the '640

24  patent is unenforceable due to inequitable conduct.

25     97.    During the time that the '640 patent was pending before the USPTO, Phoenix was

26  aware of U.S. Patent No. 5,737,485 to Flanagan.  Phoenix became aware of the Flanagan patent

27  no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

28

1    Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

2    Flanagan patent.

3          98.    As explained in paragraph 96 above, the Flanagan patent's materiality is

4    demonstrated by the fact that it was used to reject the claims of a patent application from the

5    same family.  The Flanagan patent also discloses information that is unquestionably material to

6    issues relating to the patentability of the claims of the '640 patent, including the issue of

7    obviousness.  For example, the '640 patent as issued claims "a speech recognition system for

8    generating recognized speech utterance data from partially processed speech data."  The

9    Flanagan patent, at column 3, lines 55-57 and column 4, lines 2-4 discloses a "feature extractor

10   [that] extracts speech features or cepstrum coefficients," which data are then "provided as inputs

11   to the speech recognizer."

12         99.    A year later, in September of 2002, Phoenix submitted a set of amendments and

13   responses to the USPTO's Office Action rejecting the claims of the '640 patent.  Phoenix made

14   no mention of the Flanagan patent at that time.  Shortly thereafter, Phoenix submitted another

15   supplemental Information Disclosure Statement to the USPTO.  Yet Phoenix again made no

16   mention of the Flanagan patent.

17        100.    The '640 patent reflects on its face that the Flanagan patent was never considered

18   by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '640 patent

19   and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

20   material reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

21        101.    During the time that the '640 patent was pending before the USPTO, Phoenix was

22   aware of U.S. Patent No. 5,265,014 to Haddock.  Phoenix became aware of the Haddock patent

23   no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

24   Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

25   Haddock patent.

26        102.    As explained in paragraph 96 above, the Haddock patent's materiality is

27   demonstrated by the fact that it was used to reject the claims of a patent application from the

28   same family.  The Haddock patent also discloses information information that is unquestionably

1    material to issues relating to the patentability of the claims of the '640 patent, including the issue

2    of obviousness. For example, the '640 patent as issued claims a system "adapted for responding

3    to speech-based queries" that has a "speech recognition system for generating recognized speech

4    utterance data" and "a query formulation system for converting said recognized speech data into

5    a search query suitable for identifying a topic query entry corresponding to said speech-based

6    query." The Haddock patent, at column 4, lines 25-28 and 43-46 notes that it discloses a system

7    whereby "the user communicates textual information to the computer system by talking to the

8    computer rather than by typing the information at the keyboard" and is "embodied in a user

9    interface of a database system which receives a database query from a user, evaluates the query,

10   and provides a result of the evaluation to the user."

11        103.    A year later, in September of 2002, Phoenix submitted a set of amendments and

12   responses to the USPTO's Office Action rejecting the claims of the '640 patent. Phoenix made

13   no mention of the Haddock patent at that time. Shortly thereafter, Phoenix submitted another

14   supplemental Information Disclosure Statement to the USPTO. Yet Phoenix again made no

15   mention of the Haddock patent.

16        104.    The '640 patent reflects on its face that the Haddock patent was never considered

17   by the Examiner during its prosecution. Notably, the attorney prosecuting both the '640 patent

18   and the '846 patent was the same: J. Nicholas Gross. By intentionally failing to submit this

19   material reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

20        105.    During the time that the '640 patent was pending before the USPTO, Phoenix was

21   aware of U.S. Patent No. 6,336,090 to Chou. Phoenix became aware of the Chou patent no later

22   than May of 2002, when the Examiner in the '846 patent prosecution mailed an Office Action

23   rejecting the claims of the '846 patent, based in part on obviousness over the Chou patent.

24        106.    As explained in paragraph 96 above, the Chou patent's materiality is

25   demonstrated by the fact that it was used to reject the claims of a patent application from the

26   same family. The Chou patent also discloses information information that is unquestionably

27   material to issues relating to the patentability of the claims of the '640 patent, including the issue

28   of obviousness. For example, the '640 patent as issued claims a system that involves "partially

17

1    processed speech data being received from a remote speech capturing system." The Chou patent,

2    at column 9, lines 51-59 notes that it discloses a "feature extraction and/or ASR units can be

3    located a the receiving base station, the switch connected to the base station . . . or at another

4    location connection on the network(s) to which these elements are connected" and that it will

5    sometimes "be convenient to have the feature extraction and ASR operations performed at

6    different locations."

