KEKER & VAN NEST, LLP
DARALYN J. DURIE - #169825
EUGENE M. PAIGE - #202849
RYAN M. KENT - #220441
SONALI D. MAITRA - #254896
710 Sansome Street
San Francisco, CA 94111-1704
Telephone: (415) 391-5400
Facsimile: (415) 397-7188

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PHOENIX SOLUTIONS, INC., a California corporation,<br><br>                              Plaintiff,<br><br>        v.<br><br>WELLS FARGO BANK, N.A., a Delaware corporation, and WELLS FARGO FUNDS MANAGEMENT, LLC, a Delaware limited liability company,<br><br>                              Defendants. | Case No. CV 08-0863 MHP<br><br>**WELLS FARGO BANK, N.A.'S ANSWER TO SECOND AMENDED COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

        Defendant Wells Fargo Bank, N.A. ("Wells Fargo") answers Phoenix Solutions, Inc.'s

("Phoenix's") second amended complaint ("Complaint") on behalf of itself and itself alone as

follows:

        1.        Wells Fargo admits that the Complaint purports to recite an action for

infringement under the patent laws of the United States.

## I.     THE PARTIES

2.     Wells Fargo denies that Phoenix is a corporation organized and existing under the laws of the State of California; Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

3.     Wells Fargo admits that it has a place of business at 420 Montgomery Street, San Francisco, California 94163.  Wells Fargo denies the remainder of the allegations of this paragraph.

4.     Wells Fargo admits that Wells Fargo Funds Management, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a place of business at 525 Market Street, San Francisco, California 94105.  Wells Fargo denies the remainder of the allegations of this paragraph.

## II.     FACTUAL BACKGROUND

5.     Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

6.     Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

7.     Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

8.     Wells Fargo admits that it provides financial services including banking, insurance, investment, mortgage loan, and consumer finance services.  Wells Fargo admits that it operates customer support lines, some of which are toll-free.  Wells Fargo admits that some of its customer support lines employ interactive voice response (IVR) systems that provide customers with audible responses.  Wells Fargo lacks information sufficient to form a belief about the truth

of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

9.      Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

10.      Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

11.      Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

12.      Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

13.      Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

14.      Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

15.      Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

16.      Wells Fargo admits that some of the IVR systems used in its customer support lines may respond with an audible response or may route the caller to a live person.  Wells Fargo lacks information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

WELLS FARGO BANK, N.A.'S ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

17.     Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

18.     Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

19.     Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

20.     Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

21.     Wells Fargo admits that the IVR systems used in its customer support lines are a combination of components, including hardware, software, and content, that it obtained from third parties.  Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in the remainder this paragraph and, on that basis, denies the allegations in the remainder of this paragraph.

22.     Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph and, on that basis, denies the allegations in this paragraph.

23.     Wells Fargo admits that, on or about June 2, 2006, J. Nicholas Gross of the Trojan Law Offices sent a letter addressed to James Strother, purportedly on behalf of Phoenix, in which Mr. Gross stated that the "speech based electronic agent" that Mr. Gross apparently assumed was operated by Wells Fargo "is very likely covered one or more claims of the Phoenix portfolio in this area."  Wells Fargo admits that the letter listed U.S. Patent Nos. 6,633,846, 6,616,172, 6,665,640, and 7,050,977 and a pending publication, Publication No. 2004/0117189.  Wells Fargo further admits that the letter stated that "we request that you please review the enclosed materials, and let us know within 30 days if Wells Fargo is interested in securing a license to the

above technologies."  Wells Fargo admits that, on or about June 27, 2006, Walter Linder pointed out in a letter to Mr. Gross that Mr. Gross had failed to identity any specific claims that were infringed and had not provided any specific reasons why any such claims were infringed.  Wells Fargo admits that, on or about June 29, 2006, Mr. Gross replied by letter to Mr. Linder that Wells Fargo may have overlooked a CD enclosed with the original letter.  Wells Fargo admits that, on or about October 18, 2007, R. Joseph Trojan, purportedly representing Phoenix, sent a letter to Mr. Linder stating, *inter alia*, "the only rational choice is for Wells Fargo to solicit more favorable treatment as a willing licensee than the terms it would receive as a defendant in litigation."  The letter further demanded that Wells Fargo "disclose its call volume for each of the past three years for its interactive natural language processing customer support lines."  Wells Fargo denies the remainder of the allegations in this paragraph.

### III.    JURISDICTION AND VENUE

24.    This paragraph states no more than a legal conclusion to which no response is required.

25.    This paragraph states no more than a legal conclusion to which no response is required.

26.    This paragraph states no more than a legal conclusion to which no response is required.

### IV.    FIRST COUNT FOR INFRINGEMENT OF UNITED STATES PATENT NO. 6,633,846

27.    Wells Fargo repeats and realleges its responses set forth in paragraphs 1-26 above.

28.    Wells Fargo admits that what purports to be a copy of U.S. Patent No. 6,633,846 (" '846 patent") is attached to the Complaint as Exhibit 1. Wells Fargo admits that the '846 patent is entitled "Distributed Real Time Speech Recognition System."  Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

29.     Denied.

30.     Denied.

31.     Denied.

## V.      SECOND COUNT FOR INFRINGEMENT OF UNITED STATES PATENT NO. 6,665,640

32.     Wells Fargo repeats and realleges its responses set forth in paragraphs 1-26 above.

33.     Wells Fargo admits that what purports to be a copy of U.S. Patent No. 6,665,640 ("'640 patent") is attached to the Complaint as Exhibit 2. Wells Fargo admits that the '640 patent is entitled "Interactive Speech Based Learning/Training System Formulating Search Queries Based on Natural Language Parsing of Recognized User Queries."  Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

