KEKER & VAN NEST, LLP
DARALYN J. DURIE - #169825
EUGENE M. PAIGE - #202849
RYAN M. KENT - #220441
SONALI D. MAITRA – #254896
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PHOENIX SOLUTIONS, INC., a California corporation,<br><br>                                     Plaintiff,<br><br>     v.<br><br>WELLS FARGO BANK, N.A., a Delaware corporation, and WELLS FARGO FUNDS MANAGEMENT, LLC, a Delaware limited liability company,<br><br>                                     Defendants. | Case No. CV 08-0863 MHP<br><br>**WELLS FARGO BANK, N.A.'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST UNDER RULE 56(f)**<br><br>Date:    November 10, 2008<br>Time:    2:00 p.m.<br>Dept:    Courtroom 15, 18th Floor<br>Judge:   Hon. Marilyn Hall Patel<br><br>Date Comp. Filed:    February 8, 2008<br><br>Trial Date:  TBD |

WELLS FARGO BANK, N.A.'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST UNDER RULE 56(f)
CASE NO. CV 08-0863 MHP

426307.01

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND.........................................................................................................1

ARGUMENT .................................................................................................................................3

    A.    The Court should grant a Rule 56(f) request where, as here, the party seeking to oppose the motion has been denied relevant discovery..........................3

    B.    Phoenix has denied Wells Fargo the discovery needed to support its affirmative defenses, despite Wells Fargo's diligent attempts to obtain that discovery. ................................................................................................................4

        1.    Both the Stanford patent and the Nuance system are material prior art..........................................................................................................4

        2.    Wells Fargo needs to take discovery on Phoenix's failure to disclose this material information ...................................................................8

        3.    Wells Fargo has been diligent in seeking this discovery ...........................10

CONCLUSION............................................................................................................................11

# TABLE OF AUTHORITIES

## Cases

*Forterra Sys., Inc. v. Avatar Factory*
  No. C-05-04472, 2006 U.S. Dist. LEXIS 93677 (N.D. Cal. Dec. 14,
  2006) ................................................................................................................3

*Gardco Mfg., Inc. v. Herst Lighting Co.*
  820 F.2d 1209 (Fed. Cir. 1987) ......................................................................6

*Gerlinger v. Amazon.com, Inc.*
  311 F. Supp. 2d 838 (N.D. Cal. 2004) ............................................................3

*In re Hyatt*
  211 F.3d 1367 (Fed. Cir. 2000) ......................................................................7

*In re Napster, Inc. Copyright Litig.*
  No. MDL 00-1369 MHP, 2004 U.S. Dist. LEXIS 7236 (N.D. Cal. Feb.
  22, 2004) .......................................................................................................10

*Li Second Family Partnership v. Toshiba Corp.*
  231 F.3d 1373 (Fed. Cir. 2000) ......................................................................5

*Lummus Indus., Inc. v. D.M. & E. Corp.*
  862 F.2d 267 (Fed. Cir. 1988) ...............................................................5, fn.2

*McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*
  487 F.3d 897 (Fed. Cir 2007) .........................................................................4

*McNeil-PPC, Inc. v. Proctor & Gamble Co.*
  136 F.R.D. 666 (D. Colo. 1991) .....................................................................9

*Monsanto Co. v. Bayer Bioscience N.V.*
  514 F.3d 1229 (Fed. Cir. 2008) ......................................................................4

*Plymouth Indus., LLC v. Sioux Steel Co.*
  No. 8:05CV196, 2006 WL 69548 (D. Neb. Mar. 17, 2006) ..........................9

## Rules

Rule 56(f) ...........................................................................................1, 2, 3, 10

## Regulations

37 C.F.R. § 1.56(b) ..............................................................................................7

## PRELIMINARY STATEMENT

Since mid-August, Wells Fargo has been asking to take the depositions of the two key individuals involved in the prosecution of Phoenix's patents -- Ian Bennett, the inventor, and J. Nicholas Gross, the patent attorney -- so that it could oppose this summary judgment motion on the merits. Those individuals are the best, and perhaps the only, source of information about what was known when the patents were prosecuted, and why that information was not disclosed. But Phoenix has failed to make those individuals available for their depositions prior to the filing of this opposition. As a result, this Court can and should grant relief under Rule 56(f) so that Wells Fargo can take those depositions before responding to this motion on the merits.

