1  R. Joseph Trojan  CA Bar No. 137,067
   trojan@trojanlawoffices.com
2  TROJAN LAW OFFICES
3  9250 Wilshire Blvd., Suite 325
   Beverly Hills, CA  90212
4  Telephone:   (310) 777-8399
   Facsimile:   (310) 777-8348
5  **Attorney for Phoenix,**
   **PHOENIX SOLUTIONS, INC.**
6

7              **UNITED STATES DISTRICT COURT**
              **NORTHERN DISTRICT OF CALIFORNIA**
8                     **SAN FRANCISCO**

9  PHOENIX SOLUTIONS, INC., a          CASE NO. CV08-0863 MHP
   California corporation,
10                                      **PHOENIX SOLUTIONS, INC.'S**
                                        **OPPOSITION TO DEFENDANT WELLS**
11               Phoenix,               **FARGO BANK, N.A.'S MOTION FOR**
                                        **SUMMARY JUDGMENT**
12
13      v.

14  WELLS FARGO BANK, N.A., a Delaware  Date: November 10, 2008
    corporation, *et al.*               Time: 2:00 p.m.
15                                       Hon. Marilyn H. Patel
16               Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

**Plaintiff's Opposition to Defendant's Motion**            **CV08-0863 MHP**
**for Summary Judgment**

TROJAN LAW OFFICES
BEVERLY HILLS

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND ...........................................................................................................1

III.  ARGUMENT ................................................................................................................2

    a.  Legal Standard ....................................................................................................2

        i.  Requirements of Anticipation ........................................................................3

    b.  Wells Fargo Asserts a Multitude of Erroneous Legal Contentions .........................4

        i.  Wells Fargo Attempts to Distort the Legal Standard ...................................4

       ii.  Wells Fargo's Statements of Anticipation are General and Conclusory, and Fail to Meet the Standard Required by Law ...........................................6

      iii.  Wells Fargo Fails to Identify a Single Prior Art That Contains Each and Every Limitation as Required for Anticipation.....................................7

    c.  The Alleged Prior Art Does Not Contain Each and Every Limitation of the Patents-in-Suit ...................................................................................................9

        i.  Wells Fargo fails to meet its burden for claims 1, 6, 7 and 10 of the '977 patent ...............................................................................................10

            1.  Problems with relying on the Charles Schwab system ..................10

            2.  Failure to anticipate independent claim 1 .....................................12

            3.  Failure to anticipate dependent claims 6, 7, and 10 ......................14

       ii.  Wells Fargo fails to meet their burden for claims 11, 17, 20 and 21 of the '846 patent ...........................................................................................15

            1.  Failure to anticipate dependent claim 17 ......................................17

             2.  Failure to anticipate dependent claim 20 ......................................17

             3.  Failure to anticipate dependent claim 21 ......................................17

      iii.  Wells Fargo fails to meet its burden for claims 1, 4, 7 and 10 of the '640 patent ...............................................................................................18

            1.  Failure to anticipate independent claim 1 .....................................18

             2.  Failure to anticipate dependent claims 3, 4, and 7 ........................20

       iv.  Wells Fargo fails to meet its burden for the claims of the '854 patent........21

            1.  Failure to anticipate independent claim 1 .....................................21

TROJAN LAW OFFICES
BEVERLY HILLS

a.  Failure to meet Natural Language limitation ......................21

b.  Failure to meet Agent limitation .........................................23

2.  Failure to anticipate claim 27 ........................................................24

3.  Failure to anticipate dependent claims 7, 8, 9, 13, 19, 20, 22,
23, 28, 29 ........................................................................................24

IV.    CONCLUSION ........................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROJAN LAW OFFICES
BEVERLY HILLS

**TABLE OF AUTHORITIES**

CODES, RULES, AND STATUTES

Fed.R.Civ.P. 56(c)............................................................................................ 2

CASES

*Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272 (Fed. Cir. 2004)......................... 8

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350 (Fed. Cir. 1984)................... 3

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003)................... 8, 9

*Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554 (Fed. Cir. 1996)...............................10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................................... 2

*Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342 (Fed. Cir. 1999)..................................... 4

*Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991 (Fed. Cir. 2006).............................. 8

*Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575 (Fed. Cir. 1995)...................... 4

*Baxter Int'l, Inc. v. COBE Labs., Inc.*, 88 F.3d 1054 (Fed. Cir. 1996)............................. 2

*Beachcombers, Int'l v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154 (Fed. Cir. 1994)...... 9, 10

*E.I. Du Pont de Nemours & Co. v. Cetus Corp.*, 1990 WL 305551 (N.D.Cal. 1990)............... 3

*Evans Cooling Sys. v. GMC*, 125 F.3d 1448 (Fed. Cir. 1997)......................................... 5

*Friskit, Inc. v. Realnetworks, Inc.*, 2005 WL 856658 (N.D.Cal. 2005)........................ 5, 6, 13

*In re Omeprazole Patent Litigation*, 536 F.3d 1361 (Fed. Cir. 2008)................................ 4

*IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 WL 540513 (N.D.Cal. 2004)..................... 5

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142 (Fed. Cir. 2004)..................... 6

*Metabolite Labs., Inc. v. Lab. Corp.*, 370 F.3d 1354 (Fed. Cir. 2004)............................... 2

*Network Caching Tech., LLC v. Novell, Inc.*, 2003 WL 21699799 (N.D.Cal. 2003)........... 5, 13

*North American Vaccine v. American Cyanamid Co.*, 7 F.3d 1571 (Fed. Cir. 1993)............... 9

*Oki Am., Inc. v. Advanced Micro Devices, Inc.*, 2006 WL 3290577 (N.D.Cal. 2006)............... 9

*Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373 (Fed. Cir. 2003)................................... 3

*Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304 (Fed. Cir. 2002)..................... 3, 4, 6, 7

*SmithKline Beecham Corp. v. Apotex. Corp.*, 403 F.3d 1331 (Fed. Cir. 2005)...................... 3

*Space Sys./Loral, Inc. v. Lockheed Martin Corp.*, 2006 WL 279331 (N.D.Cal. 2006)............. 6

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357 (Fed. Cir.
2002).................................................................................................. 4

TROJAN LAW OFFICES
BEVERLY HILLS

*Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292 (Fed. Cir. 2002)..................... 8, 9, 10

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044 (Fed. Cir. 1988)............................... 3

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996)................................. 9

*Wahpeton Canvas Co., Inc. v. Frontier, Inc.* 879 F.2d 1546 (Fed. Cir. 1989)........................14

TROJAN LAW OFFICES
BEVERLY HILLS

**MEMORANDUM OF POINTS AND AUTHORITIES**

Phoenix Solutions, Inc. ("Phoenix") hereby respectfully submits its memorandum of points and authorities in support of its opposition to Wells Fargo Bank, N.A.'s ("Wells Fargo") motion for summary judgment.

## I.     INTRODUCTION

Wells Fargo brings a motion for summary judgment based on anticipation under section 102(b).  However, Wells Fargo's motion is defective for a multitude of reasons.  First, in an attempt to alleviate its burden of proof, Wells Fargo misstates the legal standard required in reviewing Wells Fargo's motion, and bases its entire argument on this misstatement, leaving it grossly deficient.  Furthermore, instead of relying on a *single* prior art for anticipation as required by law, Wells Fargo impermissibly mixes-and-matches different elements from different documents (some of which is not enabling as required by law); Wells Fargo then collectively refers to these documents as "NSRS prior art" in an attempt to create the illusion that it only relies on a single prior art.  Finally, Wells Fargo relies on general and conclusory explanations on how the "NSRS prior art" contains each element of the claims, and clearly misconstrues the meaning of the claims asserted by Phoenix.  A detailed analysis of Wells Fargo's prior art demonstrates that in fact it does not contain each and every limitation of each claim asserted by Phoenix.

