KEKER & VAN NEST, LLP
DARALYN J. DURIE - #169825
EUGENE M. PAIGE - #202849
RYAN M. KENT - #220441
SONALI D. MAITRA – #254896
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PHOENIX SOLUTIONS, INC., a California corporation,<br><br>                                    Plaintiff,<br><br>     v.<br><br>WELLS FARGO BANK, N.A., a Delaware corporation<br><br>                                    Defendant. | Case No. CV 08-0863 MHP<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF ASSERTED CLAIMS**<br><br>Date:     November 10, 2008<br>Time:    2:00 p.m.<br>Dept:     Courtroom 15, 18th Floor<br>Judge:   Hon. Marilyn Hall Patel<br><br>Date Comp. Filed:     February 8, 2008<br><br>Trial Date:    TBD |

## I. INTRODUCTION

Phoenix has not come forward with any *evidence* creating a dispute of fact. Phoenix does not take issue with the substance of the evidence that Wells Fargo has put forward regarding the functionality of the prior art Nuance Speech Recognition System or that NSRS 6 was on sale and publicly available more than one year prior to the filing date of the patents in suit. And, although Phoenix frequently relies on unsupported attorney argument and speculation, it does not contend that it needs additional discovery to oppose this motion under Rule 56(f).

Instead of raising disputes of fact, Phoenix has at most raised claim construction arguments. Many of Phoenix's new arguments are directly contrary to the positions that Phoenix itself has taken to date in the parallel claim construction process, and all of the arguments are flatly inconsistent with the language of the claims. Phoenix has hunted for supposed distinctions between NSRS 6 (the prior art) and NSRS 8 (the accused system) and then tried to graft those distinctions onto the claims. Thus, for example, Phoenix argues that a "remote speech capturing system" requires that the system be implemented using an internet protocol and that "signal processing functions required to generate said recognized speech query [which] can be allocated between a client platform and the server computing system as needed based on computing resources available to said client platform and server computing system respectively" applies to a system that includes the pruning of a Statistical Language Model grammar but not the pruning of a manually written grammar.

The Court need not reach most if not all of these claim construction issues in order to resolve this motion. In most cases, the purported distinctions between NSRS 6 and NSRS 8 are unsupported by any evidence, and indeed contradicted by the undisputed evidence. And, as to all but one claim, there are alternative grounds on which the Court can grant summary judgment. Should the Court elect to reach the claim construction issues, the Court need not hold a separate *Markman* hearing to resolve them, particularly where the issues are this straightforward. *See Ballard Med. Prod. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed Cir. 2001) ("District courts have wide latitude in how they conduct the proceedings before them, and there

1 is nothing unique about claim construction that requires the court to proceed according to any
2 particular protocol."). But, if the Court concludes that a *Markman* hearing is appropriate, then
3 the summary judgment issues that turn on claim construction can be deferred to that hearing,
4 scheduled for December 11.

## II.   ARGUMENT

### A.   Wells Fargo has correctly stated the governing legal principles

Phoenix makes four threshold legal arguments: (1) Wells Fargo has "distort[ed] the legal standard" because its motion is improperly predicated on practicing the prior art, (2) Wells Fargo relies on an "amalgam" of art rather than a single prior art reference, (3) Wells Fargo failed to demonstrate that the prior art is enabling, and (4) Wells Fargo applied the wrong legal standard because Phoenix disclosed the Nuance system to the PTO during prosecution. All four arguments are wrong.

#### 1.   This motion is correctly predicated on invalidity.

Wells Fargo moves for summary judgment of invalidity, which must be proved by clear and convincing evidence. Wells Fargo's motion is based on the well-established principle that the scope of the asserted claims must be the same for both infringement and invalidity. *See PowerOasis, Inc. v. T-Mobile USA*, Inc., 522 F.3d 1299, 1305 (Fed. Cir. 2008). Or, as the Federal Circuit has held, "if granting patent protection on the disputed claim would allow the patentee to exclude the public from practicing the prior art, then that claim is anticipated, regardless of whether it also covers subject matter not in the prior art." *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999).[1]

None of the cases cited by Phoenix is to the contrary. In particular, in the unpublished

---

[1] Phoenix notes that the patents at issue in *Atlas Powder* involved chemical compounds, but the logic of that case is not so limited, and Phoenix offers no explanation for why the law would be any different as applied to other technologies. The symmetry between anticipation and infringement is well-established in patent law. *See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) ("The principle of law is concisely embodied in the truism that: 'That which infringes if later anticipates if earlier.'") (quoting *Polaroid Corp. v. Eastman Kodak Co.,* 789 F.2d 1556, 1573 (Fed. Cir. 1986)). And *Atlas Powder* has been applied outside the chemical context. *See, e.g.*, *Comcast Cable Commc'n Corp. v. Finisar Corp.*, No. C 06-04206 WHA, 2008 WL 2740324 (N.D. Cal. Jul. 11, 2008) (digital cable television).