7        107.    A few months later, in September of 2002, Phoenix submitted a set of

8    amendments and responses to the USPTO's Office Action rejecting the claims of the '640 patent.

9    Phoenix made no mention of the Chou patent at that time. Shortly thereafter, Phoenix submitted

10   another supplemental Information Disclosure Statement to the USPTO. Yet Phoenix again made

11   no mention of the Chou patent.

12       108.    The '640 patent reflects on its face that the Chou patent was never considered by

13   the Examiner during its prosecution. Notably, the attorney prosecuting both the '640 patent and

14   the '846 patent was the same: J. Nicholas Gross. By intentionally failing to submit this material

15   reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

16       109.    In addition to its failures to submit the material references described above,

17   Phoenix failed to disclose to the United States Patent and Trademark Office material information

18   regarding systems that were in use more than a year before the filing date for the '640 patent.

19   Specifically, documents produced by Phoenix have revealed that its principal (and named

20   inventor on the '640 patent) Ian Bennett knew no later than July of 2002 of a number of

21   companies that Phoenix viewed as competitors in the speech recognition marketplace. These

22   companies included, without limitation, Nuance, SpeechWorks, Scansoft, and VoiceNet.

23       110.    Under the reading of the claims advanced by Phoenix in its infringement

24   contentions in this case, a product that was offered for sale by Nuance and in use more than a

25   year prior to the filing date of the '640 patent would have contained each of the elements of the

26   asserted claims of that patent. The Nuance product, which was available years prior to the filing

27   date of the '640 patent, would therefore have been not merely material prior art, but anticipatory

28   prior art, at least as Phoenix now reads the claims of the patents-in-suit. Accordingly,

18

1  information regarding the products offered by these companies would have been considered

2  highly material to a reasonable examiner in considering whether to issue the '640 patent.

3       111.   Given the knowledge of this highly relevant prior art, and the fact that Phoenix

4  elsewhere failed to submit material prior art of which it was aware, as described above, it is

5  reasonable to infer that Phoenix had an intent to deceive when it withheld information regarding

6  that prior art from the USPTO.  By intentionally failing to submit this highly relevant prior art to

7  the USPTO, Phoenix committed inequitable conduct, and the '640 patent is therefore

8  unenforceable.

9  **THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

10       112.   On information and belief, Phoenix's claims for infringement of the '977 patent

11  are barred in whole or in part by its failure to comply with the duty of candor before the USPTO.

12  Phoenix misrepresented or omitted material information in prosecuting the '977 patent.  The

13  materiality of the information that was omitted is confirmed by the fact that, as explained further

14  below, in almost every instance the reference in question was cited to Phoenix by a patent

15  examiner overseeing the prosecution of a patent application seeking to claim related subject

16  matter, and the reference was cited as a ground for rejecting the claims of that pending

17  application.  That demonstrates that a reasonable examiner would have likely considered the

18  withheld information relevant in assessing the patentability of the claims here.  Further, on

19  information and belief, Phoenix withheld the information with the intent to deceive the USPTO.

20  Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to

21  cite material prior art of which it was made aware during the course of prosecuting related

22  applications.  Illustrative examples of such failures to disclose material prior art of which Wells

23  Fargo is currently aware are discussed below.  As a result of at least these omissions, the '977

24  patent is unenforceable due to inequitable conduct.

25       113.   During the time that the '977 patent was pending before the USPTO, Phoenix was

26  aware of U.S. Patent No. 5,615,296 to Stanford.  Phoenix became aware of the Stanford patent

27  no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office

28

19

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

1   Action rejecting the claims of the '640 patent, based in part on obviousness over the Stanford

2   patent.