34.     Denied.

35.     Denied.

36.     Denied.

## VI.      THIRD COUNT FOR INFRINGEMENT OF UNITED STATES PATENT NO. 7,050,977

37.     Wells Fargo repeats and realleges its responses set forth in paragraphs 1-26 above.

38.     Wells Fargo admits that what purports to be a copy of U.S. Patent No. 7,050,977 ("'977 patent") is attached to the Complaint as Exhibit 3. Wells Fargo admits that the '977 patent is entitled "Speech-Enabled Server for Internet Website and Method."  Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

39.     Denied.

40.     Denied.

41.     Denied.

## VII.     FOURTH COUNT FOR INFRINGEMENT OF UNITED STATES PATENT NO. 7,277,854

42.     Wells Fargo repeats and realleges its responses set forth in paragraphs 1-26 above.

43.     Wells Fargo admits that what purports to be a copy of U.S. Patent No. 7,277,854 ("'854 patent") is attached to the Complaint as Exhibit 4. Wells Fargo admits that the '854 patent is entitled "Speech Recognition System Interactive Agent."  Wells Fargo lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph and, on that basis, denies the remainder of the allegations in this paragraph.

44.     Denied.

45.     Denied.

46.     Denied.

## VIII.    DEMAND FOR JURY TRIAL

47.     This paragraph demands a jury trial, and accordingly no response is necessary for this paragraph.

## IX.     PRAYER FOR RELIEF

48.     Wells Fargo denies each allegation of the Complaint not expressly admitted herein.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

49.     On information and belief, the '846 patent is invalid because it fails to enable a person of ordinary skill in the art to make and/or use the purported inventions claimed therein as required by 35 U.S.C. § 112.

### SECOND AFFIRMATIVE DEFENSE

50.     On information and belief, the '846 patent is invalid because it fails to set forth an adequate written description of the purported inventions claimed therein as required by 35 U.S.C. § 112.

426635.01

**THIRD AFFIRMATIVE DEFENSE**

51.     On information and belief, the '846 patent is invalid because it fails to provide the best mode known to the putative inventors of practicing the purported inventions claimed therein as required by 35 U.S.C. § 112.

**FOURTH AFFIRMATIVE DEFENSE**

52.     On information and belief, the '846 patent is invalid because it fails to satisfy the definiteness requirement of 35 U.S.C. § 112.

**FIFTH AFFIRMATIVE DEFENSE**

53.     On information and belief, the '846 patent is invalid because the purported inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

**SIXTH AFFIRMATIVE DEFENSE**

54.     On information and belief, the '846 patent is invalid because the purported inventions claimed therein do not meet the requirement of non-obviousness contained in 35 U.S.C. § 103.

**SEVENTH AFFIRMATIVE DEFENSE**

55.     On information and belief, the '846 patent is invalid because it fails to set forth the proper inventors of the purported inventions claimed in the patent.

**EIGHTH AFFIRMATIVE DEFENSE**

56.     On information and belief, the '846 patent is not infringed by Wells Fargo because the claim constructions that would be required to find infringement are barred by the doctrine of prosecution disclaimer and/or prosecution history estoppel.

**NINTH AFFIRMATIVE DEFENSE**

57.     On information and belief, the '640 patent is invalid because it fails to enable a person of ordinary skill in the art to make and/or use the purported inventions claimed therein as required by 35 U.S.C. § 112.

**TENTH AFFIRMATIVE DEFENSE**

58.    On information and belief, the '640 patent is invalid because it fails to set forth an adequate written description of the purported inventions claimed therein as required by 35 U.S.C. § 112.

**ELEVENTH AFFIRMATIVE DEFENSE**

59.    On information and belief, the '640 patent is invalid because it fails to provide the best mode known to the putative inventors of practicing the purported inventions claimed therein as required by 35 U.S.C. § 112.

**TWELFTH AFFIRMATIVE DEFENSE**

60.    On information and belief, the '640 patent is invalid because it fails to satisfy the definiteness requirement of 35 U.S.C. § 112.

**THIRTEENTH AFFIRMATIVE DEFENSE**

61.    On information and belief, the '640 patent is invalid because the purported inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

**FOURTEENTH AFFIRMATIVE DEFENSE**

62.    On information and belief, the '640 patent is invalid because the purported inventions claimed therein do not meet the requirement of non-obviousness contained in 35 U.S.C. § 103.

**FIFTEENTH AFFIRMATIVE DEFENSE**

63.    On information and belief, the '640 patent is invalid because it fails to set forth the proper inventors of the purported inventions claimed in the patent.

**SIXTEENTH AFFIRMATIVE DEFENSE**

64.    On information and belief, the '640 patent is not infringed by Wells Fargo because the claim constructions that would be required to find infringement are barred by the doctrine of prosecution disclaimer and/or prosecution history estoppel.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

65.     On information and belief, the '977 patent is invalid because it fails to enable a person of ordinary skill in the art to make and/or use the purported inventions claimed therein as required by 35 U.S.C. § 112.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

66.     On information and belief, the '977 patent is invalid because it fails to set forth an adequate written description of the purported inventions claimed therein as required by 35 U.S.C. § 112.

**NINETEENTH AFFIRMATIVE DEFENSE**

67.     On information and belief, the '977 patent is invalid because it fails to provide the best mode known to the putative inventors of practicing the purported inventions claimed therein as required by 35 U.S.C. § 112.

**TWENTIETH AFFIRMATIVE DEFENSE**

68.     On information and belief, the '977 patent is invalid because it fails to satisfy the definiteness requirement of 35 U.S.C. § 112.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

69.     On information and belief, the '977 patent is invalid because the purported inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

70.     On information and belief, the '977 patent is invalid because the purported inventions claimed therein do not meet the requirement of non-obviousness contained in 35 U.S.C. § 103.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

71.     On information and belief, the '977 patent is invalid because it fails to set forth the proper inventors of the purported inventions claimed in the patent.