## FACTUAL BACKGROUND

When Wells Fargo first reviewed the prosecution histories of the patents-in-suit, it noticed something very strange. Phoenix had flooded the United States Patent and Trademark Office ("PTO") with dozens of prior art references. But some of the patents that the PTO had relied upon to reject certain claims of the patents Phoenix was prosecuting (all of which share the same specification) had not been submitted to the PTO in the prosecution of related applications, even where they contained relevant disclosures. Wells Fargo thus pled a defense of inequitable conduct in its answer.

Phoenix immediately reacted to Wells Fargo's answer by trying to short-circuit any inquiry into its conduct: it moved to strike Wells Fargo's affirmative defenses, arguing that Wells Fargo did not have enough information from the public record to prove the merits of its inequitable conduct claim at the outset of the case. At the Initial Case Management Conference, the Court questioned why such a factually intensive inquiry should (or could) be decided on a motion to strike and instead set a schedule for an early summary judgment motion.

The next week, Wells Fargo served discovery requests asking Phoenix to identify all of the prior art of which it was aware that it chose not to submit to the PTO and the reasons, if any, why Phoenix contended the withheld materials were cumulative to art that had been submitted to the PTO. *See* Declaration of Eugene M. Paige in support of Wells Fargo's Opposition to Phoenix's Motion for Summary Judgment and Request Under Rule 56(f) ("Paige Decl.") Exs. 1

1
WELLS FARGO'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST UNDER RULE 56(f)
CASE NO. CV 08-0863 MHP

426307.01

& 2. After receiving a week's extension of time to respond to the interrogatories, Phoenix responded by asserting that no "material" prior art was withheld from the PTO and refused to answer Wells Fargo's interrogatory regarding why the withheld materials were supposedly cumulative, claiming that Wells Fargo "had not shown good reason as to why Phoenix should answer this Interrogatory." Paige Decl. Ex. 3.

Wells Fargo asked Phoenix to withdraw its objections and provide the requested information so that Wells Fargo (and the Court) could make its own determination of materiality. *See* Paige Decl. Ex. 4. Although Phoenix then provided a long list of items that "may be" prior art that it withheld from the PTO, it did not purport to provide a complete list, and it maintained its refusal to provide any further substantive response as to the alleged cumulativeness of the references it had withheld from the PTO. *See* Paige Decl. Ex. 5. Given the equivocal response supplied by Phoenix, Wells Fargo once more asked Phoenix to identify the prior art that it had not disclosed during the course of prosecuting the patents-in-suit. *See* Paige Decl. Ex. 6. Phoenix refused to do so, claiming that it would be required to disclose Alexander Graham Bell's patent on the telephone. *See* Paige Decl. Ex. 7. Despite more requests, *see* Paige Decl. Ex. 8, Phoenix refused to provide a further response.

On August 11, 2008, Phoenix made its initial document production in response to Wells Fargo's document requests. *See* Paige Decl. ¶ 3. Three days later, Wells Fargo began asking for convenient dates for depositions. *See* Paige Decl. Ex. 6; Undisputed Facts ¶ 39. Wells Fargo made clear that the depositions were necessary to obtain information to oppose Phoenix's motion for summary judgment, and therefore asked Phoenix to provide it with dates in September.

Phoenix ignored Wells Fargo's request for over a month, despite repeated written and telephonic follow-up inquiries. *See* Paige Decl. Exs. 9, 10, 11, and 12. Finally, on September 16, 2008, Phoenix responded with proposed dates, all **after** Wells Fargo's opposition brief was due. *See* Paige Decl. Ex. 13; Undisputed Facts ¶¶ 40-41. Wells Fargo expressly warned Phoenix that Wells Fargo would be forced to seek relief under Rule 56(f) unless it could take the depositions earlier. *See* Paige Decl. Ex. 14. No earlier dates were forthcoming.

2
WELLS FARGO'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST UNDER RULE 56(f)
CASE NO. CV 08-0863 MHP

426307.01

While Wells Fargo was attempting to get deposition dates from Phoenix, it also reviewed the documents Phoenix had produced. Among those documents was a draft of a proposal revealing that, by July of 2002, when all of the patents-in-suit remained pending before the PTO, Phoenix considered Nuance Communications Inc. to be a competitor and thus must have known about its product offerings. *See* Paige Decl. ¶ 3. As is laid out in Wells Fargo's motion for summary judgment of invalidity, the Nuance system is invalidating prior art.