## II.     BACKGROUND

Phoenix has charged Wells Fargo with infringing claims from several patents, including:[1]

- Claims 1, 6, 7 and 10 of U.S. Patent No. 7,050,977 ("'977 patent")

- Claims 11, 17, 20 and 21 of U.S. Patent No. 6,633,846 ("'846 patent")

- Claims 1, 3, 4 and 7 of U.S. Patent No. 6,665,640 ("'640 patent")

- Claims 1, 7-9, 12, 15, 19-23 and 27-29 of U.S. Patent No. 7,277,854 ("'854 patent")

Preliminary infringement contentions were provided to Wells Fargo in June, 2008, identifying particular combinations of hardware and software used in Interactive Voice Response (IVR) systems implicating the aforementioned claims. As part of their preliminary infringement

---

[1] These patents are attached to the Declaration of R. Joseph Trojan ("Trojan Decl."), as Exhibits 2-5.

TROJAN LAW OFFICES
BEVERLY HILLS

charts,[2] Phoenix asserted that Wells Fargo' systems were built/customized on their behalf by a variety of companies, including Intervoice – a systems integrator. Intervoice's platform is comprised of telephony boards, client computing systems, software speech recognition programs sold by Nuance (known as version 8.x), and one or more speech recognition servers.

Phoenix does not claim that any "speech recognition software" used by Wells Fargo infringes its patents. Rather, as Phoenix has always maintained, it is the system of hardware and software combined together in particular configurations that infringes these claims. In particular, Phoenix has explained quite clearly that the Nuance 8.x software is only part of the equation; Wells Fargo's use of customized data (trained grammars), certain telephony boards and certain distributed networked configurations of computing systems are what implicate the present claims.

Furthermore, Wells Fargo appears to use the earlier 1998 Nuance 6.0 software as a safe harbor, but notably fails to state anywhere in its papers that it is in fact using such software. To the contrary, as noted in Phoenix's infringement contentions, all public information reveals that in 2003 Wells Fargo adopted a much later version of Nuance software (8.x) that did not come out until long after the Phoenix patent applications were filed. These later versions of Nuance software operate in significantly different ways than that suggested by the Wells Fargo, and are used in configurations that are nowhere discussed in the materials relied on by Wells Fargo.

## III. ARGUMENT

### a. Legal Standard

Summary judgment is appropriate when the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). In determining whether there is a genuine issue of material fact, the Court must view the evidence in the light most favorable to the party opposing the motion, and resolve doubts in favor of the nonmovant. *Baxter Int'l, Inc. v. COBE Labs., Inc.*, 88 F.3d 1054, 1057 (Fed. Cir. 1996).

Moreover, a patent is entitled to a presumption of validity, and thus, an accused infringer must prove invalidity by clear and convincing evidence. *Metabolite Labs., Inc. v. Lab. Corp.*, 370

TROJAN LAW OFFICES
BEVERLY HILLS

---

[2] Attached to the Trojan Decl. as Exhibits 6-9.

F.3d 1354, 1365 (Fed. Cir. 2004). Additionally, the difficulty of proving invalidity by clear and convincing evidence is increased when an accused infringer relies on prior art already considered by the PTO, as deference should be given to the patent examiner's analysis of validity. *See, e.g.*, *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984) (holding that even though the burden of proof always remains clear and convincing evidence, reliance on prior art already considered by the PTO increases the difficulty of meeting that burden); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1050 (Fed. Cir. 1988); *E.I. Du Pont de Nemours & Co. v. Cetus Corp.*, 1990 WL 305551, at *5 (N.D.Cal. 1990).

Wells Fargo's argument relies heavily on the Nuance 6.0 software. However, most of the pertinent details of the "distributed speech system"—which Wells Fargo claim is disclosed in the Developer manuals for such software—were *already* cited by Phoenix in the patents-in-suit in the form of United States Patent No. 6,119,087. This patent (filed by Nuance in March 1998) shows the same hardware and configuration now relied upon by Wells Fargo in their motion, including particularly an arrangement in which a recognition client does endpointing of data before it is sent to a recognition server. *See, e.g.*, Trojan Decl., Exh. 11 (describing "RecClient" and "RecServer" similarly to Nuance 6.0 manual). Since the main Nuance teachings on distributed systems were already considered by the PTO, Wells Fargo's asserted defense of anticipation faces increased difficulty in meeting its burden of proof in accordance.

### i.     Requirements of Anticipation

To anticipate under section 102(b), a single prior art reference must disclose each and every limitation of the claimed invention. *See Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003). Furthermore, such disclosure must be enabling; thus, it must be sufficient to permit a person having ordinary skill in the art to practice the invention. *SmithKline Beecham Corp. v. Apotex. Corp.*, 403 F.3d 1331, 1342 (Fed. Cir. 2005). In establishing anticipation, the accused infringer must explain in detail how each claim element is disclosed in the prior art reference; conclusory allegations that each element is met is not enough. *Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315-1316 (Fed. Cir. 2002). Because anticipation is a question of fact, a party moving for summary judgment of anticipation bears a high burden to

TROJAN LAW OFFICES
BEVERLY HILLS

1  demonstrate the absence of any genuine issues of fact given that all reasonable inferences are

2  drawn in favor of the non-moving party.  *Id.* at 1315.

3  **b.    Wells Fargo Asserts a Multitude of Erroneous Legal Contentions**

4  Given the legal standard discussed above, it becomes apparent that Wells Fargo's motion

5  suffers from a multitude of erroneous legal contentions and conclusions, which cause Wells

6  Fargo's motion to fail.  First, Wells Fargo attempts to distort the legal standard required in order

7  to ease the burden required by law.   Second, Wells Fargo's assertions of anticipation are

8  extremely conclusory and fail to meet the level of specificity required by the Federal Circuit.

9  Finally, Wells Fargo does not rely on a *single* prior art reference as required for anticipation.

10  **i.    Wells Fargo Attempts to Distort the Legal Standard**

11  Given the legal standard discussed above, Wells Fargo asserts several erroneous legal

12  contentions in an effort to ease the burden it bears.  First, Wells Fargo attempts to argue that a

13  defendant cannot be prevented from practicing the prior art, citing *Atlas Powder Co. v. Ireco,*

14  *Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999).   However, Wells Fargo takes *Atlas Powder*'s

15  statement out of context, as *Atlas Powder* elaborates that this statement applies specifically to

16  ranges of chemical compounds.  *Id.*   Immediately following the quote relied upon by Wells

17  Fargo, the Federal Circuit further stated "[s]pecifically, when a patent claims a chemical

18  composition in terms of ranges of elements, any single prior art reference that falls within each of

19  the ranges anticipates the claim."  *Id.*  Moreover, the Federal Circuit on numerous occasions has

20  explicitly denied Wells Fargo's veiled approach at reducing its burden to prove invalidity,

21  holding that "[t]his court made unequivocally clear in *Baxter* that there is no 'practicing the prior

22  art defense' to literal infringement."  *Tate Access Floors, Inc. v. Interface Architectural*

23  *Resources, Inc.*, 279 F.3d 1357, 1365-69 (Fed. Cir. 2002).  The Federal Circuit further instructs

24  "accused infringers are not free to flout the requirement of proving invalidity by clear and

25  convincing evidence by asserting a 'practicing prior art' defense to literal infringement under the

26  less stringent preponderance of the evidence standard."  *Id.* at 1367; *see also Baxter Healthcare*

27  *Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1583 (Fed. Cir. 1995); *In re Omeprazole Patent*

28  *Litigation*, 536 F.3d 1361, 1377 (Fed. Cir. 2008).  Hence, Wells Fargo's cannot evade its burden

TROJAN LAW OFFICES
BEVERLY HILLS

1   of clear and convincing evidence by simply casting its defense as "practicing the prior art."