1   decision *Friskit, Inc. v. Realnetworks, Inc.*, the court held only that there was a failure of proof:

2   the defendant had failed to show that all of the elements of the claim were found in its earlier

3   product.  The court held that "generally discussing the functionality of the product … fails to

4   meet the standard required; the moving party must show that every claim, and every element of

5   every claim, has been anticipated."  No. C 03-5085 FMS, 2005 WL 856658 *3 (N.D. Cal. Apr.

6   13, 2005).  Here, as described in more detail below, Wells Fargo has provided uncontroverted

7   evidence on each of the key points.

8   **2.     A prior use falls under 35 U.S.C. §102(b).**

9   Phoenix chastises Wells Fargo for relying on various documents that describe the NSRS

10  and contends that these documents cannot be evaluated together because they are not a single

11  printed publication under §102(b).  But Phoenix is missing the point.  Wells Fargo brought this

12  motion pursuant to § 102 because the claimed invention was "in public use or on sale in this

13  country, more than one year prior to the date of the application for patent in the United States,"

14  not merely because that invention was described in printed publications.  Indeed, Wells Fargo's

15  opening memorandum made clear that its motion was based on "a prior art NSRS that was on

16  sale more than one year prior to the filing of the asserted patents."  Mot., p. 10.  Wells Fargo's

17  invalidity contentions likewise identified the anticipatory reference as the "Nuance6 *product* and

18  all its enhancements, *uses* and modifications."  Reply Declaration of Ryan M. Kent in Support of

19  Wells Fargo's Motion for Summary Judgment of Invalidity ("Kent Reply Decl."), Ex. 20, p. 8

20  (citing documents to "describe and disclose the product") (emphasis added).  Wells Fargo has

21  properly relied on multiple documents and Mr. Sharp's declaration[2] to prove the structure and

22  function of that system and thus to prove that the claims are invalid under §102(b).  *See Zenith*

23  *Elec. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1355- 1359 (Fed. Cir. 2008).

24  **3.     The enablement requirement has no application to a prior public use.**

25  Phoenix argues that Wells Fargo cannot establish anticipation because the prior art upon

26  which Wells Fargo relies would not enable a person of skill in the art to practice the claimed

27  invention under §112.  But the requirement that a printed publication be enabling in order to

28

1  anticipate a claim has no application here.  *See Zenith,* 522 F.3d at 1356 ("Determining whether

2  a patent claim is invalid for prior public use under section 102(b) requires comparing the claim to

3  the alleged public use . . . . Contrary to Zenith's arguments, however, we note that the public use

4  itself need not be enabling. Rather, we must simply determine whether the public use related to a

5  device that embodied the invention."); *see also In re Epstein*, 32 F.3d 1559, 1568 (Fed. Cir.

6  1994) ("Beyond this 'in public use or on sale' finding, there is no requirement for an

7  enablement-type inquiry.").

8       **4.**     **Phoenix did not disclose all the details of the NSRS to the PTO.**

9       Phoenix argues that it submitted a Nuance patent (the '087 patent) to the PTO and that

10  the NSRS is cumulative to the '087 patent.

11       ***First***, this attack is beside the point – the standard for invalidity is clear and convincing

12  evidence regardless of whether the prior art in question was or was not before the PTO.  *See*

13  *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359-1360 (Fed. Cir. 1984).

14       ***Second***, the '087 patent did not disclose all the details that are relevant to the claimed

15  inventions.  Phoenix contends that "most" – but not all – "of the pertinent details of the

16  'distributed speech system'" were disclosed in the '087 patent.  Opp'n, p. 3.  The '087 patent is

17  silent, for example, on the recognition client's application of endpointing, the recognition

18  server's use of pruning, the recognition server's use of context-appropriate grammars, and the

19  system's use in conjunction with a website.  Reply Declaration of Doug Sharp in Support of

20  Defendant's Motion for Summary Judgment of Invalidity ("Sharp Reply Decl."), ¶ 2.

21  **B.**     <u>**Phoenix does not oppose this motion under Rule 56(f)**</u>

22       "Conclusory allegations and attorney arguments are insufficient to overcome a motion for

23  summary judgment."  *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006).

24  Instead, a nonmoving party must "must set forth ***specific facts*** showing that there is a genuine

25  issue for trial" and that "[i]f he does not so respond, summary judgment, if appropriate, shall be

26  entered against him."  Fed. R. Civ. P. 56(e) (emphasis added).