3       114.    As explained in paragraph 112 above, the Stanford patent's materiality is

4   demonstrated by the fact that it was used to reject the claims of a patent application from the

5   same family.  The Stanford patent also discloses information that is unquestionably material to

6   issues relating to the patentability of the claims of the '977 patent, including the issue of

7   obviousness.  For example, the '977 patent as issued claims a system "adapted to interact on a

8   real-time basis in response to one or more continuous speech queries."  The Stanford patent, at

9   column 4, lines 10-12 notes that it discloses a "technique of speaker-independent, continuous-

10  speech phrases and bi-grams."

11      115.    After May of 2002, Phoenix submitted no less than five Information Disclosure

12  Statements.  Not one disclosed the Stanford patent.  Phoenix also twice amended its claims, but

13  did not make any mention of the Stanford patent when doing so, despite the fact that Phoenix had

14  attempted at length to distinguish the Stanford patent in the '640 patent prosecution.

15      116.    The '977 patent reflects on its face that the Stanford patent was never considered

16  by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent

17  and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

18  material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

19      117.    During the time that the '977 patent was pending before the USPTO, Phoenix was

20  aware of U.S. Patent No. 5,737,485 to Flanagan.  Phoenix became aware of the Flanagan patent

21  no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

22  Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

23  Flanagan patent.

24      118.    As explained in paragraph 112 above, the Flanagan patent's materiality is

25  demonstrated by the fact that it was used to reject the claims of a patent application from the

26  same family.  The Flanagan patent also discloses information that is unquestionably material to

27  issues relating to the patentability of the claims of the '977 patent, including the issue of

28  obviousness.  For example, the '977 patent as issued claims "partially processing a speech

1  utterance at the client platform to generate limited data content speech data." The Flanagan

2  patent, at column 3, lines 55-57 and column 4, lines 2-4 discloses a "feature extractor [that]

3  extracts speech features or cepstrum coefficients," which partially processed speech data are then

4  "provided as inputs to the speech recognizer."

5       119.    After September of 2001, Phoenix submitted a half-dozen Information Disclosure

6  Statements. Not one disclosed the Flanagan patent. Phoenix also twice amended its claims, but

7  did not make any mention of the Flanagan patent when doing so.

8       120.    The '977 patent reflects on its face that the Flanagan patent was never considered

9  by the Examiner during its prosecution. Notably, the attorney prosecuting both the '977 patent

10  and the '846 patent was the same: J. Nicholas Gross. By intentionally failing to submit this

11  material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

12       121.    During the time that the '977 patent was pending before the USPTO, Phoenix was

13  aware of U.S. Patent No. 5,265,014 to Haddock. Phoenix became aware of the Haddock patent

14  no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

15  Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

16  Haddock patent.

17       122.    As explained in paragraph 112 above, the Haddock patent's materiality is

18  demonstrated by the fact that it was used to reject the claims of a patent application from the

19  same family. The Haddock patent also discloses information that is unquestionably material to

20  issues relating to the patentability of the claims of the '977 patent, including the issue of

21  obviousness. For example, the '977 patent as issued claims a website that has a "speech

22  recognition routine executing on the server computing system for completing recognition of said

23  speech query using said speech data and said data content to generate a recognized speech

24  query" and "a list of items, at least some of said list of items being selectable by a user based on

25  said recognized speech query." The Haddock patent, at column 4, lines 25-28 and 43-46 notes

26  that it discloses a system whereby "the user communicates textual information to the computer

27  system by talking to the computer rather than by typing the information at the keyboard" and is

28

424905.01

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

1   "embodied in a user interface of a database system which receives a database query from a user,

2   evaluates the query, and provides a result of the evaluation to the user."

3       123.    After September of 2001, Phoenix submitted a half-dozen Information Disclosure

4   Statements.  Not one disclosed the Haddock patent.  Phoenix also twice amended its claims, but

5   did not make any mention of the Haddock patent when doing so.