426635.01

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

72.     On information and belief, the '977 patent is not infringed by Wells Fargo because the claim constructions that would be required to find infringement are barred by the doctrine of prosecution disclaimer and/or prosecution history estoppel.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

73.     On information and belief, the '854 patent is invalid because it fails to enable a person of ordinary skill in the art to make and/or use the purported inventions claimed therein as required by 35 U.S.C. § 112.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

74.     On information and belief, the '854 patent is invalid because it fails to set forth an adequate written description of the purported inventions claimed therein as required by 35 U.S.C. § 112.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

75.     On information and belief, the '854 patent is invalid because it fails to provide the best mode known to the putative inventors of practicing the purported inventions claimed therein as required by 35 U.S.C. § 112.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

76.     On information and belief, the '854 patent is invalid because it fails to satisfy the definiteness requirement of 35 U.S.C. § 112.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

77.     On information and belief, the '854 patent is invalid because the purported inventions claimed therein are anticipated by prior art under 35 U.S.C. § 102.

### THIRTIETH AFFIRMATIVE DEFENSE

78.     On information and belief, the '854 patent is invalid because the purported inventions claimed therein do not meet the requirement of non-obviousness contained in 35 U.S.C. § 103.

426635.01

1

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

2       79.     On information and belief, the '854 patent is invalid because it fails to set forth

3   the proper inventors of the purported inventions claimed in the patent.

4

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

5       80.     On information and belief, the '854 patent is not infringed by Wells Fargo

6   because the claim constructions that would be required to find infringement are barred by the

7   doctrine of prosecution disclaimer and/or prosecution history estoppel.

8

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

9       81.     On information and belief, one or more of Phoenix's claims are barred by the

10   doctrine of laches.

11

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

12       82.     On information and belief, Phoenix's claims for damages are limited and/or

13   barred by its failure to comply with the provisions of 35 U.S.C. § 287.

14

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

15       83.     On information and belief, Phoenix's claims for infringement of the '846 patent

16   are barred in whole or in part by its failure to comply with the duty of candor before the United

17   States Patent and Trademark Office ("USPTO").  Phoenix misrepresented or omitted material

18   information in prosecuting the '846 patent.  The materiality of the information that was omitted

19   is confirmed by the fact that, as explained further below, in almost every instance the reference

20   in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent

21   application seeking to claim related subject matter, and the reference was cited as a ground for

22   rejecting the claims of that pending application.  That demonstrates that a reasonable examiner

23   would have likely considered the withheld information relevant in assessing the patentability of

24   the claims here.  Further, on information and belief, Phoenix withheld the information with the

25   intent to deceive the USPTO.  Phoenix's intent to deceive the USPTO can be inferred from the

26   fact that it repeatedly failed to cite material prior art of which it was made aware during the

27   course of prosecuting related applications.  Illustrative examples of such failures to disclose

28

material prior art of which Wells Fargo is currently aware are discussed below.  As a result of at least these omissions, the '846 patent is unenforceable due to inequitable conduct.

84.   During the time that the '846 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,615,296 to Stanford.  Phoenix became aware of the Stanford patent no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office Action rejecting the claims of the '640 patent, based in part on obviousness over the Stanford patent.

85.   As explained in paragraph 83 above, the Stanford patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Stanford patent also discloses information that is unquestionably material to issues relating to the patentability of the claims of the '846 patent, including the issue of obviousness.  For example, the '846 patent as issued claims a system "wherein said speech representative values are transmitted continuously during said speech utterances."  The Stanford patent, at column 4, lines 10-12 notes that it discloses a "technique of speaker-independent, continuous-speech phrases and bi-grams."

86.   Well over three months later, in September of 2002, Phoenix submitted a supplemental Information Disclosure Statement.  That IDS contained no mention of the Stanford patent.  Days after that, Phoenix submitted a set of amendments and arguments intended to overcome the Examiner's prior rejection of the claims of the '846 patent.  Still no mention was made of the Stanford patent, despite the fact that Phoenix had attempted at length to distinguish the Stanford patent in the '640 patent prosecution.

87.   On March 12, 2003, the Examiner gave notice of allowance of all claims of the '846 patent.  Phoenix still failed to disclose to the USPTO the Stanford patent, a reference that may well have led the USPTO to withdraw its notice of allowance of the claims.

88.   The '846 patent reflects on its face that the Stanford patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '846 patent and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '846 patent is unenforceable.

WELLS FARGO BANK, N.A.'S ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

89.     Also during the time that the '846 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,983,190 to Trower.  Phoenix became aware of the Trower patent no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower patent.

90.     As explained in paragraph 83 above, the Trower patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Trower patent also discloses information that is unquestionably material to issues relating to the patentability of the claims of the '846 patent, including the issue of obviousness.  For example, the '846 patent as issued claims a program used in a system "for receiving user speech utterance signals representing speech utterances to be recognized" that "works within a browser program executing on said computing system."  The Trower patent, at column 3, lines 15-16 and column 4, lines 28-34 notes that it discloses a system that relates to "speech input" and utilizes "a microphone and analog to digital convertor circuitry for converting sound to digitized audio" and that the system is "advantageous for web pages."

91.     Well over three months later, in September of 2002, Phoenix submitted a supplemental Information Disclosure Statement.  That IDS contained no mention of the Trower patent.  Days after that, Phoenix submitted a set of amendments and arguments intended to overcome the Examiner's prior rejection of the claims of the '846 patent.  Still no mention was made of the Trower patent.

92.     On March 12, 2003, the Examiner gave notice of allowance of all claims of the '846 patent.  Phoenix still failed to disclose to the USPTO the Trower patent, a reference that may well have led the USPTO to withdraw its notice of allowance of the claims.