Wells Fargo immediately informed Phoenix that it intended to amend its inequitable conduct affirmative defenses based on Phoenix's knowledge of Nuance. *See* Paige Decl. Ex. 15. It also offered to stipulate to a different briefing schedule on this motion so that Phoenix could take those allegations into account when drafting its summary judgment motion. Phoenix responded in an unusually swift fashion, refusing consent to the requested amendment and ignoring Wells Fargo's offer to stipulate to a different briefing schedule. *See* Paige Decl. Ex. 16.

As a result, Wells Fargo filed a motion for leave to submit an amended answer. That motion that was rendered moot when Phoenix chose to amend its complaint, requiring Wells Fargo to file a new answer, which contained the Nuance allegations.

## ARGUMENT

**A.     The Court should grant a Rule 56(f) request where, as here, the party seeking to oppose the motion has been denied relevant discovery.**

"Upon a showing by the party opposing a motion for summary judgment that it 'cannot for reasons stated present by affidavit facts essential to justify the party's opposition,' the court may deny or continue the motion for summary judgment in order to permit that party an opportunity to obtain necessary discovery." *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 844-45 (N.D. Cal. 2004) (Patel, J.). "Granting of such a motion is particularly appropriate where the identified information is the subject of outstanding discovery requests." *Id.* at 845. In order to prevail on a Rule 56(f) request, a litigant must show "(1) that it has set forth in affidavit form the specific facts that it hopes to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion. The moving party must also show that the movant has diligently pursued discovery." *Forterra Sys.,*

3
WELLS FARGO'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST UNDER RULE 56(f)
CASE NO. CV 08-0863 MHP

426307.01

*Inc. v. Avatar Factory*, No. C-05-04472, 2006 U.S. Dist. LEXIS 93677, at *4-*5 (N.D. Cal. Dec. 14, 2006) (citations omitted).

**B.  Phoenix has denied Wells Fargo the discovery needed to support its affirmative defenses, despite Wells Fargo's diligent attempts to obtain that discovery.**

Despite repeated and diligent requests by Wells Fargo for deposition dates in September that would allow this summary judgment to go forward on the original schedule, Phoenix did not offer Wells Fargo a deposition date for either Mr. Bennett or Mr. Gross prior to the date upon which Wells Fargo was to file this opposition. *See* Paige Decl. ¶ 2 & Ex. 13; Undisputed Facts ¶ 41. Yet in order to prove its affirmative defenses of inequitable conduct, Wells Fargo must show "by clear and convincing evidence that [Phoenix] breached its duty of candor to the United States Patent and Trademark Office ('PTO') by failing to disclose material information, or submitting false material information, with an intent to deceive the PTO." *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1233-34 (Fed. Cir. 2008). Although intent can be inferred based on the relevant circumstances, *see McKesson Information Solutions, Inc. v. Bridge Medical, Inc.*, 487 F.3d 897, 914 (Fed. Cir 2007), questions relating to intent obviously are heavily tied up in the testimony and credibility of the persons involved in the prosecution. Accordingly, and as set forth in the Paige Declaration and below, there remain many essential facts to be discovered that are relevant to Wells Fargo's affirmative defenses of inequitable conduct.

**1.  Both the Stanford patent and the Nuance system are material prior art**

**a.  The Stanford patent is material prior art**

United States Patent No. 5,615,296 ("the Stanford patent"), *see* Declaration of Joseph Trojan in Support of Phoenix's Motion for Summary Judgment ("Trojan Decl.") Ex. 9, contains all elements of at least Phoenix's '846 patent claim 11, at least as Phoenix now interprets the claims of its patents.[1] In brief:

---

[1] As explained in the Joint Claim Construction Statement, Wells Fargo believes that this claim contains a limitation that is indefinite. Wells Fargo's arguments here are based on Phoenix's construction of the claims, with which Wells Fargo does not agree.

4
WELLS FARGO'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST UNDER RULE 56(f)
CASE NO. CV 08-0863 MHP

426307.01

1    Stanford has a distributed voice recognition system, as demonstrated by Figure 1 of the
2    patent, which discloses a front end in which vector quantization occurs, and a back end where
3    speech is recognized. Under Phoenix's interpretation of the '846 patent's claims, the sound
4    processing circuit is the front end of the device where "data conditioning" occurs, as shown in
5    Figure 1. The first signal processing circuit comes right after, where "vector quantization" is
6    performed. Phoenix argues that the Nuance system used by Wells Fargo has speech data values
7    that are "insufficient by themselves" to allow speech recognition because further speech
8    processing takes place after the first signal processing circuit. To the extent that is true of the
9    Nuance software used by Wells Fargo, it is equally true of the system described by Stanford.
10   Stanford must have a transmission circuit because it shows the front end and back end as
11   separate systems connected to one another. The Stanford patent discloses the use of "digital data
12   streams," Col. 9:61-62, thus satisfying the "streaming" requirement of the claim. The second
13   signal processing circuit that cooperates with a word recognition engine to recognize speech is
14   found in the "back end" system of Figure 1. And finally, as discussed in greater detail below, the
15   Stanford patent discloses a system where words are recognized in real time and output as text.