2          Additionally, Wells Fargo further attempts to distort the law by suggesting that it need not

3   present evidence that the prior art anticipates, as it believes *Evans Cooling v. GMC* allows proof

4   of anticipation solely by reference to the Phoenix's preliminary infringement contentions where,

5   if taken as true, those contentions would prove infringement.   *See Evans Cooling Sys. v. GMC*,

6   125 F.3d 1448, 1451 (Fed. Cir. 1997).   First, it is important to note that Wells Fargo fails to

7   realize that preliminary infringement contentions themselves are temporary, and are not used to

8   decide substantive issues.   *See Network Caching Tech., LLC v. Novell, Inc.*, 2003 WL 21699799,

9   at *5 (N.D.Cal. 2003) (holding "PICs [preliminary infringement contentions under Patent LR 3-1]

10  are not meant to provide a forum for litigation of the substantive issues; they are **merely designed**

11  **to streamline the discovery process**.") (emphasis added).   Furthermore, even if Wells Fargo

12  could rely on such contentions substantively, Wells Fargo fails to mention that *Evans Cooling*

13  only applies when the accuser alleges that a particular device infringes, and **that same** particular

14  device is in actuality prior art.   *See id.* (where plaintiff alleged LT1 engine infringed, and same

15  LT1 engine was actually on sale one year prior to plaintiff's filing date).   Particularly, this Court

16  held in *IXYS Corp. v. Advanced Power Tech., Inc.*, that the *Evans Cooling* doctrine applied only

17  where there existed no logical space between the infringement allegations and the invalidity

18  defense; due to the identity of the accused device and prior art, facts could not support one

19  without buttressing the other.   2004 WL 540513, at *5 (N.D.Cal. 2004) (Patel, J.).   Where the

20  logical connection is not so clear however, such as where a plaintiff makes broad allegations that

21  may or may not cover the prior art, the *Evans Cooling* doctrine does not apply.   *Id.* at *5-6.   Thus,

22  this Court held that it would not turn *Evans Cooling*'s substantive rule into a procedural one,

23  where a plaintiff must plead carefully lest they fall victim to a "clever pleading snare."   *Id*. at *6.

24  This point was hammered home in *Friskit, Inc. v. Realnetworks, Inc.*, where the court held that,

25  similar to the case at bar, an older and a newer version of a software program being "essentially

26  identical" was not enough for *Evans Cooling* to apply.   2005 WL 856658, at *3 (N.D.Cal. 2005).

27  The court held that "the product claimed to infringe *must be the same* as the prior invention that

28  anticipated it," and the defendant must prove this identity by clear and convincing evidence.   *Id.*

TROJAN LAW OFFICES
BEVERLY HILLS

1    (emphasis in original).

2        It is clear that Phoenix only accused Wells Fargo's overall system, despite Wells Fargo's

3    constant attempts to construe Phoenix's allegations as only accusing a software component.

4    Furthermore, it is clear that Wells Fargo is not using Nuance 6.0 software, but a much later

5    version (8.0) which much different functionality and configured with entirely different hardware

6    and network configurations.   Thus, like the plaintiff in *IXYS*, Phoenix merely made broad

7    allegations accusing the functionality of Wells Fargo's system generally, which may or may not

8    include Nuance software, as the latter is merely a component in that system.  Furthermore, even if

9    accusation of an overall system can specifically read upon a software component within that

10   system, Wells Fargo fails to show the identity of the accused software and the prior art software

11   as required by *Friskit*.  Particularly, Wells Fargo fails to show by clear and convincing evidence

12   that the accused software, that is, Wells Fargo's current software, is exactly the same as the prior

13   art software, that is, Nuance 6.0. Wells Fargo attempts to establish this identity by simply stating

14   that "[t]he prior art [Nuance software] is the same, in all relevant respects, to the [Nuance

15   software] accused of infringement."  However, claiming that older and newer software versions

16   are essentially identical is not enough.  *Friskit*, 2005 WL 856658, at *3.  Thus, as seen in *Friskit*,

17   Wells Fargo's conclusory allegations of identity cannot meet the required burden of clear and

18   convincing evidence.

19              **ii.    Wells Fargo's Statements of Anticipation are General and Conclusory,**

20              **and Fail to Meet the Standard Required by Law.**

21        Another ground to deny Wells Fargo's motion is the fact that Wells Fargo's statements of

22   anticipation are extremely general with little to no analysis.  Courts have repeatedly held that

23   general or conclusory testimony regarding anticipation is insufficient.  *See, e.g.*, *Schumer*, 308

24   F.3d at 1315; *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004);

25   *Space Sys./Loral, Inc. v. Lockheed Martin Corp.*, 2006 WL 279331, at *6 (N.D.Cal. 2006).

26   Instead, anticipation is typically demonstrated by "one skilled in the art[ who] must identify each

27   claim element, state [his or her] interpretation of the claim element, and explain in detail how

28   each claim element is disclosed in the prior art reference."  *Schumer*, 308 F.3d at 1315; *Koito*

TROJAN LAW OFFICES
BEVERLY HILLS

**Plaintiff's Opposition to Defendant's Motion**            -6-            **CV08-0863 MHP**
**for Summary Judgment**

*Mfg. Co.*, 381 F.3d at 1152.  The often-quoted *Schumer* court's reasoning was stated as follows:

> It is not our task, nor is it the task of the district court, to attempt to interpret confusing or general testimony to determine whether a case of invalidity has been made out, particularly at the summary judgment stage.   Indeed to accept confusing or generalized testimony as evidence of invalidity is improper.

*Schumer*, 308 F.3d at 1315.

When analyzing the facts of cases like *Schumer*, the parallels between Wells Fargo's conclusory assertions and the defendant's conclusory statements in *Schumer* are clear.   In *Schumer*, the court denied summary judgment where an expert's testimony "merely set forth his understanding of the operation and steps performed by [the prior art] and describes what he considered to be known to one of ordinary skill prior to [the plaintiff's] invention.  He does not clearly describe the operative steps of the method recited in [plaintiff's asserted claim], nor how those operative steps are performed by the [prior art]." *Id.* (citations omitted).

Here, Wells Fargo's expert, Mr. Sharp, makes no specific reference to Phoenix's patents or claims.  Like the defendant in *Schumer*, Mr. Sharp merely sets forth his understanding of Nuance technology.  He does not clearly describe how Phoenix's asserted claims operate, nor how each and every claim is found within the prior art.  To the contrary, the allegations of anticipation are not made by Wells Fargo's expert, but by Wells Fargo itself, and with little to no analysis.  *See, e.g.*, Defendant's Motion and Memorandum in Support of Motion For Summary Judgment of Invalidity of Asserted Claims, Sections III.B.1-4.  It is apparent that Wells Fargo tosses this jumble of information to the Court in hopes that anticipation can be inferred from this information.  Add this to the fact that, as described below, Wells Fargo relies on not one, but multiple different prior art references to prove anticipation (some of which are not clearly enabled), and it becomes clear how Wells Fargo's general and confusing testimony is precisely the kind the *Schumer* court condemned.  Thus, because Wells Fargo's assertions of anticipation are general and conclusory, this Court should deny their motion on this basis alone.