27       Wells Fargo has used Phoenix's preliminary infringement contentions to show that the

28

---

[2] Mr. Sharp is not a paid expert; he is a Nuance employee and a third party witness.

claims are invalid under Phoenix's theory of infringement.  Phoenix responds that its infringement contentions are merely "temporary," but does not make any effort to revise them (except in a couple of specific respects that are addressed in detail below).  Under Rule 56(e), Phoenix cannot defeat summary judgment simply by saying that it *may* change its allegations at some point in the future.  Instead, Phoenix was required to set forth the particular changes that it would make to its allegations to create a genuine factual issue precluding summary judgment.  And, to the extent that Phoenix believed that it needed further discovery, it was required to specify the "particular facts expected" from discovery *and* "how additional discovery would preclude summary judgment" *and* why it was unable "immediately [to] provide 'specific facts' demonstrating a genuine issue of material fact."  *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 523-524 (9th Cir. 1989); *see also Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008).  Phoenix failed to do any of these things.  Indeed, Phoenix has not taken a single step to learn through discovery *anything* about NSRS 6 in order to oppose this motion, presumably making the calculated decision that more discovery would only make things worse.  Phoenix cannot now use that tactical decision to avoid summary judgment.  The issues presented in this motion thus are ripe for decision.

C.     **Phoenix cannot prove infringement without also proving that the asserted claims are invalid**

   1.     **'977 Patent**

        a.     Claim 1

Phoenix contends that claim 1 is not anticipated because (1) the Charles Schwab system did not implement NSRS 6, and (2) NSRS 6 cannot meet the "signal processing functions" limitation.  Neither argument raises a genuine issue of material fact.

Charles Schwab System

Wells Fargo cited Schwab's implementation of the NSRS to meet two limitations in claim 1: "speech-enabled internet website" and "web page."  Phoenix argues that the "internet website" limitation is met so long as the "capabilities of [the] website . . . are available through a separate speech interface," and the "web page" limitation is met so long as the user can select

5
REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
CASE NO. 08-0863 MHP

429157.01

1   "identical items [through the website]. . . using a spoken query."  Declaration of Ryan M. Kent
2   [Docket No. 52] ("Kent Decl."), Ex. 7, p. 1.
3          Wells Fargo used Schwab's 1996 implementation of an earlier version of the NSRS
4   (prior to NSRS 6) to show that the NSRS had already been used in conjunction with content
5   appearing on a website well before the critical date.  Phoenix doesn't argue otherwise, or that
6   NSRS 6 could not be used to ask questions about content appearing on a website.
7          Rather than tackling the capabilities of NSRS 6, Phoenix contends that the Schwab
8   implementation did not perform "continuous speech recognition" such that a user may "present
9   an entire sentence spoken naturally, without pauses between the words being required."  Opp'n,
10  p. 12.  First, that's not the right question – the issue is whether the prior art NSRS could provide
11  information about content on a website, and Phoenix doesn't dispute that it did.  But even if this
12  were the right question, the evidence submitted by Wells Fargo shows the exact opposite.  The
13  Schwab implementation was "comprised of speech recognition and language understanding
14  capabilities that allow a caller to speak in *everyday, conversational English* to get information . .
15  . ."  Kent Decl., Ex. 9 (WF00000593) (emphasis added).  In fact, every version of the NSRS has
16  included a speech recognition engine that could recognize continuous speech without requiring
17  artificial pauses between each word.  Sharp Reply Decl., ¶ 3.
18          Phoenix cites no evidence that raises a genuine dispute of that fact on this point.  Quite
19  the contrary, the only real evidence upon which Phoenix relies—the VoiceBroker patent
20  application—actually discloses that the Schwab implementation *could* recognize speech in
21  naturally-spoken sentences, explaining that "[i]n the preferred embodiment the user can provide
22  the underlying issue and parameters in a *single sentence*."  Trojan Decl., Ex. 23 ('758
23  application, p. 18:23-25) (emphasis added).  The only other thing Phoenix cites is the conclusory
24  declaration of the patents' inventor who asserts that the Schwab implementation "was only
25  capable of isolated word recognition, and certainly could not handle an entire sentence spoken
26  naturally by a user."  Declaration of Ian M. Bennett [Docket No. 87] ("Bennett Decl."), ¶ 9.  But
27  mere denials cannot create an evidentiary conflict, especially when Mr. Bennett is not a
28  knowledgeable affiant and has no direct knowledge of the NSRS or the Schwab implementation,

1  and when his assertion is contradicted by the only evidence upon which he relies.[3] *See Barmag*

2  *Barmer Maschinenfabrik Ag. v. Murata Machinery, Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984)

3  ("The party opposing the [summary judgment] motion must point to an evidentiary conflict

4  created on the record at least by a counter statement of a fact or facts set forth in detail in an

5  affidavit by a knowledgeable affiant. Mere denials or conclusory statements are insufficient.")