6       124.    The '977 patent reflects on its face that the Haddock patent was never considered

7   by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent

8   and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

9   material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

10      125.    During the time that the '977 patent was pending before the USPTO, Phoenix was

11  aware of U.S. Patent No. 5,540,589 to Waters.  Phoenix became aware of the Waters patent no

12  later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

13  Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

14  Waters patent.

15      126.    As explained in paragraph 112 above, the Waters patent's materiality is

16  demonstrated by the fact that it was used to reject the claims of a patent application from the

17  same family.  The Waters patent also discloses information that is unquestionably material to

18  issues relating to the patentability of the claims of the '977 patent, including the issue of

19  obviousness.  For example, the '977 patent as issued claims a system "wherein signal processing

20  functions required to generate said recognized speech query can be allocated between a client

21  platform and the server computing system as needed based on computing resources available to

22  said client platform and server computing system respectively."  The Waters patent, at column 6,

23  lines 21-23 notes that it discloses a system where the "voice recognizer **34** is illustrated as a

24  standalone component, although it may be built-in to the controller."

25      127.    After September of 2001, Phoenix submitted a half-dozen Information Disclosure

26  Statements.  Not one disclosed the Waters patent.  Phoenix also twice amended its claims, but

27  did not make any mention of the Waters patent when doing so.

28

22

424905.01

1  128.  The '977 patent reflects on its face that the Waters patent was never considered by

2  the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and

3  the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material

4  reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

5  129.  During the time that the '977 patent was pending before the USPTO, Phoenix was

6  aware of U.S. Patent No. 6,336,090 to Chou.  Phoenix became aware of the Chou patent no later

7  than May of 2002, when the Examiner in the '846 patent prosecution mailed an Office Action

8  rejecting the claims of the '846 patent, based in part on obviousness over the Chou patent.

9  130.  As explained in paragraph 112 above, the Chou patent's materiality is

10  demonstrated by the fact that it was used to reject the claims of a patent application from the

11  same family.  The Chou patent also discloses information that is unquestionably material to

12  issues relating to the patentability of the claims of the '977 patent, including the issue of

13  obviousness.  For example, the '977 patent as issued claims a website that allows certain speech-

14  recognition operations to "be allocated between a client platform and the server computing

15  system as needed based on computing resources available to said client platform and server

16  computing system respectively."  The Chou patent, at column 9, lines 51-59 notes that it

17  discloses a "feature extraction and/or ASR units can be located a the receiving base station, the

18  switch connected to the base station . . . or at another location connection on the network(s) to

19  which these elements are connected" and that it will sometimes "be convenient to have the

20  feature extraction and ASR operations performed at different locations."

21  131.  After May of 2002, Phoenix submitted no less than five Information Disclosure

22  Statements.  Not one disclosed the Chou patent.  Phoenix also twice amended its claims, but did

23  not make any mention of the Chou patent when doing so.

24  132.  The '977 patent reflects on its face that the Chou patent was never considered by

25  the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and

26  the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material

27  reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

28

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

1      133.    During the time that the '977 patent was pending before the USPTO, Phoenix was

2   aware of U.S. Patent No. 5,983,190 to Trower.  Phoenix became aware of the Trower patent no

3   later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office

4   Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower

5   patent.

6      134.    As explained in paragraph 112 above, the Trower patent's materiality is

7   demonstrated by the fact that it was used to reject the claims of a patent application from the

8   same family.  The Trower patent also discloses information that is unquestionably material to

9   issues relating to the patentability of the claims of the '977 patent, including the issue of

10   obviousness.  For example, the '977 patent as issued claims a website that "controls an

11   interactive character agent presented to the user for assisting in handling said speech query."

12   The Trower patent, at column 2, lines 23-25 and column 3, lines 15-17 notes that it discloses a

13   "client-server animation system used to display interactive, animated user interface characters

14   with speech input and output capability" and that the invention is "advantageous for web pages

15   because a web page can include an interactive character simply by adding a reference to the

16   agent server."

17      135.    After May of 2002, Phoenix submitted no less than five Information Disclosure

18   Statements.  Not one disclosed the Trower patent.  Phoenix also twice amended its claims, but

19   did not make any mention of the Trower patent when doing so.

20      136.    The '977 patent reflects on its face that the Trower patent was never considered

21   by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent

22   and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

23   material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

24      137.    In addition to its failures to submit the material references described above,

25   Phoenix failed to disclose to the United States Patent and Trademark Office material information

26   regarding systems that were in use more than a year before the filing date for the '977 patent.