93.     The '846 patent reflects on its face that the Trower patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '846 patent and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '846 patent is unenforceable.

94.     In addition to its failures to submit the material references described above, Phoenix failed to disclose to the United States Patent and Trademark Office material information regarding systems that were in use more than a year before the filing date for the '846 patent. Specifically, documents produced by Phoenix have revealed that its principal (and named inventor on the '846 patent) Ian Bennett knew no later than July of 2002 of a number of companies that Phoenix viewed as competitors in the speech recognition marketplace. These companies included, without limitation, Nuance, SpeechWorks, Scansoft, and VoiceNet.

95.     Under the reading of the claims advanced by Phoenix in its infringement contentions in this case, a product that was offered for sale by Nuance and in use more than a year prior to the filing date of the '846 patent would have contained each of the elements of the asserted claims of that patent. The Nuance product, which was available years prior to the filing date of the '846 patent, would therefore have been not merely material prior art, but anticipatory prior art, at least as Phoenix now reads the claims of the patents-in-suit. Accordingly, information regarding the products offered by these companies would have been considered highly material to a reasonable examiner in considering whether to issue the '846 patent.

96.     Given the knowledge of this highly relevant prior art, and the fact that Phoenix elsewhere failed to submit material prior art of which it was aware, as described above, it is reasonable to infer that Phoenix had an intent to deceive when it withheld information regarding that prior art from the USPTO. By intentionally failing to submit this highly relevant prior art to the USPTO, Phoenix committed inequitable conduct, and the '846 patent is therefore unenforceable.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

97.     On information and belief, Phoenix's claims for infringement of the '640 patent are barred in whole or in part by its failure to comply with the duty of candor before the USPTO. Phoenix misrepresented or omitted material information in prosecuting the '640 patent. The materiality of the information that was omitted is confirmed by the fact that, as explained further below, in almost every instance the reference in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject

matter, and the reference was cited as a ground for rejecting the claims of that pending application. That demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here. Further, on information and belief, Phoenix withheld the information with the intent to deceive the USPTO. Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to cite material prior art of which it was made aware during the course of prosecuting related applications. Illustrative examples of such failures to disclose material prior art of which Wells Fargo is currently aware are discussed below. As a result of at least these omissions, the '640 patent is unenforceable due to inequitable conduct.

98.     During the time that the '640 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,737,485 to Flanagan. Phoenix became aware of the Flanagan patent no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an Office Action rejecting the claims of the '846 patent, based in part on obviousness over the Flanagan patent.

99.     As explained in paragraph 97 above, the Flanagan patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family. The Flanagan patent also discloses information that is unquestionably material to issues relating to the patentability of the claims of the '640 patent, including the issue of obviousness. For example, the '640 patent as issued claims "a speech recognition system for generating recognized speech utterance data from partially processed speech data." The Flanagan patent, at column 3, lines 55-57 and column 4, lines 2-4 discloses a "feature extractor [that] extracts speech features or cepstrum coefficients," which data are then "provided as inputs to the speech recognizer."

100.    A year later, in September of 2002, Phoenix submitted a set of amendments and responses to the USPTO's Office Action rejecting the claims of the '640 patent. Phoenix made no mention of the Flanagan patent at that time. Shortly thereafter, Phoenix submitted another supplemental Information Disclosure Statement to the USPTO. Yet Phoenix again made no mention of the Flanagan patent.

WELLS FARGO BANK, N.A.'S ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

101.    The '640 patent reflects on its face that the Flanagan patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '640 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

102.    During the time that the '640 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,265,014 to Haddock.  Phoenix became aware of the Haddock patent no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an Office Action rejecting the claims of the '846 patent, based in part on obviousness over the Haddock patent.

103.    As explained in paragraph 97 above, the Haddock patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Haddock patent also discloses information information that is unquestionably material to issues relating to the patentability of the claims of the '640 patent, including the issue of obviousness.  For example, the '640 patent as issued claims a system "adapted for responding to speech-based queries" that has a "speech recognition system for generating recognized speech utterance data" and "a query formulation system for converting said recognized speech data into a search query suitable for identifying a topic query entry corresponding to said speech-based query."  The Haddock patent, at column 4, lines 25-28 and 43-46 notes that it discloses a system whereby "the user communicates textual information to the computer system by talking to the computer rather than by typing the information at the keyboard" and is "embodied in a user interface of a database system which receives a database query from a user, evaluates the query, and provides a result of the evaluation to the user."

104.    A year later, in September of 2002, Phoenix submitted a set of amendments and responses to the USPTO's Office Action rejecting the claims of the '640 patent.  Phoenix made no mention of the Haddock patent at that time.  Shortly thereafter, Phoenix submitted another supplemental Information Disclosure Statement to the USPTO.  Yet Phoenix again made no mention of the Haddock patent.

105.    The '640 patent reflects on its face that the Haddock patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '640 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

106.    During the time that the '640 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 6,336,090 to Chou.  Phoenix became aware of the Chou patent no later than May of 2002, when the Examiner in the '846 patent prosecution mailed an Office Action rejecting the claims of the '846 patent, based in part on obviousness over the Chou patent.

107.    As explained in paragraph 97 above, the Chou patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Chou patent also discloses information information that is unquestionably material to issues relating to the patentability of the claims of the '640 patent, including the issue of obviousness.  For example, the '640 patent as issued claims a system that involves "partially processed speech data being received from a remote speech capturing system."  The Chou patent, at column 9, lines 51-59 notes that it discloses a "feature extraction and/or ASR units can be located a the receiving base station, the switch connected to the base station . . . or at another location connection on the network(s) to which these elements are connected" and that it will sometimes "be convenient to have the feature extraction and ASR operations performed at different locations."