16   Phoenix chastises Wells Fargo for not relying on Stanford in its invalidity contentions.
17   But the fact that there is a wealth of prior art that can be asserted against these patents -- not all
18   of which could reasonably be charted in the invalidity contentions, which are already voluminous
19   -- is irrelevant to whether Stanford would anticipate the '846 patent under Phoenix's current
20   reading of the claims. It does, as shown above.[2] Moreover, Phoenix's singular focus on whether
21   Stanford would anticipate the claims of the '846 patent is legally erroneous. *See Li Second*
22   *Family Partnership v. Toshiba Corp.*, 231 F.3d 1373, 1380 (Fed. Cir. 2000) ("Information
23   concealed from the PTO may be material even though it would not invalidate the patent. . . . the

---

[2] Phoenix purports to find significance in the fact that "Wells Fargo does not challenge the validity of claim 1 [of the '846 patent] in its invalidity contentions." Mot. at 11. But that is because Phoenix has not *asserted* claim 1 against Wells Fargo in its preliminary infringement contentions, and Wells Fargo is only required to set forth invalidity contentions with regard to each "*asserted* claim," Patent L.R. 3-3(a) (emphasis added). Whether or not Phoenix chooses to assert any particular claim has no bearing on the inequitable conduct analysis, of course. *See Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 274 (Fed. Cir. 1988) ("The principle is well settled that if inequitable conduct is established as to any claim, all claims of the patent are

5
WELLS FARGO'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST
UNDER RULE 56(f)
CASE NO. CV 08-0863 MHP

426307.01

test for materiality is whether a reasonable examiner would have considered the information important, not whether the information would conclusively decide the issue of patentability."). And, to the extent that Stanford is anticipatory, it cannot be viewed as merely cumulative, because the examiner obviously did not find any of the cited art to be anticipatory -- or he would not have allowed the claims to issue. *See Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1214 (Fed. Cir. 1987). Finally, as discussed below, Stanford's status as anticipatory art is not the only reason that withholding it constituted inequitable conduct -- it also discloses an element that Phoenix had argued was not present in the prior art that Examiner Lerner had before him.

Phoenix raises three substantive arguments against Stanford's materiality to the '846 patent in its summary judgment motion, none of which hold any water.

*First*, Phoenix claims that it was justified in withholding Stanford because the examiner in the '640 prosecution (who, notably, was not the examiner who examined the '846 patent) stated that Stanford "teach[es] a client-server arrangement . . . but not a distributed speech recognition system." Mot. at 11. Yet Stanford discloses a speech recognition system that is distributed in the sense that Phoenix now uses the term -- what Phoenix now claims to be speech recognition functions took place at both the front end and the back end.

*Second*, Phoenix argues that the Stanford patent was cited against the '640 patent in ways that are not relevant to the '846 patent. *See* Mot. at 11-12. But that's not the point -- the fact that the patent was cited in a related case proves that Phoenix was aware of it; the text of the patent itself demonstrates its relevance to the prosecution of the '846 patent.

*Third*, Phoenix claims that Stanford is cumulative of Barclay, which allegedly contained all the elements of claim 1. *See* Mot. at 12. But, of course, the examiner didn't think Barclay taught all the elements of the allowed claims, or he would not have allowed the claims to issue. And the arguments that Phoenix made during prosecution about Barclay, relative to the claim that eventually issued as claim 11, would have been completely undermined by Stanford: Phoenix argued that "it is 100% incontrovertible that Barclay does <u>not actually recognize any</u>

rendered unenforceable.").