### iii.   Wells Fargo Fails to Identify a Single Prior Art That Contains Each and Every Limitation as Required for Anticipation

Though Wells Fargo's general and conclusory statements alone warrant denial of their

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

1   motion, Wells Fargo exacerbates the situation by attempting to rely on multiple pieces of prior

2   art, despite the legal requirement of *a single prior art reference*.  A patent claim is anticipated if

3   each and every limitation is found in *a single prior art reference*, either expressly or inherently.

4   *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006); *see also Advanced*

5   *Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1282 (holding that the "four corners" of a single

6   prior art reference must disclose each and every limitation).  Inherent anticipation requires that

7   the missing descriptive material is *necessarily* present in the prior art; possible, probable, or even

8   obvious is not enough.  *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295-96 (Fed.

9   Cir. 2002).

10      Throughout Wells Fargo's motion, Wells Fargo cites to multiple different references, and

11   attempts to create the illusion of a single prior art reference by collectively labeling them all as

12   "prior art NSRS."  Particularly, the references relied upon by Wells Fargo include the following:

13   1) the Nuance 6.0 Developer's manual;[3] 2) the Charles Schwab system ("CSS"); 3) certain

14   telephony boards made by Dialogic; and 4) certain Nuance demonstration systems.  It is clear that

15   Wells Fargo cannot consider all of the above a single prior art reference.

16      First, Wells Fargo makes no explicit declaration that the CSS even uses Nuance 6.0, nor

17   do they present any evidence that the CSS inherently, that is, necessarily, contains Nuance 6.0, or

18   vice versa.  In fact, Wells Fargo's own exhibits points to the contrary.  For example, though the

19   CSS was released in 1996, it was not until March of 1997 that a press release indicated that

20   Nuance 6.0 would "soon be available."  *See* Trojan Decl., Exh. 21.  Furthermore, Wells Fargo

21   presents no information that describes in any detail how the CSS works, thus making it difficult

22   to even identify if Nuance 6.0 was incorporated therein.  As there is no indication of what being

23   being used in the CSS, the materials presented by Wells Fargo cannot even be considered prior

24   art.  In order for a reference to anticipate as prior art, *the reference must be enabling*, that is, the

25   reference must enable one of skill in the art to reduce the disclosed invention to practice.  *See,*

26   *e.g.*, *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354 (Fed. Cir. 2003).  A press

27   _____

28   [3] The Court should also note that Wells Fargo has not established with clear and convincing evidence that the Nuance 6.0 manual is even a printed publication, nor has Wells Fargo provide a date of the document to determine its relevance to the Nuance 6.0 software it alleges was on sale.

release devoid of details clearly cannot meet this standard.

Similarly, Wells Fargo presents no evidence, and in fact, does not even state explicitly why the multitude of other documents it relies upon, including demonstration systems and other vague documentation,[4] are necessarily contained or incorporated within each other, as required for inherent anticipation.  It is clear that Wells Fargo relies upon an inference from the Court to establish such inherency; however, such tenuous connection is clearly not sufficient to show by clear and convincing evidence that the documentation relied upon by Wells Fargo is *necessarily* present in the prior art, as possible, probable, or even obvious is not enough.  *Trintec Indus.*, 295 F.3d at 1295-96.

For the foregoing reasons, particularly Wells Fargo's failure to present clear and convincing evidence regarding multiple critical facets of its arguments, this Court should pay no heed to Wells Fargo's erroneous contentions, and deny Wells Fargo's motion for summary judgment.  However, if the Court should decide that the anticipation arguments require further exploration, Phoenix submits that the Court's analysis should proceed as any typical summary judgment on anticipation, that is, construe the elements of the claim, and subsequently determine whether the limitations of the claim are met by the prior art.  *Beachcombers, Int'l v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1160 (Fed. Cir. 1994).  As demonstrated below, the limitations of the patents-in-suit are clearly not met by Wells Fargo's alleged prior art.

c.      **The Alleged Prior Art Does Not Contain Each and Every Limitation of the Patents-in-Suit**

In determining invalidity due to anticipation, a court must first construe the elements of the claims, and subsequently determine whether the limitations of the claims as properly construed are met by the prior art.  *Beachcombers*, 31 F.3d at 1160.  *See also Oki Am., Inc. v. Advanced Micro Devices, Inc.*, 2006 WL 3290577 (N.D.Cal. 2006). The starting point for claim construction is the plain language of the patent claims.  *See North American Vaccine v. American Cyanamid Co.*, 7 F.3d 1571, 1575 (Fed. Cir. 1993).  Intrinsic evidence is the most significant source of legally operative meaning of disputed claim language. *Vitronics Corp. v. Conceptronic,*

*Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Claims are to be construed, if possible, to sustain their validity.  *Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996).

### i.   Wells Fargo fails to meet its burden for claims 1, 6, 7 and 10 of the '977 patent

Wells Fargo's challenge to claims 1, 6, 7 and 10 of the '977 patent fails on a number of grounds.  In particular, Wells Fargo cannot prove anticipation without heavy reliance on several references outside of the Nuance 6.0 manual, particularly the CSS.  However, such practice is impermissible unless Wells Fargo can prove that the references relied upon are necessarily part of the Nuance 6.0 manual.  However, because Wells Fargo makes no attempt to do so, as it does not even explicitly state that the CSS uses Nuance 6.0, Wells Fargo clearly fails to establish that the references are inherently contained within each other.  Even if the CSS was considered inherently part of the Nuance 6.0 manual, its ambiguity makes it difficult to determine any relevance to the '977 patent, much less meet the enablement requirement of prior art.  Finally, even considering what features can be made out for the CSS, and assuming arguendo that the CSS is inherently incorporated within the Nuance 6.0 manual, this amalgam of prior art still fails to contain each and every limitation of the claims in the '977 patent.

### 1.   Problems with relying on the Charles Schwab system.

Wells Fargo primarily relies upon the CSS in order to anticipate the '977 patent, as it is the only evidence they can muster to demonstrate a system containing website with the limitations set forth in the '977 patent.  For the convenience of the Court, Phoenix recaps Wells Fargo's proof for its argument, as it may be unclear due to Wells Fargo's use of multiple different references, and Wells Fargo's inclination to label everything "prior art NSRS" ("Nuance Speech Recognition System").  Particularly, Wells Fargo cites to:

- a press release indicating that an IVR system was installed at Charles Schwab sometime **before September 1996**;

- the Nuance 6.0 SR Software purportedly on sale in **April 1998**;

---

[4] For an example of the vague documentation relied upon by Wells Fargo, *see* Trojan Decl., Exh. 15.

TROJAN LAW OFFICES
BEVERLY HILLS

- Mr. Douglas Sharp's declaration describing the characteristics of *a* "prior art NSRS" that was used by Charles Schwab;

First, it should be noted that Wells Fargo's evidence contains no detailed information on the origins or the capabilities of the CSS, providing only **vague press releases**, failing to present clear and convincing evidence of its internal structure, an thus, its relevance to the '977 patent as alleged prior art. Furthermore, it is not clear how much personal knowledge Mr. Sharp possesses regarding the CSS, as Mr. Sharp acknowledges only joining Nuance in 1998, almost two years after the CSS was installed. *See* Declaration of R. Douglas Sharp in Support of Defendants' Motion for Summary Judgment of Invalidity (¶ 4). Thus, Wells Fargo's information on the 1996 CSS is so incomplete and inadequate that it is clearly is not enabling to a person of ordinary skill in the art, and should not even be considered prior art, much less assist Wells Fargo in meeting its burden of proof.