6        Moreover, Phoenix ignores Wells Fargo's other, independent argument for why NSRS 6

7  meets the "speech-enabled internet website" and "web page" limitations:  Wells Fargo offered

8  uncontroverted evidence that "NSRS version 6 worked in conjunction with Nuance Voyager

9  which allowed 'people [to] place phone calls and navigate between those calls and voice-enabled

10  Web sites using spoken hyperlinks, or 'voicelinks.'"  *See* Kent Decl., Ex. 7, p. 1 (citing Kent

11  Decl., Ex. 12 (Nuance Web)); Declaration of Doug Sharp [Docket No. 53] ("Sharp Decl."), ¶ 33.

12  NSRS 6 thus was "designed to allow phone users to tap into the wealth of information available

13  on the Internet, all by using their voice and without hanging up the phone."  *Id*.  Because

14  Phoenix fails to dispute these facts or to change its infringement contentions, there is no genuine

15  dispute that these limitations are met by the prior art NSRS.

16  "Signal Processing"

17      The NSRS recognizes speech by matching an utterance to a set of words called a

18  grammar.  There is a tradeoff between accuracy and speed – the more words in the grammar, the

19  more likely that there will be a correct match but the longer the processing time.  Phoenix based

20  its infringement contentions in part on the fact that it is possible to control the pruning of the

21  grammar in the Wells Fargo NSRS – in other words, to look at only a subset of the words in the

22  grammar – in order to increase processing speed.[4]

23  _____

24  [3] Not only did Mr. Bennett fail to understand basic speech recognition and natural language concepts in his deposition, he had no evidence to support his understanding other than the evidence upon which Wells Fargo relies.  Kent Reply Decl., Ex. 21, (Bennett Depo. Tr. 30:1-18; 34:24-44:23; 143:16-145:15; 172:17-173:8; 190:23-191:5).  Indeed, Mr. Bennett relied on the Sharp Declaration for his purported understanding of how the *Wells Fargo* system works, but Mr. Sharp's Declaration is addressed to *NSRS 6*, not the Wells Fargo implementation.  *Id*. at 242:8-243:14.  The inadequacies of Mr. Bennett's declaration is discussed more fully in Wells Fargo's Motion To Strike Declaration of Ian Bennett.

28  [4] Phoenix also asserted that the Wells Fargo NSRS meets this limitation because voice activity detection could be selectively enabled (in other words, that the function of separating speech

7

REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
CASE NO. 08-0863 MHP

429157.01

1    Phoenix does not dispute that the prior art NSRS, like the Wells Fargo NSRS, allowed for
2 control over pruning.  Instead, Phoenix responds that NSRS 6 did not permit control over the
3 degree of pruning of "an **SLM** (Statistical Language Model) grammar." Opp'n, p. 14.  But so
4 what?  The claim element at issue has *nothing* to do with the kind of grammar being pruned.  It
5 reads:

> signal processing functions required to generate said recognized speech query can
> be allocated between a client platform and the server computing system as needed
> based on computing resources available to said client platform and server
> computing system respectively.

Kent Decl. Ex. 3, claim 1.  Nothing in Phoenix's opposition explains how this claim could
possibly cover the pruning of a Statistical Language Model grammar but not a manually written
grammar.  And, so long as the claim covers control over the degree of pruning, as Phoenix
contends it does, it is anticipated by a system with that functionality, even if it covers additional
functionalities as well.  *Atlas Powder Co. v. Ireco, Inc.*, 190 F.3d at 1346.[5]

        (i)     *Claim 6*

Phoenix does not raise any additional issues as to claim 6.

        (ii)    *Claim 7*

Phoenix contends that Wells Fargo failed to meet its burden because it has identified
nothing in the prior art NSRS to meet this limitation, which requires the system to "interact on a
real-time basis to one or more continuous speech queries."  Phoenix simply ignores the evidence

---

from silence could be turned on or off).  Wells Fargo argued in its opening brief that, in NSRS 6, the "endpointing" functionality (which includes voice activity detection) could likewise be turned on or off.  Phoenix has responded by arguing that the claim limitation is met only if the same function can be performed at *both* the client and the server.  But what the claim actually requires, as laid out above, is that the functionality be allocated between the client and server "based on computing resources available to" each of them.  So understood, nothing in any version of the NSRS would meet this limitation – but that is a claim construction issue that the Court need not reach, because the issue can be resolved solely on the basis of pruning.