27   Specifically, documents produced by Phoenix have revealed that its principal (and named

28   inventor on the '977 patent) Ian Bennett knew no later than July of 2002 of a number of

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

1   companies that Phoenix viewed as competitors in the speech recognition marketplace.  These

2   companies included, without limitation, Nuance, SpeechWorks, Scansoft, and VoiceNet.

3       138.    Under the reading of the claims advanced by Phoenix in its infringement

4   contentions in this case, a product that was offered for sale by Nuance and in use more than a

5   year prior to the filing date of the '977 patent would have contained each of the elements of the

6   asserted claims of that patent.  The Nuance product, which was available years prior to the filing

7   date of the '977 patent, would therefore have been not merely material prior art, but anticipatory

8   prior art, at least as Phoenix now reads the claims of the patents-in-suit.  Accordingly,

9   information regarding the products offered by these companies would have been considered

10  highly material to a reasonable examiner in considering whether to issue the '977 patent.

11      139.    Given the knowledge of this highly relevant prior art, and the fact that Phoenix

12  elsewhere failed to submit material prior art of which it was aware, as described above, it is

13  reasonable to infer that Phoenix had an intent to deceive when it withheld information regarding

14  that prior art from the USPTO.  By intentionally failing to submit this highly relevant prior art to

15  the USPTO, Phoenix committed inequitable conduct, and the '977 patent is therefore

16  unenforceable.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

18      140.    On information and belief, Phoenix's claims for infringement of the '854 patent

19  are barred in whole or in part by its failure to comply with the duty of candor before the USPTO.

20  Phoenix misrepresented or omitted material information in prosecuting the '854 patent.  The

21  materiality of the information that was omitted is confirmed by the fact that, as explained further

22  below, in almost every instance the reference in question was cited to Phoenix by a patent

23  examiner overseeing the prosecution of a patent application seeking to claim related subject

24  matter, and the reference was cited as a ground for rejecting the claims of that pending

25  application.  That demonstrates that a reasonable examiner would have likely considered the

26  withheld information relevant in assessing the patentability of the claims here.   Further, on

27  information and belief, Phoenix withheld the information with the intent to deceive the USPTO.

28  Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

1    cite material prior art of which it was made aware during the course of prosecuting related

2    applications. Illustrative examples of such failures to disclose material prior art of which Wells

3    Fargo is currently aware are discussed below. As a result of at least these omissions, the '854

4    patent is unenforceable due to inequitable conduct.

5        141.    During the time that the '854 patent was pending before the USPTO, Phoenix was

6    aware of U.S. Patent No. 5,983,190 to Trower. Phoenix became aware of the Trower patent no

7    later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office

8    Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower

9    patent.

10       142.    As explained in paragraph 140 above, the Trower patent's materiality is

11   demonstrated by the fact that it was used to reject the claims of a patent application from the

12   same family. The Trower patent also discloses information that is unquestionably material to

13   issues relating to the patentability of the claims of the '854 patent, including the issue of

14   obviousness. For example, the '854 patent as issued claims a method employing an "interactive

15   electronic agent" that "is an animated character on a screen of the client device." The Trower

16   patent, at column 2, lines 23-25 notes that it discloses a "client-server animation system used to

17   display interactive, animated user interface characters with speech input and output capability."

18       143.    Phoenix filed the continuation application that matured into the '854 patent in

19   January of 2005, nearly three years after it indisputably learned of the Trower patent. At no time

20   during the prosecution of the '854 patent did Phoenix disclose the Trower patent to the USPTO.

21       144.    The '854 patent reflects on its face that the Trower patent was never considered

22   by the Examiner during its prosecution. Notably, the attorney prosecuting both the '854 patent

23   and the '640 patent was the same: J. Nicholas Gross. By intentionally failing to submit this

24   material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

25       145.    During the time that the '854 patent was pending before the USPTO, Phoenix was

26   aware of U.S. Patent No. 6,101,472 to Giangarra. Phoenix became aware of the Giangarra patent

27   no later than August of 2004, when the Examiner in the '977 patent prosecution mailed an Office

28

1  Action rejecting the claims of the '977 patent, based in part on obviousness over the Giangarra

2  patent.