108.    A few months later, in September of 2002, Phoenix submitted a set of amendments and responses to the USPTO's Office Action rejecting the claims of the '640 patent.  Phoenix made no mention of the Chou patent at that time.  Shortly thereafter, Phoenix submitted another supplemental Information Disclosure Statement to the USPTO.  Yet Phoenix again made no mention of the Chou patent.

109.    The '640 patent reflects on its face that the Chou patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '640 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '640 patent is unenforceable.

110.    In addition to its failures to submit the material references described above, Phoenix failed to disclose to the United States Patent and Trademark Office material information regarding systems that were in use more than a year before the filing date for the '640 patent. Specifically, documents produced by Phoenix have revealed that its principal (and named inventor on the '640 patent) Ian Bennett knew no later than July of 2002 of a number of companies that Phoenix viewed as competitors in the speech recognition marketplace. These companies included, without limitation, Nuance, SpeechWorks, Scansoft, and VoiceNet.

111.    Under the reading of the claims advanced by Phoenix in its infringement contentions in this case, a product that was offered for sale by Nuance and in use more than a year prior to the filing date of the '640 patent would have contained each of the elements of the asserted claims of that patent. The Nuance product, which was available years prior to the filing date of the '640 patent, would therefore have been not merely material prior art, but anticipatory prior art, at least as Phoenix now reads the claims of the patents-in-suit. Accordingly, information regarding the products offered by these companies would have been considered highly material to a reasonable examiner in considering whether to issue the '640 patent.

112.    Given the knowledge of this highly relevant prior art, and the fact that Phoenix elsewhere failed to submit material prior art of which it was aware, as described above, it is reasonable to infer that Phoenix had an intent to deceive when it withheld information regarding that prior art from the USPTO. By intentionally failing to submit this highly relevant prior art to the USPTO, Phoenix committed inequitable conduct, and the '640 patent is therefore unenforceable.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

113.    On information and belief, Phoenix's claims for infringement of the '977 patent are barred in whole or in part by its failure to comply with the duty of candor before the USPTO. Phoenix misrepresented or omitted material information in prosecuting the '977 patent. The materiality of the information that was omitted is confirmed by the fact that, as explained further below, in almost every instance the reference in question was cited to Phoenix by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject

matter, and the reference was cited as a ground for rejecting the claims of that pending application.  That demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here.   Further, on information and belief, Phoenix withheld the information with the intent to deceive the USPTO.  Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to cite material prior art of which it was made aware during the course of prosecuting related applications.  Illustrative examples of such failures to disclose material prior art of which Wells Fargo is currently aware are discussed below.  As a result of at least these omissions, the '977 patent is unenforceable due to inequitable conduct.

114.    During the time that the '977 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,615,296 to Stanford.  Phoenix became aware of the Stanford patent no later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office Action rejecting the claims of the '640 patent, based in part on obviousness over the Stanford patent.

115.    As explained in paragraph 113 above, the Stanford patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Stanford patent also discloses information that is unquestionably material to issues relating to the patentability of the claims of the '977 patent, including the issue of obviousness.  For example, the '977 patent as issued claims a system "adapted to interact on a real-time basis in response to one or more continuous speech queries."  The Stanford patent, at column 4, lines 10-12 notes that it discloses a "technique of speaker-independent, continuous-speech phrases and bi-grams."

116.    After May of 2002, Phoenix submitted no less than five Information Disclosure Statements.  Not one disclosed the Stanford patent.  Phoenix also twice amended its claims, but did not make any mention of the Stanford patent when doing so, despite the fact that Phoenix had attempted at length to distinguish the Stanford patent in the '640 patent prosecution.

117.    The '977 patent reflects on its face that the Stanford patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent

1  and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

2  material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

3      118.    During the time that the '977 patent was pending before the USPTO, Phoenix was

4  aware of U.S. Patent No. 5,737,485 to Flanagan.  Phoenix became aware of the Flanagan patent

5  no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

6  Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

7  Flanagan patent.

8      119.    As explained in paragraph 113 above, the Flanagan patent's materiality is

9  demonstrated by the fact that it was used to reject the claims of a patent application from the

10  same family.  The Flanagan patent also discloses information that is unquestionably material to

11  issues relating to the patentability of the claims of the '977 patent, including the issue of

12  obviousness.  For example, the '977 patent as issued claims "partially processing a speech

13  utterance at the client platform to generate limited data content speech data."  The Flanagan

14  patent, at column 3, lines 55-57 and column 4, lines 2-4  discloses a "feature extractor [that]

15  extracts speech features or cepstrum coefficients," which partially processed speech data are then

16  "provided as inputs to the speech recognizer."

17      120.    After September of 2001, Phoenix submitted a half-dozen Information Disclosure

18  Statements.  Not one disclosed the Flanagan patent.  Phoenix also twice amended its claims, but

19  did not make any mention of the Flanagan patent when doing so.

20      121.    The '977 patent reflects on its face that the Flanagan patent was never considered

21  by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent

22  and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

23  material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

24      122.    During the time that the '977 patent was pending before the USPTO, Phoenix was

25  aware of U.S. Patent No. 5,265,014 to Haddock.  Phoenix became aware of the Haddock patent

26  no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an

27  Office Action rejecting the claims of the '846 patent, based in part on obviousness over the

28  Haddock patent.

WELLS FARGO BANK, N.A.'S ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

123.    As explained in paragraph 113 above, the Haddock patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Haddock patent also discloses information that is unquestionably material to issues relating to the patentability of the claims of the '977 patent, including the issue of obviousness.  For example, the '977 patent as issued claims a website that has a "speech recognition routine executing on the server computing system for completing recognition of said speech query using said speech data and said data content to generate a recognized speech query" and "a list of items, at least some of said list of items being selectable by a user based on said recognized speech query."  The Haddock patent, at column 4, lines 25-28 and 43-46 notes that it discloses a system whereby "the user communicates textual information to the computer system by talking to the computer rather than by typing the information at the keyboard" and is "embodied in a user interface of a database system which receives a database query from a user, evaluates the query, and provides a result of the evaluation to the user."