6
WELLS FARGO'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST
UNDER RULE 56(f)
CASE NO. CV 08-0863 MHP

426307.01

words until after silence is detected." Paige Decl. Ex. 17 at 20. Phoenix now argues that the claim phrase upon which it relied in making that argument ("said first set of speech data values are sent in a streaming fashion over said channel before silence is detected and/or said speech utterance is completed") requires that a "system can operate such that from the moment the user starts speaking the captured speech data is sent continuously over a channel coupling the user to the second signal processing circuit; the data is sent only during times when there is voice activity, and/or until he/she is finished speaking." Joint Claim Construction & Prehearing Statement (filed Sept. 19, 2008) Ex. 1 at 12. Stanford disclosed a system that does just that: it explains that "[a] speech recognition system must also offer real time operation," Stanford at 2:13-14, describes sending data continuously in a "voice data stream," *id.* at 8:22, and notes that "[r]ecognition is terminated" after the system determines "that the person is done speaking," *id.* at 11:64-65, meaning that the data would only be sent when there was voice activity and until the person is finished speaking. So Phoenix apparently had a good reason to withhold Stanford in connection with the '846 patent: Stanford disclosed an element that Phoenix argued was missing in the Barclay prior art.

        **b.**      **The Nuance system is material prior art**

As explained at length in Wells Fargo's motion for summary judgment, Phoenix has accused Wells Fargo of infringing its patents through its use of Nuance software. An earlier version of the same software was on sale and in public use more than a year prior to the filing date of the Phoenix patents. Wells Fargo has therefore filed a motion for summary judgment seeking a ruling that Phoenix's patents -- as Phoenix has interpreted them in this litigation -- are invalid over the Nuance system prior art. During prosecution, a patent examiner is required to give the claims of a patent under prosecution their broadest reasonable construction. *See In re Hyatt*, 211 F.3d 1367, 1372 (Fed. Cir. 2000) ("[D]uring examination proceedings, claims are given their broadest reasonable interpretation consistent with the specification."); *accord* 37 C.F.R. § 1.56(b) ("A *prima facie* case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent

with the specification . . . ."). Therefore, if the constructions Phoenix used to accuse Wells Fargo of infringement are a reasonable interpretation consistent with the specification (a point that Wells Fargo disputes), that same construction -- or broader -- would have to have been applied to Phoenix's claims during prosecution. Accordingly, the Nuance system is material prior art.

### 2. Wells Fargo needs to take discovery on Phoenix's failure to disclose this material information

In order to prevail on the merits of its inequitable conduct affirmative defenses, Wells Fargo must demonstrate that a person having a duty of candor made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information. Wells Fargo accordingly needs to take discovery into what Phoenix knew and thought about the Stanford patent and the Nuance system, and why it chose not to disclose them, in order to develop and support its claims of inequitable conduct.

#### a. Wells Fargo needs to take discovery relating to why Phoenix chose not to disclose the Stanford patent

Despite the fact that the Stanford patent was plainly material to the prosecution of the '846 patent, as discussed above, Examiner Lerner did not have the Stanford patent before him at any point during the prosecution of the '846 patent.[3] Phoenix correctly notes that one part of the inequitable conduct inquiry is whether Phoenix had an intent to deceive the PTO in withholding certain references. Despite the fact that both Mr. Bennett and Mr. Gross remain associated with Phoenix and have submitted declarations in support of various other motions filed by Phoenix, Phoenix did not submit a simple declaration stating that neither of them acted with deceptive intent in their activities before the PTO relative to Stanford, or to any other piece of prior art. Instead, Phoenix relies on attorney argument, not sworn testimony. *See* Mot. at 3 ("Since each undisclosed prior art patent is cumulative to other references already of record, the applicants and their counsel did not believe it was necessary to disclose the art."). And even then,

---

[3] The '846 Patent issued on October 14, 2003. Prior to its issuance, on or about May 13, 2002, Phoenix indisputably became aware of the Stanford patent when another patent examiner -- Examiner Talivaldis Smits -- cited that patent as a grounds of rejection for the co-pending '640 patent. *See* Trojan Decl. Ex. 7. Phoenix did eventually submit the Stanford patent for Examiner Lerner's consideration during the prosecution of one of the patents-in-suit; however, it did so more than three years after the '846 patent issued, in February of 2007, during the course of the