Lacking the direct evidence required, Wells Fargo realizes that it cannot state with any certainty what it needs to prove, that the CSS necessarily used the Nuance 6.0 software. Realizing that it could not outright make such an unsubstantiated claim, Wells Fargo instead wishes the Court to infer the architecture of the CSS from a jumble of information, relying on the disconnected pieces of information detailed above in an attempt to build the case that the CSS was **installed in 1996**—and referred to in Mr. Sharp's declaration—used the same software, hardware and distributed configuration that is purportedly described in the Nuance 6.0 Developer's **Manual from 1998**. Without this inference, Wells Fargo has produced absolutely no proof what the internal structure or operation of the CSS, and absent such information, Wells Fargo cannot possibly hope to demonstrate that the CSS contained each and every limitation of the claims of the '977 patent. Clearly, Wells Fargo's reliance on such an inference cannot hope to demonstrate this connection with clear and convincing evidence.

Furthermore, upon analysis of the available evidence, it is clear that Wells Fargo fails to show that the CSS and the Nuance 6.0 are the same, as all other relevant data points to exactly the opposite conclusion. In particular, Nuance's own materials prove that the Nuance 6.0 SR software was not even released until many months after the summer 1996 CS installation. A

TROJAN LAW OFFICES
BEVERLY HILLS

press release from **March, 1997**, indicates that the 6.0 product "would be available in 30 days." *See* Trojan Decl., Exh. 22.  Consequently there is a glaring credibility gap in Defendant's bald assertions that the Nuance 6.0 SR software, which was apparently not available until at least 1997, was a template for the architecture and operation of the **CSS created in 1996**.

Furthermore, despite the lack of any adequate information from the Wells Fargo on the specifics of what **is** in the CSS, it is nonetheless possible to glean what **is not** in such system.  The materials provided by Wells Fargo all confirm that the CSS was not capable of recognizing anything more than individual isolated words/phrases spoken by users, in the form of stock names or symbols and the like.  *See* Trojan Decl., Exh. 13; *see also* Declaration of Dr. Ian Bennett ("Bennett Decl."), ¶9.  This is further corroborated by other extrinsic materials reflecting the internal architecture during this time period.  Namely, a patent filing made by Charles Schwab's own personnel on June 26, 1997 reveals that their system was limited to single word recognition. *See* Trojan Decl., Exh. 23 (describing the recognition of mere **terms** such as "stock names, mutual fund names, numbers, and other prompts."); *see also* Bennett Decl., ¶10.  Nowhere is there a mention that the input can include multiple terms spoken as a continuous utterance.

This limited form of speech recognition clearly does not anticipate the inventions set forth by Phoenix.  Rather, Phoenix has always maintained that the claims in suit cover continuous speech recognition, which is a system that allows the user to present an entire sentence spoken naturally, without pauses between words being required.  *See, e.g.*, Trojan Decl., Exh. 2 (col. 4, ll. 22-25) ("In **contrast to word recognition**, Natural language processing (NLP) is concerned with the parsing, understanding, and indexing of transcribed **utterances** and **larger linguistic units**.") (emphasis added); *see also* Trojan Decl., Exh. 6 (p. 2).

Thus, from all the available evidence, it is clear that Wells Fargo fails to demonstrate by clear and convincing evidence how the CSS can even assist in anticipating the '977 patent.

## 2.     Failure to anticipate independent claim 1

In addition to the deficiencies noted above, and regardless of whether the Court finds that the CSS employed the Nuance 6.0 software or not, Wells Fargo still fails to show that such system discloses every limitation of independent claim 1 of the '977 patent.  Particularly, claim 1

TROJAN LAW OFFICES
BEVERLY HILLS

requires:

> signal processing functions required to generate said recognized speech query can be allocated between a client platform and the server computing system as needed.

Trojan Decl., Exh. 2 (col. 39, ll. 14-19).

This limitation requires that the signal processing functions are capable of being performed on either the client or the server as needed. This construction finds support in the specification, which teaches that "it is conceivable that [speech recognition operations normally computed on the server side] **can also be** computed at client side system **150**, depending on the computation resources available." Trojan Decl., Exh. 2 (col. 22, ll. 42-53).

Nowhere in the Nuance 6.0 manual is this limitation described. Wells Fargo does not present clear and convincing evidence that such a limitation is met, but instead attempts to rely on Phoenix's preliminary infringement contentions. However, as discussed above in Section III.B.1, such preliminary contentions are designed to streamline the discovery process, not decide substantive issues. *Networking Caching*, 2003 WL 21699799, at *5. Furthermore, as cases such as *IXYS* and *Friskit* held, such reliance is impermissible without demonstration of identity between the accused device and the prior art, which Wells Fargo failed to show by clear and convincing evidence. *See, e.g.*, *Friskit*, 2005 WL 856658, at *3.

However, even assuming arguendo that preliminary infringement contentions can be used to determine infringement, Wells Fargo's argument still fails because it cannot show how the Nuance 6.0 manual even discloses the preliminary claim contentions themselves. More specifically, Wells Fargo argues that two preliminary infringement contentions are disclosed in the Nuance 6.0 manual. These preliminary contentions state: (1) "processing [operations may be] used **by either [client or server]**, and (2) the "amount of pruning of SLM can be adjusted." *See* Trojan Decl., Exh. 6.

A closer examination shows that the Wells Fargo is clearly fails to understand the contentions. First, Wells Fargo asserts that the contentions are met because endpointing on the Nuance recognition client could be selectively enabled. However, as the contention makes clear, the key question is the selective enabling of **where** endpointing is performed—for example,

whether it can be done *on* the recognition client *or on* the recognition server. *See* Trojan Decl., Exh. 2 (col. 22, ll. 42-53). This type of flexible distribution of endpointing functionality is nowhere to be found in the Nuance 6.0 materials cited by Wells Fargo. However, such functionality is contained in the **current** Nuance 8.0 software, which is what the Phoenix's contentions were actually referring to. *See* Trojan Decl., Exh. 26 (PHO003145) ("Nuance provides a mechanism **for the recognition server** to detect the end-of-speech. When you enable this mechanism, **either the endpointer (see "ep.EndSeconds ep.EndPercentage") or the recognizer** can detect the end-of-speech.") (emphasis added). Thus, Wells Fargo's reliance on this preliminary contention is misplaced.

Additionally Wells Fargo argues that because the NSRS could do "pruning," this meets the other infringement alternative set out by Phoenix. Once again, Wells Fargo fails to understand the contention, and thus fails to demonstrate how the Nuance 6.0 even discloses this requirement. As the contention clearly sets out, Phoenix expressly referred to the pruning of an **SLM** (Statistical Language Model) grammar. *See* Trojan Decl., Exh. 27 (PHO003352). Wells Fargo was on ample notice that Phoenix was **not** referring to a **manually** written grammar of the type described in the Nuance 6.0 SR software manual. As Nuance apparently did not introduce the use of SLM grammars in its products until 2001, *see* Trojan Decl., Exh. 25, it is not surprising that there is absolutely no teaching or suggestion of such type of SLM grammar in the Nuance 6.0 manual.