[5] This is also a distinction without a difference.  A SLM grammar means only that the grammar includes the ability to assign a probability to one or more words by means of a probability distribution.  Sharp Reply Decl., ¶ 4.  NSRS 6 was capable of recognizing speech using trained SLM grammars, and the "manually written" grammars described in the NSRS 6 Developer's Manual included the ability to assign probabilities to one or more words, including specifying that "A is 60% likely", "the probability of any additional occurrence of A (after the first one) is 60%", or ""the probability of each occurrence of A (including the first one) is 60%."  Trojan Decl., Ex. 10 at WF00004294.

8

1  that NSRS 6 was a speaker-independent, continuous speech recognition system with real-time
2  capabilities under the undisputed meaning of the term.  *See* Sharp Decl., ¶¶ 8, 15, Ex. A (Nuance
3  Developer's Manual at WF00000968).

4                     (iii)    *Claim 10*

5        Phoenix contends that Wells Fargo misunderstands claim 10 and its infringement
6  allegations.  But Wells Fargo has simply relied on what Phoenix itself alleged—that Wells Fargo
7  infringes because "WF's interactive agent is monitored and observed in the test protocols and
8  audio scripts."  Granted, that doesn't make much sense—but that is Phoenix's infringement
9  theory, and it is equally true of  NSRS 6.  Kent Decl. Ex. 7, p. 10.

10        To the extent that Phoenix is now revising its infringement contentions, its new
11  contention fares no better.  Phoenix contends that the voice at the other end of the phone is the
12  "interactive character agent" in the Wells Fargo system.  Kent Decl. Ex. 7, p. 10.  But there is no
13  dispute that NSRS 6 controlled a voice that responded to the user's queries.  *See* Sharp Decl.
14  ¶ 29.  Here, too, there is simply no distinction between NSRS 6 and NSRS 8.

15           b.    <u>'846 patent</u>

16                   (i)    *Claim 11*

17        Phoenix concedes that NSRS 6 meets each and every limitation of claim 11 except the
18  limitation which requires "a transmission circuit for formatting and transmitting said first set of
19  speech data values over a communications channel to a second signal processing circuit."  In
20  particular, Phoenix now contends that NSRS 6 did not use an "Internet-based protocol for
21  communicating the data between the client and the server."  Opp'n, p. 15.

22        That argument fails for two reasons.  First, nothing in the claim, the specification, or the
23  prosecution history restricts the claim to a particular transmission protocol.  Presumably that's
24  why Phoenix did not interpret the claims in this manner in its infringement contentions.  Indeed,
25  when asked whether the transmission circuit element was limited to the use of an internet
26  protocol, the inventor Bennett flatly stated "no."  Kent Reply Decl., Ex. 21, (Bennett Depo. Tr.
27  229:17-22).

28        Second, it simply isn't correct that NSRS 6 didn't use an internet-based protocol, and the

1  evidence on this point is not susceptible to more than one interpretation.  NSRS 6 used the exact
2  same protocol to communicate information from the recognition client to recognition server as
3  NSRS 8—TCP (Transmission Control Protocol) and User Datagram Protocol (UDP)—both of
4  which are internet protocols.  Sharp Reply Decl. ¶ 5; Trojan Decl., Ex. 10, at WF00004522
5  (disclosing configuration parameters for the "rm.Tcp.port" and "rm.Udp.port").  In fact, the
6  release notes for NSRS 6 specify the use of TCP connections.  Kent Reply Decl., Ex. 22 at
7  NUANCE00003039.  Thus, NSRS 6 meets the transmission circuit limitation even if the claim
8  requires transmission using an internet protocol.  Again, this is not surprising – Mr. Bennett
9  testified that he chose to use an internet protocol (in his case, HTTP) because the use of internet
10 protocols was so prevalent in the industry.  Kent Reply Decl., Ex. 21, (Bennett Depo. Tr. 220:17-
11 25).

12       Instead of coming forward with *facts* indicating that NSRS 6 did not use an internet
13 protocol, Phoenix simply speculates that NSRS 6 must not have used an internet protocol
14 because Nuance received the '653 patent (filed after the release of that version) on a system that
15 claimed a "wide area network."  Phoenix assumes that the novelty of the '653 patent arose from
16 the "wide area network" limitation and from this concludes that NSRS 6 must not have used an
17 internet protocol to transmit data, notwithstanding the unambiguous evidence that it did.  But
18 Phoenix's assumption is wrong.  The '653 prosecution history does not indicate that the patent's
19 novelty arose from the use of a "wide area network."  Instead, the examiner concluded that "the
20 claims are allowable over the prior art of record because the amendments to the claim require
21 that the endpointing of the speech be done locally for automatic speech recognition."  Kent
22 Reply Decl., Ex. 23 [Notice of Allowability/Interview Summary/Notice of Allowance].