3      146.    As explained in paragraph 140 above, the Giangarra patent's materiality is

4  demonstrated by the fact that it was used to reject the claims of a patent application from the

5  same family.  The Giangarra patent also discloses information that is unquestionably material to

6  issues relating to the patentability of the claims of the '854 patent, including the issue of

7  obviousness.  For example, the '854 patent as issued claims a method that includes "providing a

8  speech recognition engine adapted to recognize a first set of words and/or phrases during an

9  interactive speech session."  The Giangarra patent, at column 5, lines 41-44 discloses a

10  "vocabulary list stored in speech recognition unit 252 [that] provides a list of all words and

11  utterances by an external user which will be recognized as voice commands."

12      147.    Phoenix filed the continuation application that matured into the '854 patent in

13  January of 2005, several months after it indisputably learned of the Giangarra patent.  At no time

14  during the prosecution of the '854 patent did Phoenix disclose the Giangarra patent to the

15  USPTO.

16      148.    The '854 patent reflects on its face that the Giangarra patent was never considered

17  by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent

18  and the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

19  material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

20      149.    During the time that the '854 patent was pending before the USPTO, Phoenix was

21  aware of U.S. Patent No. 6,330,530 to Horiguchi.  Phoenix became aware of the Horiguchi

22  patent no later than August of 2004, when the Examiner in the '977 patent prosecution mailed an

23  Office Action rejecting the claims of the '977 patent, based in part on obviousness over the

24  Horiguchi patent.

25      150.    As explained in paragraph 140 above, the Horiguchi patent's materiality is

26  demonstrated by the fact that it was used to reject the claims of a patent application from the

27  same family.  The Horiguchi patent also discloses information that is unquestionably material to

28  issues relating to the patentability of the claims of the '854 patent, including the issue of

FIRST AMENDED ANSWER TO AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

1    obviousness.  For example, the '854 patent as issued claims "a natural language query system."

2    The Horiguchi patent, at column 1, lines 27-28 describes a "natural language processing system."

3        151.    Phoenix filed the continuation application that matured into the '854 patent in

4    January of 2005, several months after it indisputably learned of the Horiguchi patent.  At no time

5    during the prosecution of the '854 patent did Phoenix disclose the Horiguchi patent to the

6    USPTO.

7        152.    The '854 patent reflects on its face that the Horiguchi patent was never considered

8    by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent

9    and the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

10   material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

11       153.    During the time that the '854 patent was pending before the USPTO, Phoenix was

12   aware of U.S. Patent No. 6,901,366 to Kuhn.  Phoenix became aware of the Kuhn patent no later

13   than June of 2005, when the Examiner in the '977 patent prosecution mailed an Office Action

14   rejecting the claims of the '977 patent, based in part on obviousness over the Kuhn patent.

15       154.    As explained in paragraph 140 above, the Kuhn patent's materiality is

16   demonstrated by the fact that it was used to reject the claims of a patent application from the

17   same family.  The Kuhn patent also discloses information that is unquestionably material to

18   issues relating to the patentability of the claims of the '854 patent, including the issue of

19   obviousness.  For example, the '854 patent as issued claims a method of using a system that

20   provides "a database of query/answer pairs concerning one or more topics which can be

21   responded to by the natural language query system."  The Kuhn patent, at column 5, line 1 and

22   lines 45-47 notes that it discloses a "knowledge database" as well as a "natural language parser

23   **12** [that] analyzes and extracts semantically important and meaningful topics from a loosely

24   structured, natural language text."

25       155.    After June of 2005, Phoenix submitted several Information Disclosure

26   Statements, and also amended the claims several times.  At no time during the prosecution of the

27   '854 patent did Phoenix disclose the Kuhn patent to the USPTO.

28

424905.01

156.    The '854 patent reflects on its face that the Kuhn patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent and the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

157.    In addition to its failures to submit the material references described above, Phoenix failed to disclose to the United States Patent and Trademark Office material information regarding systems that were in use more than a year before the filing date for the '854 patent.  Specifically, documents produced by Phoenix have revealed that its principal (and named inventor on the '854 patent) Ian Bennett knew no later than July of 2002 of a number of companies that Phoenix viewed as competitors in the speech recognition marketplace.  These companies included, without limitation, Nuance, SpeechWorks, Scansoft, and VoiceNet.