124.    After September of 2001, Phoenix submitted a half-dozen Information Disclosure Statements.  Not one disclosed the Haddock patent.  Phoenix also twice amended its claims, but did not make any mention of the Haddock patent when doing so.

125.    The '977 patent reflects on its face that the Haddock patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

126.    During the time that the '977 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 5,540,589 to Waters.  Phoenix became aware of the Waters patent no later than September of 2001, when the Examiner in the '846 patent prosecution mailed an Office Action rejecting the claims of the '846 patent, based in part on obviousness over the Waters patent.

127.    As explained in paragraph 113 above, the Waters patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Waters patent also discloses information that is unquestionably material to

issues relating to the patentability of the claims of the '977 patent, including the issue of obviousness.  For example, the '977 patent as issued claims a system "wherein signal processing functions required to generate said recognized speech query can be allocated between a client platform and the server computing system as needed based on computing resources available to said client platform and server computing system respectively."  The Waters patent, at column 6, lines 21-23 notes that it discloses a system where the "voice recognizer **34** is illustrated as a standalone component, although it may be built-in to the controller."

128.     After September of 2001, Phoenix submitted a half-dozen Information Disclosure Statements.  Not one disclosed the Waters patent.  Phoenix also twice amended its claims, but did not make any mention of the Waters patent when doing so.

129.     The '977 patent reflects on its face that the Waters patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

130.     During the time that the '977 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 6,336,090 to Chou.  Phoenix became aware of the Chou patent no later than May of 2002, when the Examiner in the '846 patent prosecution mailed an Office Action rejecting the claims of the '846 patent, based in part on obviousness over the Chou patent.

131.     As explained in paragraph 113 above, the Chou patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Chou patent also discloses information that is unquestionably material to issues relating to the patentability of the claims of the '977 patent, including the issue of obviousness.  For example, the '977 patent as issued claims a website that allows certain speech-recognition operations to "be allocated between a client platform and the server computing system as needed based on computing resources available to said client platform and server computing system respectively."  The Chou patent, at column 9, lines 51-59 notes that it discloses a "feature extraction and/or ASR units can be located a the receiving base station, the switch connected to the base station . . . or at another location connection on the network(s) to

1    which these elements are connected" and that it will sometimes "be convenient to have the

2    feature extraction and ASR operations performed at different locations."

3          132.    After May of 2002, Phoenix submitted no less than five Information Disclosure

4    Statements.  Not one disclosed the Chou patent.  Phoenix also twice amended its claims, but did

5    not make any mention of the Chou patent when doing so.

6          133.    The '977 patent reflects on its face that the Chou patent was never considered by

7    the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and

8    the '846 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material

9    reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

10         134.    During the time that the '977 patent was pending before the USPTO, Phoenix was

11   aware of U.S. Patent No. 5,983,190 to Trower.  Phoenix became aware of the Trower patent no

12   later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office

13   Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower

14   patent.

15         135.    As explained in paragraph 113 above, the Trower patent's materiality is

16   demonstrated by the fact that it was used to reject the claims of a patent application from the

17   same family.  The Trower patent also discloses information that is unquestionably material to

18   issues relating to the patentability of the claims of the '977 patent, including the issue of

19   obviousness.  For example, the '977 patent as issued claims a website that "controls an

20   interactive character agent presented to the user for assisting in handling said speech query."

21   The Trower patent, at column 2, lines 23-25 and column 3, lines 15-17 notes that it discloses a

22   "client-server animation system used to display interactive, animated user interface characters

23   with speech input and output capability" and that the invention is "advantageous for web pages

24   because a web page can include an interactive character simply by adding a reference to the

25   agent server."

26         136.    After May of 2002, Phoenix submitted no less than five Information Disclosure

27   Statements.  Not one disclosed the Trower patent.  Phoenix also twice amended its claims, but

28   did not make any mention of the Trower patent when doing so.

426635.01

137.    The '977 patent reflects on its face that the Trower patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '977 patent and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '977 patent is unenforceable.

138.    In addition to its failures to submit the material references described above, Phoenix failed to disclose to the United States Patent and Trademark Office material information regarding systems that were in use more than a year before the filing date for the '977 patent. Specifically, documents produced by Phoenix have revealed that its principal (and named inventor on the '977 patent) Ian Bennett knew no later than July of 2002 of a number of companies that Phoenix viewed as competitors in the speech recognition marketplace.  These companies included, without limitation, Nuance, SpeechWorks, Scansoft, and VoiceNet.

139.    Under the reading of the claims advanced by Phoenix in its infringement contentions in this case, a product that was offered for sale by Nuance and in use more than a year prior to the filing date of the '977 patent would have contained each of the elements of the asserted claims of that patent.  The Nuance product, which was available years prior to the filing date of the '977 patent, would therefore have been not merely material prior art, but anticipatory prior art, at least as Phoenix now reads the claims of the patents-in-suit.  Accordingly, information regarding the products offered by these companies would have been considered highly material to a reasonable examiner in considering whether to issue the '977 patent.

140.    Given the knowledge of this highly relevant prior art, and the fact that Phoenix elsewhere failed to submit material prior art of which it was aware, as described above, it is reasonable to infer that Phoenix had an intent to deceive when it withheld information regarding that prior art from the USPTO.  By intentionally failing to submit this highly relevant prior art to the USPTO, Phoenix committed inequitable conduct, and the '977 patent is therefore unenforceable.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

141.    On information and belief, Phoenix's claims for infringement of the '854 patent are barred in whole or in part by its failure to comply with the duty of candor before the USPTO.