8
WELLS FARGO'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST UNDER RULE 56(f)
CASE NO. CV 08-0863 MHP

426307.01

Phoenix's attorney argument is at times equivocal. *See id.* at 23 ("[T]hese references were not disclosed for the simple reason that the inventors and their counsel *could* reasonably believe the references to be either immaterial or merely cumulative to the art already considered by the examiners for the reasons discussed above.") (emphasis added). The fact that Phoenix chose to rely on attorney argument rather than sworn testimony on points that are uniquely within the knowledge of its witnesses underscores precisely why Wells Fargo must take their depositions in order to determine why, in fact, they decided not to provide the PTO with certain references. Phoenix cannot be permitted simply to rely on unsworn attorney argument as to why these references might not have been disclosed, as opposed to *evidence* as to why they actually were not disclosed. Although Phoenix may claim that these facts are somehow privileged, they have been placed at issue by Phoenix itself, and in any event such facts regarding patent prosecution are not protected by the work product doctrine. *See, e.g., McNeil-PPC, Inc. v. Proctor & Gamble Co.*, 136 F.R.D. 666, 671-72 (D. Colo. 1991) ("If there is a question [at deposition] regarding the thoughts and theories regarding the preparation of the patent, these are not protected by the work product privilege."). Wells Fargo is entitled to depose the inventor and the patent prosecutor to address the assertions that Phoenix has made in its brief by asking them what really happened, and whether they did in fact consider the withheld art to be cumulative to other references of record, before responding to this motion on the merits. *See* Paige Decl. ¶ 5; *see also Plymouth Indus., LLC v. Sioux Steel Co.*, No. 8:05CV196, 2006 WL 695458, at *5 (D. Neb. Mar. 17, 2006) ("[T]he prosecuting attorney's mental impressions 'are crucial to any claim of inequitable conduct in a patent infringement action.'").

    **b. Wells Fargo needs discovery on Phoenix's knowledge of Nuance's products, and why those products were not disclosed to the PTO**

As explained above, recently Wells Fargo discovered evidence that Phoenix's inventor, Ian Bennett, was aware of Nuance as a competitor while the patents-in-suit remained pending before the PTO. Phoenix's refusal to allow its witnesses to sit for deposition has prevented Wells Fargo from learning what Phoenix knew about Nuance at the time. Accordingly, Wells

prosecution of the '854 patent.

9
WELLS FARGO'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST UNDER RULE 56(f)
CASE NO. CV 08-0863 MHP

426307.01

Fargo is entitled to ask Mr. Bennett how much he knew about Nuance's system during the time Phoenix's patents were being prosecuted. *See* Paige Decl. ¶ 6. If Phoenix knew that the Nuance system had some or all of the same features that Phoenix was claiming to have invented, and knew that the Nuance system had been available before the filing date, Phoenix had an obligation to disclose that information to the PTO. Wells Fargo is entitled to explore that subject at Mr. Bennett's deposition.

### c. Wells Fargo is entitled to the essential facts regarding Phoenix's knowledge of other withheld prior art

For obvious reasons, Wells Fargo's arguments in opposition are, at this point, based only on what it knows from the public record and from examining Phoenix's document production. However, during the course of deposition, Wells Fargo may well learn facts relating to other pieces of prior art that were not present in, or immediately apparent from, the document production or the public record. *See* Paige Decl. ¶ 7. This information regarding what Phoenix knew about the prior art, which is uniquely within the possession of Phoenix's principals, is an essential fact to which Wells Fargo is entitled prior to the time that Phoenix's request for summary judgment on issues relating to inequitable conduct may be heard. *See In re Napster, Inc. Copyright Litig.*, No. MDL 00-1369 MHP, 2004 U.S. Dist. LEXIS 7236, at *32-*37 (N.D. Cal. Feb. 22, 2004) (Patel, J.) (granting Rule 56(f) request in order to allow litigant to discover facts relating to alleged copyright ownership that were within the possession of the opposing litigants).

### 3. Wells Fargo has been diligent in seeking this discovery

There can be no question that Wells Fargo has been diligently pursuing this discovery. Wells Fargo made request after request for deposition dates that would permit it to gather the relevant information prior to the date its opposition was due. Phoenix flatly refused to cooperate, offering dates in October that came after the filing of this opposition. Phoenix has no one to blame but itself for the resulting delay.

10
WELLS FARGO'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST UNDER RULE 56(f)
CASE NO. CV 08-0863 MHP

426307.01

## CONCLUSION

For the foregoing reasons, the Court should allow Wells Fargo to file an opposition to the summary judgment motion that takes into consideration the deposition testimony of Mr. Bennett and Mr. Gross, and reset the hearing date on the summary judgment motion accordingly.

Dated: October 6, 2008                                    KEKER & VAN NEST, LLP

                                                By:    /s/ Eugene M. Paige
                                                       EUGENE M. PAIGE
                                                       Attorneys for Defendant
                                                       WELLS FARGO BANK, N.A.

11
WELLS FARGO'S OPPOSITION TO PHOENIX'S MOTION FOR SUMMARY JUDGMENT AND REQUEST
UNDER RULE 56(f)
CASE NO. CV 08-0863 MHP

426307.01