For these reasons Phoenix submits that there are several substantial problems with Wells Fargo's claim read and application to the prior art based on the original claim contentions for claim 1 of the '977 patent. Any one of these raises genuine issues of material fact, thus clearly precluding Wells Fargo's motion for summary judgment.

### 3.    Failure to anticipate dependent claims 6, 7, and 10

Because dependent claims contain each and every limitation of the claim of which they depend, *see Wahpeton Canvas Co., Inc. v. Frontier, Inc.* 879 F.2d 1546, 1553 (Fed. Cir. 1989), and because Wells Fargo cannot demonstrate with clear and convincing evidence of anticipation of independent claim 1 as discussed in Section III.C.1.ii, Wells Fargo cannot demonstrate

anticipation of dependent claims 6, 7, and 10.  Furthermore, claim 7 requires that the system to "interact **on a real-time basis to one or more continuous speech queries**."  Trojan Decl., Exh. 2 (col. 39, ll. 34-36) (emphasis added).  Wells Fargo has identified nothing in its amalgam of prior art that meet this limitation.  For this reason as well, Phoenix submits that summary judgment must be denied.

Finally, dependent claim 10 states that the system "controls an interactive character agent presented to the user for assisting in handling said speech query."  Trojan Decl., Exh. 2 (col. 39, ll. 47-49).  The Wells Fargo cites to the prior art NSRS ability to monitor "system performance."  It is unclear how Wells Fargo concludes that monitoring system performance equates with controlling an agent handling speech queries, as it appears Wells Fargo misunderstands the claim and the contention.  *See* Trojan Decl. Exh. 28.  Thus, Wells Fargo again fails to meet its burden of proof.

### ii.   Wells Fargo fails to meet their burden for claims 11, 17, 20 and 21 of the '846 patent

Claim 11 of the '846 patent requires:

a transmission circuit *for formatting* and transmitting said first set of speech data values …wherein said first set of speech data values *are sent in a streaming fashion over said channel*…

Trojan Decl., Exh. 3 (col. 39, ll. 65-67, col. 40, ll. 1-3).  This transmission circuit limitation should be construed as calling for an Internet-based protocol for communicating the data between the client and the server.  This construction is strongly supported by the specification.  For example, the '846 patent describes this formatting and streaming process using an Internet-based protocol, teaching "this part of the code first converts MFCC vectors to a **stream of bytes**, and then **processes the bytes** so that it is **compatible with a protocol known as HTTP**.  This protocol is well-known in the art, and it is apparent that for other data links **another suitable protocol would be used**."  *See generally* Trojan Decl., Exh. 3 (col.23, ll. 25-67) (emphasis added); *see also* Trojan Decl., Exh. 3 (col. 27, ll.6-7) (describing encoding and decoding from HTTP stream); FIG. 2A-2D; FIG. 3; *see also* Trojan Decl., Exh. 1 (p. 10-12).

This limitation is not disclosed in the Nuance 6.0 manual; to the contrary, the first apparent suggestion by Nuance of using such a type of architecture is in May of 2000, where Nuance filed a patent application which described a distributed network based on an internet protocol. *See* Trojan Decl., Exh. 12 (col. 5, ll. 51-61) ("the division of functionality between the gateway 1 and the servers 3 may be based on the Internet Protocol (IP) transport of endpointed speech from the gateway 1 to the servers 3."). *See also* Section III.C.3.i *infra* (explaining in further detail how the Nuance 6.0 manual does not disclose a network based on an internal protocol).

Once again lacking clear and convincing evidence, Wells Fargo instead relies on Phoenix's preliminary infringement contentions. As discussed above in Section III.B.1, such reliance is misplaced. Furthermore, even if the Court were to entertain Wells Fargo's assertions, it is evident that Wells Fargo still fails to meet its burden. Particularly, Wells Fargo attempts to suggest that Phoenix's infringement contentions are directed against speech boards that existed in 1998. This is plainly incorrect. In all instances where Phoenix cites to a specific Dialogic board, it is with reference to newer high-end boards (D/240JCT-T1 and D/300JCT-E1, for example) which employ **later adopted features that implicate Phoenix's claims**. In particular, Phoenix pointed out that the "streaming" limitation of the claims could also be satisfied by the continuous speech processing ("CSP") function which is an integral part of these newer Dialogic boards. *See, e.g.*, Trojan Decl., Exh. 7 (p. 3). Based on the public materials available to Phoenix, it believes that these types of boards,[5] used in conjunction with certain Wells Fargo systems, implicate Phoenix's patents.

In addition the Court will note that Wells Fargo make no effort to suggest that they are now actually using the 1998 Dialogic boards[6] with their current Nuance 7.x/8.x software and hardware, and thus, it is unclear how Wells Fargo can come to the conclusion that preliminary infringement contentions **directed towards its current system** can implicate **outdated speech boards**. More importantly, Nuance itself acknowledges that it did not even support such CSP type boards until October 2000. *See* Trojan Decl., Exh. 19. Finally, Dialogic itself introduced the

---

[5] For an example of the board, *see* Trojan Decl., Exh. 30.

TROJAN LAW OFFICES
BEVERLY HILLS

"J" series of boards late in the summer of 2000 to add "continuous speech processing technology" which it identified as an "enhanced technology" that also enables applications to recognize voice commands more accurately, making them easier to use and increasing customer satisfaction. *See* Trojan Decl., Exh. 18; *see also* Trojan Decl., Exh. 21.   Thus, in light of the evidence, it is apparent that Wells Fargo's complicated attempt to demonstrate anticipation by clear and convincing evidence clearly fails.

### 1.      Failure to anticipate dependent claim 17

Because Wells Fargo fails to anticipate independent claim 11 above, Wells Fargo cannot anticipate dependent claim 17.   Furthermore, Wells Fargo's reliance on the preliminary infringement contention is misplaced.   Specifically, Wells Fargo argues that claim 17 is invalid because "the prior art NSRS also permitted control over the degree of pruning by the recognition server," citing the contention discussed in Section III.C.1.ii.   As discussed in that section, the infringement contention relied upon by Wells Fargo specifically targeted a system with an **SLM grammar** which the Nuance 6.0 materials are clearly does not disclose.

### 2.      Failure to anticipate dependent claim 20

Because Wells Fargo cannot demonstrate each and every limitation of claim 11, Wells Fargo cannot anticipate dependent claim 20.   Furthermore, Wells Fargo's use of Phoenix's preliminary infringement contention misses the mark, as Wells Fargo again relies on the preliminary infringement contention discussed above in Section III.C.1.ii.   As discussed in that section, Wells Fargo's materials do not disclose that Nuance 6.0 could be configured to select where endpointing is performed.   Consequently this argument must also be rejected for the same reasons discussed above.

### 3.      Failure to anticipate dependent claim 21

Because Wells Fargo cannot demonstrate each and every limitation of claim 11, Wells Fargo cannot anticipate dependent claim 21.   Furthermore, claim 21 states that the first set of speech data values represent "the least amount of data that can be used ….for a word recognition process."   Trojan Decl., Exh. 3 (col. 41, ll. 4-8).   Phoenix noted that this claim was implicated

TROJAN LAW OFFICES
BEVERLY HILLS

---

[6] Information regarding the vintage boards can be found in Trojan Decl., Exh. 14 and 20.