23       Finally, Phoenix contends that the Dialogic boards used by Wells Fargo are not identical
24 to the ones that were used in conjunction with NSRS 6.  While that may be correct—and Wells
25 Fargo never implied otherwise—the question is whether those new boards have additional
26 functions or structures that are material to the claims.  The only difference identified by Phoenix
27 is the use of "continuous speech processing technology" by the new boards "to recognize voice
28 commands more accurately, making them easier to use and increasing customer satisfaction."

1  Opp'n, p. 17.  But accuracy, easy of use, and customer satisfaction are not claim elements.
2  Indeed, Phoenix fails to offer any explanation why continuous speech processing technology
3  matters here and, notably, never disputes that NSRS 6 fails to meet the transmission circuit
4  limitation for any reason other than the internet protocol argument set forth above.

5              (ii)    *Claims 17*

6       Phoenix contends that claim 17 is not anticipated because NSRS 6 did not allow control
7  over the degree of pruning of an SLM grammar.  As discussed above, that distinction is neither
8  accurate nor material to the claim.

9              (iii)   *Claim 20*

10      Claim 20 requires that the first signal processing circuit (the client) be configured to
11 assist the second signal processing circuit (the server) with signal processing computations
12 required to generate the second set of speech data values (the set generated by the server).
13 Phoenix responds that "Wells Fargo's materials do not disclose that Nuance 6.0 was configured
14 to select where endpointing could be performed."  But that is a complete non-sequitur – Phoenix
15 does not suggest, or provide any evidence, that endpointing has anything to do with generating
16 the second set of speech data values (presumably because it doesn't).  Moreover, Phoenix
17 doesn't even try to suggest that the client helps the server perform endpointing – and, if anything,
18 the passage cited by Phoenix would suggest that it is the other way around.  In short, this
19 purported distinction has nothing to do with the claim, and thus cannot serve as a basis for
20 distinguishing the claim from the prior art.

21             (iv)    *Claim 21*

22      Phoenix contends that claim 21 is not anticipated because the recognition client (the
23 telephony board) transmits more than actual speech data.  But Wells Fargo submitted evidence
24 that "[b]y using endpointing, the recognition client could send only speech data (and not silence)
25 to the recognition server."  Sharp Decl., ¶ 9.  This fact is not disputed by anything other than
26 attorney argument.  Instead of presenting evidence about what the recognition client could do,
27 Phoenix responds that "endpointing is not the same as doing continuous speech processing."
28 Opp'n, p. 18. Again, so what?  That has nothing to do with whether the recognition client

---

11
REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY
CASE NO. 08-0863 MHP

429157.01

1  transmits only actual speech data and thus transmits the least amount of data required under
2  Phoenix's construction of the claim.
3       Moreover, Phoenix also once again misstates what the evidence actually shows.  It
4  simply isn't true that "the alleged anticipatory functionality asserted by Wells Fargo has only
5  until recently been compatible with speech systems." *Id*.  Phoenix relies on a document that
6  promotes an advanced telephony board that is capable of performing voice-activity-detection
7  (VAD) before sending the voice data to the recognition client, which then performs "second-pass
8  endpointing only."  Trojan Decl., Ex. 16, p. 3-6.  The document explicitly distinguishes this new
9  technology from the "typical client-server systems," in which the endpointing is done on the
10 recognition client.  *Id.* at 5.  It does not suggest that endpointing is a recent innovation.  Indeed,
11 the figure immediately below the passage cited by Phoenix depicts a speech recognition system
12 that is operating "Without VAD" but includes a recognition client with an "Endpointer" which
13 "Removes Silence":



22 *Id.* at p. 6.
23        c.     '640 patent
24               (i)     *Claim 1*
25       Phoenix concedes that NSRS 6 meets each and every limitation of claim 1 except the
26 "remote speech capturing system" element.  Phoenix argues that Wells Fargo failed to provide
27 evidence that NSRS 6 was implemented in a distributed fashion and that the claim requires the
28 use of an Internet Protocol not present in NSRS 6.  Opp'n, p. 19.