158.    Under the reading of the claims advanced by Phoenix in its infringement contentions in this case, a product that was offered for sale by Nuance and in use more than a year prior to the filing date of the '854 patent would have contained each of the elements of the asserted claims of that patent.  The Nuance product, which was available years prior to the filing date of the '854 patent, would therefore have been not merely material prior art, but anticipatory prior art, at least as Phoenix now reads the claims of the patents-in-suit.  Accordingly, information regarding the products offered by these companies would have been considered highly material to a reasonable examiner in considering whether to issue the '854 patent.

159.    Given the knowledge of this highly relevant prior art, and the fact that Phoenix elsewhere failed to submit material prior art of which it was aware, as described above, it is reasonable to infer that Phoenix had an intent to deceive when it withheld information regarding that prior art from the USPTO.  By intentionally failing to submit this highly relevant prior art to the USPTO, Phoenix committed inequitable conduct, and the '854 patent is therefore unenforceable.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

160.    On information and belief, the '846 patent is invalid under the doctrine barring double patenting and/or obviousness-type double patenting.

424905.01

1   **FORTIETH AFFIRMATIVE DEFENSE**

2       161.    On information and belief, the '640 patent is invalid under the doctrine barring

3   double patenting and/or obviousness-type double patenting.

4   **FORTY-FIRST AFFIRMATIVE DEFENSE**

5       162.    On information and belief, the '977 patent is invalid under the doctrine barring

6   double patenting and/or obviousness-type double patenting.

7   **FORTY-SECOND AFFIRMATIVE DEFENSE**

8       163.    On information and belief, the '854 patent is invalid under the doctrine barring

9   double patenting and/or obviousness-type double patenting.

10   **PRAYER FOR RELIEF**

11   WHEREFORE, Wells Fargo prays for judgment as follows:

12       (a) That Phoenix take nothing by its Complaint and the Court dismiss its Complaint with

13   prejudice;

14       (b) That the Court find that no claim of the '846 patent has been, or is, infringed willfully,

15   deliberately, or otherwise by Wells Fargo;

16       (c) That the Court find that no claim of the '640 patent has been, or is, infringed willfully,

17   deliberately, or otherwise by Wells Fargo;

18       (d) That the Court find that no claim of the '977 patent has been, or is, infringed willfully,

19   deliberately, or otherwise by Wells Fargo;

20       (e) That the Court find that no claim of the '854 patent has been, or is, infringed willfully,

21   deliberately, or otherwise by Wells Fargo;

22       (f) That the Court find that the claims of the '846 patent are invalid;

23       (g) That the Court find that the claims of the '640 patent are invalid;

24       (h) That the Court find that the claims of the '977 patent are invalid;

25       (i) That the Court find that the claims of the '854 patent are invalid;

26       (j) That the Court find that the '846 patent is unenforceable because of inequitable

27   conduct committed during its prosecution;

28       (k) That the Court find that the '640 patent is unenforceable because of inequitable

30

424905.01

1  conduct committed during its prosecution;

2      (l) That the Court find that the '977 patent is unenforceable because of inequitable

3  conduct committed during its prosecution;

4      (m) That the Court find that the '854 patent is unenforceable because of inequitable

5  conduct committed during its prosecution;

6      (n) That the Court award Wells Fargo reasonable attorneys' fees under 35 U.S.C. § 285;

7      (o) That the Court award Wells Fargo all costs and expenses it incurs in this action;

8      (p) That the Court award Wells Fargo such other and further relief that it deems just and

9  proper.

10                          **DEMAND FOR JURY TRIAL**

11      Wells Fargo hereby demands a trial by jury of all issues so triable in this action.

12

13  Dated:  September 8, 2008                    KEKER & VAN NEST, LLP

14

15

16                                      By:  _____
                                             Eugene M. Paige
17                                           Attorneys for Defendant
                                             WELLS FARGO BANK, N.A.
18

19

20

21

22

23

24

25

26

27

28

424905.01                          FIRST AMENDED ANSWER TO AMENDED COMPLAINT
                                            CASE NO. CV 08-0863 MHP