1   Phoenix misrepresented or omitted material information in prosecuting the '854 patent. The

2   materiality of the information that was omitted is confirmed by the fact that, as explained further

3   below, in almost every instance the reference in question was cited to Phoenix by a patent

4   examiner overseeing the prosecution of a patent application seeking to claim related subject

5   matter, and the reference was cited as a ground for rejecting the claims of that pending

6   application. That demonstrates that a reasonable examiner would have likely considered the

7   withheld information relevant in assessing the patentability of the claims here. Further, on

8   information and belief, Phoenix withheld the information with the intent to deceive the USPTO.

9   Phoenix's intent to deceive the USPTO can be inferred from the fact that it repeatedly failed to

10  cite material prior art of which it was made aware during the course of prosecuting related

11  applications. Illustrative examples of such failures to disclose material prior art of which Wells

12  Fargo is currently aware are discussed below. As a result of at least these omissions, the '854

13  patent is unenforceable due to inequitable conduct.

14          142.    During the time that the '854 patent was pending before the USPTO, Phoenix was

15  aware of U.S. Patent No. 5,983,190 to Trower. Phoenix became aware of the Trower patent no

16  later than May of 2002, when the Examiner in the '640 patent prosecution mailed an Office

17  Action rejecting the claims of the '640 patent, based in part on obviousness over the Trower

18  patent.

19          143.    As explained in paragraph 141 above, the Trower patent's materiality is

20  demonstrated by the fact that it was used to reject the claims of a patent application from the

21  same family. The Trower patent also discloses information that is unquestionably material to

22  issues relating to the patentability of the claims of the '854 patent, including the issue of

23  obviousness. For example, the '854 patent as issued claims a method employing an "interactive

24  electronic agent" that "is an animated character on a screen of the client device." The Trower

25  patent, at column 2, lines 23-25 notes that it discloses a "client-server animation system used to

26  display interactive, animated user interface characters with speech input and output capability."

27

28

WELLS FARGO BANK, N.A.'S ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP

144.     Phoenix filed the continuation application that matured into the '854 patent in January of 2005, nearly three years after it indisputably learned of the Trower patent.  At no time during the prosecution of the '854 patent did Phoenix disclose the Trower patent to the USPTO.

145.     The '854 patent reflects on its face that the Trower patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent and the '640 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

146.     During the time that the '854 patent was pending before the USPTO, Phoenix was aware of U.S. Patent No. 6,101,472 to Giangarra.  Phoenix became aware of the Giangarra patent no later than August of 2004, when the Examiner in the '977 patent prosecution mailed an Office Action rejecting the claims of the '977 patent, based in part on obviousness over the Giangarra patent.

147.     As explained in paragraph 141 above, the Giangarra patent's materiality is demonstrated by the fact that it was used to reject the claims of a patent application from the same family.  The Giangarra patent also discloses information that is unquestionably material to issues relating to the patentability of the claims of the '854 patent, including the issue of obviousness.  For example, the '854 patent as issued claims a method that includes "providing a speech recognition engine adapted to recognize a first set of words and/or phrases during an interactive speech session."  The Giangarra patent, at column 5, lines 41-44 discloses a "vocabulary list stored in speech recognition unit **252** [that] provides a list of all words and utterances by an external user which will be recognized as voice commands."

148.     Phoenix filed the continuation application that matured into the '854 patent in January of 2005, several months after it indisputably learned of the Giangarra patent.  At no time during the prosecution of the '854 patent did Phoenix disclose the Giangarra patent to the USPTO.

149.     The '854 patent reflects on its face that the Giangarra patent was never considered by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent

1    and the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

2    material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

3         150.    During the time that the '854 patent was pending before the USPTO, Phoenix was

4    aware of U.S. Patent No. 6,330,530 to Horiguchi.  Phoenix became aware of the Horiguchi

5    patent no later than August of 2004, when the Examiner in the '977 patent prosecution mailed an

6    Office Action rejecting the claims of the '977 patent, based in part on obviousness over the

7    Horiguchi patent.

8         151.    As explained in paragraph 141 above, the Horiguchi patent's materiality is

9    demonstrated by the fact that it was used to reject the claims of a patent application from the

10   same family.  The Horiguchi patent also discloses information that is unquestionably material to

11   issues relating to the patentability of the claims of the '854 patent, including the issue of

12   obviousness.  For example, the '854 patent as issued claims "a natural language query system."

13   The Horiguchi patent, at column 1, lines 27-28 describes a "natural language processing system."

14        152.    Phoenix filed the continuation application that matured into the '854 patent in

15   January of 2005, several months after it indisputably learned of the Horiguchi patent.  At no time

16   during the prosecution of the '854 patent did Phoenix disclose the Horiguchi patent to the

17   USPTO.

18        153.    The '854 patent reflects on its face that the Horiguchi patent was never considered

19   by the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent

20   and the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this

21   material reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

22        154.    During the time that the '854 patent was pending before the USPTO, Phoenix was

23   aware of U.S. Patent No. 6,901,366 to Kuhn.  Phoenix became aware of the Kuhn patent no later

24   than June of 2005, when the Examiner in the '977 patent prosecution mailed an Office Action

25   rejecting the claims of the '977 patent, based in part on obviousness over the Kuhn patent.