1  when the telephony board, as well as the recognition client, transmit **only** actual speech data from

2  the user utterance to the SR server, which represents the least amount of data presented in the user

3  utterance.  *See* Trojan Decl., Exh. 7 (p. 5).  *See also* Trojan Decl., Exh. 17 (illustrating this

4  behavior in CSP type architecture).  Wells Fargo's prior art which only mentions either the

5  recognition client or the speech board doing endpointing.  But this is insufficient—endpointing is

6  not the same as doing continuous speech processing.[7]

7      Furthermore, Brooktrout, a well-known vendor of speech/telephony boards specifically

8  discussed in 2006 how the alleged anticipatory functionality asserted by Wells Fargo has only

9  until recently been compatible with speech systems.  *See* Trojan Decl., Exh. 16 ("Although board-

10  based VAD functionality has been available for some time, it has until recently been incompatible

11  with speech systems.").  Thus, this severely calls into doubt whether the alleged anticipatory

12  functionality of the Nuance 6.0 manual was in fact even possible.  Thus, Wells Fargo fails to meet

13  its burden.

14      **iii.      Wells Fargo fails to meet its burden for claims 1, 4, 7 and 10 of the**

15          **'640 patent**

16          **1.      Failure to anticipate independent claim 1**

17      Phoenix again points out that the Nuance 6.0 Developer's manual clearly is not a

18  "system"; is just a description of a piece of software with guidelines on how to use it.  This

19  deficiency is important because Wells Fargo has yet to identify the actual hardware (speech

20  boards, computers, network) and software used in the demonstration systems they claim

21  anticipate the '640 claims.  For example, there is no indication that any of these demonstration

22  systems used a distributed speech processing approach, or which version of the Nuance software

23  they used.  As Mr. Sharp further explained that the system could be configured in *non*-distributed

24  configurations, there is simply no proof that the demonstrations made by Nuance constituted "an

25  ───────────────
[7]Phoenix's original contention for claim 21 had a simple error and should have read:

26  As seen in the materials noted above, with ~~VAD~~ CSP enabled, the speech boards and/or
27  recognition client transmit only actual speech data from the user utterance to the SR server.

28

TROJAN LAW OFFICES
BEVERLY HILLS

1   interactive learning system" adapted in the manner called for in the '640 claims—*i.e.* with

2   distributed speech processing.

3       More substantively Wells Fargo also cannot show that the Nuance 6.0 SR software (or any

4   of the demonstration systems) disclosed or used a "remote" speech capturing system as set out in

5   the '640 claim; that is, one where a client is connected to a server through an communications

6   channel using Internet-based protocol (IP) as asserted by Phoenix. *See also* Section III.C.2.i

7   *supra*. There is, in fact, no particular network protocol shown in any of these alleged prior art

8   materials.

9       As Phoenix noted, the term "remote" should be construed to mean that the two systems

10  are connected together by a network that uses an inter-network (in this case an Internet-based)

11  protocol. This allows for the system to expand to be connectable to other networked systems.

12  This construction is strongly supported by the specification. *See* Trojan Decl., Exh. 4 (col. 5, ll.

13  16-24 (describing the benefits of networks over the prior art to implement remote applications);

14  col. 16, ll. 24-27 (describing the compression and processing of data to send to a remote server));

15  *see also* Trojan Decl., Exh. 1 (p. 18).

16      Furthermore, patent filings from Nuance itself illustrate that persons skilled in the art at

17  the time of the filing of the present claims would understand the term "remote" to mean

18  components connected on a network that used an Internet protocol. *See* 6,785,653 patent

19  ("Nuance '653 patent") assigned to Nuance and attached hereto as Exhibit 12. There, the Nuance

20  '653 patent, filed in May of 2000, cited version 6.2 of its software to the PTO, thus claiming that

21  the Nuance '653 patent is patentable over Nuance 6.2. *See id.* Particularly, Nuance asserted to

22  the PTO that such types of architectures—where the endpointing was done on a client, and then

23  sent over a wide area network to a speech recognition server, was not disclosed in the prior art

24  Nuance software, thus making the Nuance '653 patent patentable. This assertion is required

25  because the Nuance 6.0 manual disclosed each limitation of claim 1 of the Nuance '652 patent

26  except its remote capability. Specifically, as demonstrated below, an analysis of claim 1 of the

TROJAN LAW OFFICES
BEVERLY HILLS

27

28  Despite this typographical error, the meaning of the contention—*i.e.* to read on continuous speech processing—was clear based on the language of the contention and the citations given by Phoenix to the materials. Phoenix intends to correct this in the next round of supplemental contentions.

Nuance '653 patent compared to the Nuance 6.0 manual illustrate that the only apparent distinction between the two was the use of remote networks, **thus admitting that the prior art Nuance software did not encompass such type of networks and related protocols**. However, Wells Fargo now argues the opposite, essentially contradicting Nuance's admission to the PTO.

| 6,785,653 Nuance Patent | Disclosed in Nuance 6.0 Software (1998)? | Support |
|---|---|---|
| 1. A method comprising: receiving speech of a user; | Yes | See Sharp Declaration, paragraphs 8 – 9; |
| endpointing the speech of the user locally for automatic speech recognition; | Yes | See Sharp Declaration, paragraphs 9 – 10 explaining that the recognition client performed this task |
| transmitting the endpointed speech of the user *to a remote site over a wide area network* for remote speech recognition; | According now to Wells Fargo YES | See Sharp Declaration, paragraphs 10, 11 and 14 - 16 explaining that the recognition client transmits the endpointed speech data to a recognition server (a separate computing system) "*over a network connection*" for recognition.  Paragraph 14, last sentence. |
| receiving remotely generated prompts transmitted over the wide area network; and | YES | See Sharp Declaration, paragraphs 26, 30, explaining that the system sent prompts back to the client. |
| Playing the prompts to the user. | YES | See Sharp Declaration, paragraph 30, explaining that the system played prompts. |

Thus, it is clear that Wells Fargo's argument is without merit.  Therefore, because Nuance admitted to the PTO that the Nuance 6.0 manual does not disclose networking using an Internet-based protocol, and because the Phoenix '640 patent (which predates the Nuance '653 patent) contains such a limitation, Wells Fargo's challenge to claim 1 of the '640 must fail.

### 2.    Failure to anticipate dependent claims 3, 4, and 7

Because Wells Fargo cannot demonstrate each and every limitation of claim 1, Wells Fargo cannot anticipate dependent claims 3, 4, and 7.   Furthermore, Wells Fargo fails to demonstrate the "context parameters" limitations in claim 4 and 7.   Particularly, "context parameters" are used for recognizing the speech based query.   Wells Fargo points to the

TROJAN LAW OFFICES
BEVERLY HILLS

TROJAN LAW OFFICES
BEVERLY HILLS

"Contextualization" feature of the Nuance 6.0 software, but that feature is not directed to **speech** recognition; it is merely interpreting and filling other variables based on the decoded speech. Thus, if the user said "today" in an utterance the Nuance contextualizer would interpret this to mean October 10th, 2008 for example. The contextualizer was not used to determine the actual speech, however, such as whether the user said "today" or "Tuesday." For this reason it cannot meet the limitations of claims 4 and 7, which call for the context to be used for recognizing the actual speech.

### iv.    Wells Fargo fails to meet its burden for the claims of the '854 patent

As with the other claims above, Wells Fargo claims that the Nuance 6.0 manual is the anticipatory prior art, yet Wells Fargo relies on several undefined/unexplained demonstration systems in order to build its case. As discussed above in Section III.B.3, this cannot form a basis for anticipation. Furthermore, as discussed below, Wells Fargo cannot even meet every limitation of the claims.