"remote speech capturing system"

NSRS 6 was applied to banking, travel, and stock quote applications, which Phoenix concedes were run using separate recognition client and recognition server software. Phoenix contends that these demonstrations *could* have been configured in "non-distributed" ways because Dr. Sharp declared that the recognition client and recognition server did not have to run on the same machine. Opp'n, p. 18; Sharp Decl., ¶ 11. First, the fact that the client and server could be on the same machine or on different machines doesn't mean that the prior art NSRS doesn't disclose the idea of a distributed system. Second, Phoenix's proposed claim construction requires only that the recognition client be "physically separate from the speech recognition system." Trojan Decl., Ex. 1, p. 18. It was clearly known that the client and server could be physically separate. Sharp Reply Decl., ¶ 6.

Phoenix also contends that these demonstrations did not involve the use of an Internet Protocol. But the term "remote" can't reasonable be interpreted to mean "using an internet protocol" and, in any event, the actual evidence is undisputed that NSRS 6 called for data to be transmitted between the client and server using an internet protocol. Sharp Reply Decl., ¶ 5. This is all that Phoenix's proposed construction requires.

     (ii)  *Claim 3*

Phoenix does not raise any additional issues as to claim 3.

     (iii)  *Claims 4 and 7*

Phoenix contends that dependent claims 4 and 7 are not anticipated because the "contextualization" function in NSRS 6 does not disclose the use of "context parameters." Opp'n, p. 20-21. But Phoenix ignores Wells Fargo's primary argument. As Mr. Sharp explained, "the NSRS allowed where a caller was in the dialogue to play a role in recognizing the caller's speech—*e.g.*, the recognition server knew if the caller had just told the system that she wanted to transfer money and thus interpreted the caller's next speech in light of that knowledge. This is accomplished using the AppSetGrammar as described on p. 112." Sharp Decl., ¶ 24; Ex. A (Nuance Developer's Manual at WF00000751). Phoenix does not dispute that NSRS 6 had this functionality or that these are context parameters within the meaning of the

1  claim (because that is what Phoenix accuses of infringement).

2       d.      '854 Patent

3            (i)     *Claim 1*

4  Phoenix concedes that NSRS 6 meets each and every limitation of claim 1 except the "natural language routine" and "electronic agent" elements.

"Natural Language Routine"

Phoenix contends that NSRS 6 did not have a "natural language routine" because the "designer had to manually specify, in advance, every possible word the user might speak" so that "[i]f the user spoke a word that was not in the speech recognition grammar, it wasn't even passed on to the natural language engine to be interpreted." Opp'n, p. 22. This argument fails for two independent reasons.

*First*, this arguments contradicts the positions taken by Phoenix in its infringement contentions and proposed claim constructions. Phoenix's contentions do not require that words outside the grammar of the recognition server be passed on to the natural language engine *to be interpreted*. Instead, Phoenix proposed a construction wherein "the NL routine can identify a response even when the user presents words/phrases that are not part of the NL routine's grammar." Trojan Decl., Ex. 1, p. 6. That's different from interpreting words not present in the grammar, because it could simply mean that the words not present in the grammar are ignored.

*Second*, Phoenix has not accused Wells Fargo's system of being able to understand words not present in a grammar, and for good reason: no version of the NSRS has ever been able to understand words outside of a grammar. Sharp Reply Decl., ¶ 7. As Phoenix's own evidence demonstrates, NSRS 8 is premised on a "[r]obust large-vocabulary, speaker-independent recognition" that provides "[r]eliable recognition *from very large grammars* in a number of languages." Trojan Decl., Ex. 25, p. 1-7. Mr. Bennett's declaration provides no factual support for his speculation that the recognition engine in NSRS 8 can understand words outside of its grammar; instead, his declaration talks about the NL engine's ability to "merely take[] all of the words/phrases that are output and compare[] them to *a more limited grammar of selected words/phrases*." Bennett Decl., ¶ 17 (emphasis added). Neither NSRS 6 nor NSRS 8 can

1  understand words outside of the grammar – thus, if the latter infringes, the former is invalidating.

2  "Electronic Agent"

3  Phoenix contends that asking a caller questions such as "what do you want to do" or

4  "from which account" does not "provide a prompt to the user during said interactive speech

5  based session with suggestions on queries which can be made to the natural language query

6  system." Opp'n, p. 23. But the claim merely requires a prompt with "suggestions on queries

7  which can be made to the natural language query system." Asking "from which account" a

8  caller wants money to be transferred provides a suggestion on queries that can be made—*i.e.*,

9  checking. And Phoenix does not propose a construction of this phrase that would exclude this

10  interpretation. *See* Trojan Decl., Ex. 1.