26        155.    As explained in paragraph 141 above, the Kuhn patent's materiality is

27   demonstrated by the fact that it was used to reject the claims of a patent application from the

28   same family.  The Kuhn patent also discloses information that is unquestionably material to

1   issues relating to the patentability of the claims of the '854 patent, including the issue of

2   obviousness.  For example, the '854 patent as issued claims a method of using a system that

3   provides "a database of query/answer pairs concerning one or more topics which can be

4   responded to by the natural language query system."  The Kuhn patent, at column 5, line 1 and

5   lines 45-47 notes that it discloses a "knowledge database" as well as a "natural language parser

6   **12** [that] analyzes and extracts semantically important and meaningful topics from a loosely

7   structured, natural language text."

8        156.    After June of 2005, Phoenix submitted several Information Disclosure

9   Statements, and also amended the claims several times.  At no time during the prosecution of the

10  '854 patent did Phoenix disclose the Kuhn patent to the USPTO.

11       157.    The '854 patent reflects on its face that the Kuhn patent was never considered by

12  the Examiner during its prosecution.  Notably, the attorney prosecuting both the '854 patent and

13  the '977 patent was the same: J. Nicholas Gross.  By intentionally failing to submit this material

14  reference, Phoenix committed inequitable conduct, and the '854 patent is unenforceable.

15       158.    In addition to its failures to submit the material references described above,

16  Phoenix failed to disclose to the United States Patent and Trademark Office material information

17  regarding systems that were in use more than a year before the filing date for the '854 patent.

18  Specifically, documents produced by Phoenix have revealed that its principal (and named

19  inventor on the '854 patent) Ian Bennett knew no later than July of 2002 of a number of

20  companies that Phoenix viewed as competitors in the speech recognition marketplace.  These

21  companies included, without limitation, Nuance, SpeechWorks, Scansoft, and VoiceNet.

22       159.    Under the reading of the claims advanced by Phoenix in its infringement

23  contentions in this case, a product that was offered for sale by Nuance and in use more than a

24  year prior to the filing date of the '854 patent would have contained each of the elements of the

25  asserted claims of that patent.  The Nuance product, which was available years prior to the filing

26  date of the '854 patent, would therefore have been not merely material prior art, but anticipatory

27  prior art, at least as Phoenix now reads the claims of the patents-in-suit.  Accordingly,

28

29

426635.01

1   information regarding the products offered by these companies would have been considered

2   highly material to a reasonable examiner in considering whether to issue the '854 patent.

3       160.   Given the knowledge of this highly relevant prior art, and the fact that Phoenix

4   elsewhere failed to submit material prior art of which it was aware, as described above, it is

5   reasonable to infer that Phoenix had an intent to deceive when it withheld information regarding

6   that prior art from the USPTO.  By intentionally failing to submit this highly relevant prior art to

7   the USPTO, Phoenix committed inequitable conduct, and the '854 patent is therefore

8   unenforceable.

9   **THIRTY-NINTH AFFIRMATIVE DEFENSE**

10       161.   On information and belief, the '846 patent is invalid under the doctrine barring

11   double patenting and/or obviousness-type double patenting.

12   **FORTIETH AFFIRMATIVE DEFENSE**

13       162.   On information and belief, the '640 patent is invalid under the doctrine barring

14   double patenting and/or obviousness-type double patenting.

15   **FORTY-FIRST AFFIRMATIVE DEFENSE**

16       163.   On information and belief, the '977 patent is invalid under the doctrine barring

17   double patenting and/or obviousness-type double patenting.

18   **FORTY-SECOND AFFIRMATIVE DEFENSE**

19       164.   On information and belief, the '854 patent is invalid under the doctrine barring

20   double patenting and/or obviousness-type double patenting.

21   **PRAYER FOR RELIEF**

22       WHEREFORE, Wells Fargo prays for judgment as follows:

23       (a) That Phoenix take nothing by its Complaint and the Court dismiss its Complaint with

24   prejudice;

25       (b) That the Court find that no claim of the '846 patent has been, or is, infringed willfully,

26   deliberately, or otherwise by Wells Fargo;

27       (c) That the Court find that no claim of the '640 patent has been, or is, infringed willfully,

28   deliberately, or otherwise by Wells Fargo;

426635.01

1    (d) That the Court find that no claim of the '977 patent has been, or is, infringed willfully,

2  deliberately, or otherwise by Wells Fargo;

3    (e) That the Court find that no claim of the '854 patent has been, or is, infringed willfully,

4  deliberately, or otherwise by Wells Fargo;

5    (f) That the Court find that the claims of the '846 patent are invalid;

6    (g) That the Court find that the claims of the '640 patent are invalid;

7    (h) That the Court find that the claims of the '977 patent are invalid;

8    (i) That the Court find that the claims of the '854 patent are invalid;

9    (j) That the Court find that the '846 patent is unenforceable because of inequitable

10  conduct committed during its prosecution;

11    (k) That the Court find that the '640 patent is unenforceable because of inequitable

12  conduct committed during its prosecution;

13    (l) That the Court find that the '977 patent is unenforceable because of inequitable

14  conduct committed during its prosecution;

15    (m) That the Court find that the '854 patent is unenforceable because of inequitable

16  conduct committed during its prosecution;

17    (n) That the Court award Wells Fargo reasonable attorneys' fees under 35 U.S.C. § 285;

18    (o) That the Court award Wells Fargo all costs and expenses it incurs in this action;

19    (p) That the Court award Wells Fargo such other and further relief that it deems just and

20  proper.

21                        **DEMAND FOR JURY TRIAL**

22    Wells Fargo hereby demands a trial by jury of all issues so triable in this action.

23  Dated:  October 2, 2008                    KEKER & VAN NEST, LLP

24

25                                    By:  _____/s/ Eugene M. Paige_____

26                                      Eugene M. Paige
                                       Attorneys for Defendant
27                                      WELLS FARGO BANK, N.A.

28

WELLS FARGO BANK, N.A.'S ANSWER TO SECOND AMENDED COMPLAINT
CASE NO. CV 08-0863 MHP