### 1.    Failure to anticipate independent claim 1

### a.    Failure to meet Natural Language limitation

Claim 1 recites a number of limitations, including:

> providing a speech recognition engine adapted to recognize a first set of words and/or phrases from a user during an interactive speech session; wherein said first set of words and/or phrases can include a natural language query presented as **continuous natural language spoken data;** …

> providing a natural language routine adapted to process said first set of words and/or phrases and identify a response to said natural language query based on said query/answer pairs; wherein said natural language routine is adapted to consider **only a subset of said first set of words and/or phrases**, and further can consider words and/or phrases in said natural language query **which are not present in said query/answer pairs to determine said response**;

Trojan Decl., Exh. 5 (col. 39, ll. 4-23) (emphasis added).

These limitations define a flexible relationship between the speech recognizer and the natural language engine ("NLE"), the more important aspects of which are that: 1) the speech recognizer can use its own recognizer grammar (to determine the words in the user's utterance); and 2) NLE **only** looks at a subset of words/phrases which are embodied as part of its own natural

language grammar. *See, e.g.*, Trojan Decl., Exh. 5 (col. 24, ll. 63-67, col. 25, ll 1-20) (describing how speech is first recognized, converted to words in the grammar, then sent to the NLE to determine certain noun phrases). Thus, the invention concerns systems where the designer does not have to predict everything the user might say to know what the person wants. Instead, the designer focuses on a few key phrases that they think are relevant to their business. The IVR automatically fills in the gaps to accommodate different speech input that varies from the expected input.

Again, instead of presenting clear and convincing evidence of anticipation of this limitation, Wells Fargo relies on Phoenix's preliminary infringement contentions. As discussed above in Section III.B.1, such reliance is misplaced. Furthermore, even if the Court were to entertain Wells Fargo's assertions, it is evident that Wells Fargo still fails to meet its burden. In Phoenix's contentions it was specifically noted that the claim was being read on specific customized Wells Fargo grammars which were **trained** to respond to Wells Fargo-specific dialog data. In other words, the grammar is not entirely manually written; there are parts of it that are automatically gleaned and used to automatically train the system. *See* Bennett Declaration, ¶18.

Wells Fargo suggests that this type of operation is disclosed in the Nuance 6.0 manual, but this is easily proven to be incorrect. In the Nuance 6.0 realm, the designer had to manually specify, in advance, **every possible word the user might speak**. *See* Bennett Decl., ¶13. If the user spoke a word that was not in the speech recognition grammar, it wasn't even passed on to the natural language engine to be interpreted. *See id*. That this is true can be seen with reference to page 22 of the Nuance 6.0 reference manual:

> Callers interacting with a speech recognition system commonly speak utterances that are not covered by the recognition grammar.… The default behavior of the Nuance System is to reject utterances not supported by the recognition grammar."

Trojan Decl., Exh. 10 (WF00004308);

The rejection of the utterance meant that the user had to try again with another utterance. *See* Bennett Decl., ¶15. Mr. Sharp's suggestion therefore that an utterance with unknown extraneous words was simply passed on to the natural language engine is incorrect. This is

TROJAN LAW OFFICES
BEVERLY HILLS

1   because in the Nuance 6.0 system, the natural language engine grammar and the speech

2   recognition grammar were one and the same:

3       Furthermore, the specification of the application semantics [the natural language
        engine] is provided in the grammar file, the same location in which the [speech]
4       recognition grammar is defined.

5   *Id.* (WF00004327).

6       What this means is this: the speech recognition grammar and the natural language

7   grammar are one and the same.  It is impossible for such type of structure to operate as called for

8   in the claim.  *See also* Bennett Decl., ¶¶16-17 (further illustrating this point).

9                   **b.      Failure to meet Agent limitation**

10      Furthermore, claim 1 of the '854 patent includes a specific limitation for the behavior of

11  the IVR electronic agent.  The specific operations which the agent performs include providing a

12  prompt to the user during said interactive speech based session with *suggestions on queries* which

13  can be made to the natural language query system.  *See* Trojan Decl., Exh. 5 (col. 39, ll. 24-29).

14  This limitation is clearly supported by the specification.  *See* Trojan Decl., Exh. 5 (col. 38, ll. 23-

15  26) (describing a question and answer site where "a list of possible questions appear in the list

16  box 1291.  In addition, tips 1290 for using the system are displayed.") Trojan Decl., Exh. 5 (FIG.

17  12).

18      Wells Fargo again relies on the Nuance 6.0 manual, but this manual does not describe any

19  particular method of operation.  Moreover on the pages cited by Wells Fargo, it can be seen quite

20  clearly that they disclose nothing about an agent giving suggestions on queries as the claim

21  explicitly requires.  *See* Bennett Decl., ¶18.  In the diagram below, taken from the pages cited by

22  Mr. Sharp, it can be seen that when the agent states "What do you want to do?" the user is left to

23  guess about what speech to provide at this point in the dialog.

24

25

26

27

28

TROJAN LAW OFFICES
BEVERLY HILLS

Thus, far from giving any "suggestions on queries," Nuance's own literature gives no guidance whatsoever to the designer of the system. The agent in the Nuance 6.0 manual does not give suggestions on what words may be recognized, thus leaving the user to guess what words may or may not be appropriate to use. All that the Nuance 6.0 manual recommended were prompts designed to extract specific information from the user – "which account" for example. The system is not user-friendly in the sense of giving the caller specific guidance on how to formulate the query, such as by suggesting "Which account – You can say X, Y, or Z" – information that would increase the likelihood of a valid response by the user.

### 2.    Failure to anticipate claim 27

Wells Fargo relies on the same argument for claim 27 as they do for claim 1. There are some basic problems with this tactic, as this claim includes different limitations than claim 1 and cannot be lumped together.

In particular, claim 27 includes the further limitation of a speech engine that is distributed, and uses reduced data content to reduce latency, and is streamed to the server before silence is detected. As Phoenix has noted, this claim is directed to systems in which an Internet-based Protocol is used in the channel, and the Nuance 6.0 materials do not disclose such for the reasons set forth above.

### 3.    Failure to anticipate dependent claims 7, 8, 9, 13, 19, 20, 22, 23, 28, 29

Because Wells Fargo cannot demonstrate each and every limitation of independent claim 1, Wells Fargo cannot anticipate dependent claims 7, 8, 9, and 13. Furthermore, because Wells Fargo cannot demonstrate each and every limitation of claim independent claim 27, Wells Fargo

TROJAN LAW OFFICES
BEVERLY HILLS

cannot anticipate dependent claims 28 and 29. Additionally, independent claim 15, which claims

19, 20, 22, and 23 depends, also contain the natural language and interactive agent limitations

discussed above in Section III.C.4.i. *See* Trojan Decl., Exh. 5 (col. 40, ll. 25-56). Because Wells

Fargo cannot demonstrate these limitations as discussed above, Wells Fargo cannot anticipate

independent claims 15, nor dependent claims 19, 20, 22, and 23.

## IV.   CONCLUSION

For the foregoing reasons, Wells Fargo's motion for summary judgment should be

DENIED.

Respectfully submitted,

TROJAN LAW OFFICES
By

October 6, 2008                          /s/ R. Joseph Trojan_____
                                          R. Joseph Trojan
                                          Attorneys for Phoenix,
                                          Phoenix Solutions, Inc.