11  (ii)   *Claim 27*

12  Phoenix contends that claim 27 is not met because the claim "is directed to systems in

13  which an Internet-based Protocol is used in the channel." But there's simply no such

14  requirement in the claim. And, as discussed above, NSRS 6 did involve the use of an internet

15  protocol.

16  (iii)   *Claims 7, 8, 9, 13, 19, 20, 22, 23, 28, 29*

17  Phoenix makes no new allegation regarding these claims, and thus, Phoenix concedes that

18  these claims are anticipated if the Court finds the underlying independent claims anticipated.

19  **III.   Conclusion**

20  For the foregoing reasons, Wells Fargo respectfully requests that the Court grant

21  summary judgment of invalidity as to the asserted claims.

22  Dated: October 20, 2008                                  KEKER & VAN NEST, LLP

23

24

25                                                          By:  /s/ Daralyn J. Durie
                                                                 Daralyn J. Durie
26                                                               Attorneys for Defendant

27

28

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT.........................................................................................................................2

    A. Wells Fargo has correctly stated the governing legal principles ............................2

        1. This motion is correctly predicated on invalidity. .......................................2

        2. A prior use falls under 35 U.S.C. §102(b). .................................................3

        3. The enablement requirement has no application to a prior public use. ..................................................................................................3

        4. Phoenix did not disclose all the details of the NSRS to the PTO. ...........................................................................................................4

    B. Phoenix does not oppose this motion under Rule 56(f)..........................................4

    C. Phoenix cannot prove infringement without also proving that the asserted claims are invalid ........................................................................................5

        1. '977 Patent ...................................................................................................5

            a. Claim 1.............................................................................................5

                (i) Claim 6....................................................................................8

                (ii) Claim 7...................................................................................8

                (iii) Claim 10.................................................................................9

            b. '846 patent ......................................................................................9

                (i) Claim 11.................................................................................9

                (ii) Claims 17 .............................................................................11

                (iii) Claim 20...............................................................................11

                (iv) Claim 21...............................................................................11

            c. '640 patent ....................................................................................12

                (i) Claim 1.................................................................................12

                (ii) Claim 3.................................................................................13

                (iii) Claims 4 and 7 .....................................................................13

            d. '854 Patent ....................................................................................14


Case3:08-cv-00863-MHP   Document95   Filed10/20/08   Page18 of 19

# TABLE OF CONTENTS
## (cont'd)


|  |  | **Page** |
|---|---|---|
| (i) | Claim 1 | 14 |
| (ii) | Claim 27 | 15 |
| (iii) | Claims 7, 8, 9, 13, 19, 20, 22, 23, 28, 29 | 15 |

III. Conclusion ................................................................................................................... 15


ii
DEFENDANTS' OPPOSITION BRIEF ON CLAIM CONSTRUCTION
CASE NO. C07-00058 WHA

429157.01

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*
  725 F.2d 1350 (Fed. Cir. 1984) ................................................................................................4

*Atlas Powder Co. v. Ireco, Inc.*
  190 F.3d 1342 (Fed. Cir. 1999) .............................................................................................2, 8

*Ballard Med. Prod. v. Allegiance Healthcare Corp.*
  268 F.3d 1352 (Fed Cir. 2001) ................................................................................................1

*Barmag Barmer Maschinenfabrik Ag. v. Murata Machinery, Ltd.*
  731 F.2d 831 (Fed. Cir. 1984) ..................................................................................................7

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*
  525 F.3d 822 (9th Cir. 2008) ....................................................................................................5

*Ferring B.V. v. Barr Labs., Inc.*
  437 F.3d 1181 (Fed. Cir. 2006) ................................................................................................4

*Friskit, Inc. v. Realnetworks, Inc.*No.
  C 03-5085 FMS, 2005 WL 856658 *3 (N.D. Cal. Apr. 13, 2005) ...........................................3

*In re Epstein*
  32 F.3d 1559 (Fed. Cir. 1994) ..................................................................................................4

*Mackey v. Pioneer Nat'l Bank*
  867 F.2d 520 (9th Cir. 1989) ....................................................................................................5

*PowerOasis, Inc. v. T-Mobile USA*
  Inc., 522 F.3d 1299 (Fed. Cir. 2008) ........................................................................................2

*Zenith Elec. Corp. v. PDI Commc'n Sys., Inc.*
  522 F.3d 1348 (Fed. Cir. 2008) ............................................................................................3, 4

**Federal Statutes**

35 U.S.C. §102(b) ..........................................................................................................................3, 4

35 U.S.C §112 ....................................................................................................................................3

**Federal Rules**

Fed. R. Civ. P. 56(e) ......................................................................................................................4, 5

**State Rules**

Rule 56(f) ......................................................................................................................................1, 4